UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOHN DOE,                                            :

                              :

                    Plaintiff,              :

                              :

          -against-                     :          Civ. Action No. 14-cv-3573-JMF

                              :

COLUMBIA UNIVERSITY and          :
TRUSTEES of COLUMBIA UNIVERSITY,    :

                              :

              Defendants.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATUTORY, REGULATORY, AND POLICY BACKGROUND ........................................ 2

    A.    Title IX ................................................................................................ 2

    B.    Columbia's Gender-Based Misconduct Policies for Students ............................... 4

STATEMENT OF FACTS ...................................................................................... 7

    A.    Columbia's Investigation Into The Complaint Of Sexual Misconduct Against John Doe ............................................................................................ 7

    B.    Sexual Misconduct Hearing and Appeal ..................................................... 8

    C.    John Doe's Complaint ........................................................................... 9

STANDARD OF REVIEW ..................................................................................... 10

ARGUMENT ...................................................................................................... 11

I.    John Doe Fails To State A Claim For Sex Discrimination In Violation Of Title IX .... 12

II.    John Doe Fails To State A Claim For Breach Of Any Express Or Implied Contract ... 15

    A.    Breach of Contract ............................................................................... 15

    B.    Breach of the Implied Covenant of Good Faith and Fair Dealing ......................... 21

III.    John Doe Fails To State A Claim For Violation Of G.B.L. § 349 ................................ 22

IV.    John Doe Fails To State A Claim For Estoppel And Reliance ..................................... 23

V.    John Doe Fails To State A Claim For Intentional Infliction Of Emotional Distress ..... 24

VI.    John Doe Fails To State A Claim for Negligence ...................................................... 26

VII.    John Doe Fails To State A Claim For Declaratory Judgment ...................................... 27

CONCLUSION ..................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...........................................................................................10, 12

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC,*
  __ F. Supp. 2d. __, 2014 WL 917055 (S.D.N.Y. Mar. 10, 2014)...............10, 11, 14

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)...................................................................................10, 11, 14

*Benjaminov v. Republic Insurance Group,*
  660 N.Y.S.2d 148 (App. Div. 1997)..................................................................22

*Biediger v. Quinnipiac University,*
  691 F.3d 85 (2d Cir. 2012)...................................................................................3

*Bleiler v. College of the Holy Cross,*
  No. Civ.A.11-11541, 2013 WL 4714340 (D. Mass. Aug. 23, 2013).....................3

*Burt v. Smith,*
  73 N.E. 495 (N.Y. 1905)....................................................................................27

*Chevron Corp. v. Naranjo,*
  667 F.3d 232 (2d Cir. 2012)...............................................................................27

*Clark-Fitzpatrick, Inc. v. Long Island Railroad Co.,*
  516 N.E.2d 190 (N.Y. 1987)..............................................................................26

*Cooper v. Gustavus Adolphus College,*
  957 F. Supp. 191 (D. Minn. 1997)......................................................................15

*Dalton v. Educational Testing Service,*
  663 N.E.2d 289 (N.Y. 1995)..............................................................................21

*Davis v. Monroe County Board of Education,*
  526 U.S. 629 (1999).......................................................................................3, 11

*DeLuca v. AccessIT Group, Inc.,*
  695 F. Supp. 2d 54 (S.D.N.Y. 2010).....................................................................4

*Doe v. University of the South,*
  687 F. Supp. 2d 744 (E.D. Tenn. 2009)...............................................................15

*Fraad-Wolff v. Vassar College,*
  932 F. Supp. 88 (S.D.N.Y. 1996) ..................................................................21, 25

*Fundator v. Columbia University,*
  No. 95 Civ. 9653, 1996 WL 197780 (S.D.N.Y. Apr. 23, 1996)...........................15

*Gally v. Columbia University,*
  22 F. Supp. 2d 199 (S.D.N.Y. 1998)........................................................17, 18, 21

*Gebser v. Lago Vista Independent School District*,
   524 U.S. 274 (1998) .................................................................................................. 3

*Grennan v. Nassau County*,
   Civil Action No. 04-2158, 2007 WL 952067 (E.D.N.Y. Mar. 29, 2007) .............................. 27

*Harris v. St. Joseph's University*,
   No. Civ.A. 13-3937, 2014 WL 1910242 (E.D. Pa. May 13, 2014) ................................. 13, 15

*Holmes v. Lorch*,
   329 F. Supp. 2d 516 (S.D.N.Y. 2004) ............................................................................ 23

*Horowitz v. Stryker Corp.*,
   613 F. Supp. 2d 271 (E.D.N.Y. 2009) ........................................................................... 22

*Howell v. New York Post Co.*,
   612 N.E.2d 699 (N.Y. 1993) ......................................................................................... 24

*In re Vebeliunas*,
   332 F.3d 85 (2d Cir. 2003) ........................................................................................... 23

*James v. DeGrandis*,
   138 F. Supp. 2d 402 (W.D.N.Y. 2011) .......................................................................... 25

*Jones v. Trustees of Union College*,
   937 N.Y.S.2d 475 (App. Div. 2012) ............................................................................... 11

*Kaye Dentistry, PLLC v. Turchin*,
   No. 13 Civ. 5306, 2014 WL 2649976 (S.D.N.Y. June 13, 2014) ..................................... 17

*Kennedy v. Syracuse University*,
   No. 94 Civ. 269, 1995 WL 548710 (N.D.N.Y. Sept. 12, 1995) ....................................... 17

*Kickertz v. New York University*,
   971 N.Y.S.2d 271 (App. Div. 2013) ............................................................................... 22

*Kosakow v. New Rochelle Radiology Associates, P.C.*,
   274 F.3d 706 (2d Cir. 2001) ......................................................................................... 23

*Maas v. Cornell University*,
   721 N.E.2d 966 (N.Y. 1999) .................................................................................... 11, 19

*Mallory v. Ohio University*,
   76 F. App'x 634 (6th Cir. 2003) .................................................................................... 14

*Martin v. Citibank, N.A.*,
   762 F.2d 212 (2d Cir. 1985) ......................................................................................... 24

*McGrath v. Dominican College of Blauvelt, N.Y.*,
   672 F. Supp. 2d 477 (S.D.N.Y. 2009) ........................................................................... 24

*Merchants Mutual Insurance Co. v. Quality Signs of Middletown*,
   973 N.Y.S.2d 787 (App. Div. 2013) ............................................................................... 26

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Group plc*,
   709 F.3d 109 (2d Cir. 2013) ........................................................................................... 7

*New York University v. Continental Insurance Co.*,
   662 N.E.2d 763 (N.Y. 1995).................................................................26

*Pandolfo v. U.A. Cable System*,
   568 N.Y.S.2d 981 (App. Div. 1991).....................................................27

*Papelino v. Albany College of Pharmacy of Union University*,
   633 F.3d 81 (2d Cir. 2011)...............................................11, 15, 16

*Personnel Administrator of Massachusetts v. Feeney*,
   442 U.S. 256 (1979)...............................................................12, 13

*Richard L. v. Armon*,
   536 N.Y.S.2d 1014 (App. Div. 1989)...................................................25

*Romer v. Board of Trustees of Hobart & William Smith Colleges*,
   842 F. Supp. 703 (W.D.N.Y. 1994)......................................................24

*Routh v. University of Rochester*,
   981 F. Supp. 2d 184 (W.D.N.Y. 2013) ....................................... *passim*

*Spiteri v. Russo*,
   No. 12-CV-2780, 2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013) ...............27

*Stuto v. Fleishman*,
   164 F.3d 820 (2d Cir. 1999).............................................................24

*Talbot v. New York Institute of Technology*,
   225 A.D.2d 611 (App. Div. 1996) .....................................................26

*Vega v. State University of New York Board of Trustees*,
   No. 97 Civ. 5767, 2000 WL 381430 (S.D.N.Y. Apr. 13, 2000)..................15

*Vought v. Teachers College, Columbia University*,
   511 N.Y.S.2d 880 (App. Div. 1987).....................................................27

*Wahlstrom v. Metro-North Commuter Railroad Co.*,
   89 F. Supp. 2d 506 (S.D.N.Y. 2000)....................................................24

*Ward v. New York University*,
   No. 99 Civ. 8733, 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000)..............18, 23

*Weitz v. State*,
   696 N.Y.S.2d 656 (Ct. Cl. 1999) .......................................................27

*Weser v. Glen*,
   190 F. Supp. 2d 384 (E.D.N.Y.), *aff'd*, 41 F. App'x 521 (2d Cir. 2002) ...............13

*Yusuf v. Vassar College*,
   35 F.3d 709 (2d Cir. 1994)...............................................2, 12, 14

**DOCKETED CASES**

*Doe v. University of the South*,
   No. 4:09-cv-00062 (E.D. Tenn.).........................................................15

*Harris v. St. Joseph's University*,
    No. Civ.A. 13-3937 (E.D. Pa.)................................................................................15

**STATUTES & CODES**

20 U.S.C. § 1681(a) .....................................................................................................2, 12

**RULES**

Fed. R. Civ. P. 8(a)(2) ....................................................................................................12

**OTHER AUTHORITIES**

34 C.F.R. § 106.8(b) ........................................................................................................3

72 Fed. Reg. 3432 (Jan. 25, 2007) ...................................................................................3

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Columbia University and the Trustees of Columbia University ("Columbia" or "the University") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint.

## PRELIMINARY STATEMENT

Following a detailed investigation, a hearing before three neutral panelists, and an appeal, John Doe was found responsible for sexual misconduct in violation of Columbia University's student policies, and was suspended for one and one-half academic years. Disappointed with the outcome of these disciplinary proceedings, John Doe now sues Columbia, alleging a violation of Title IX and asserting an array of contract and related state-law claims. He asks, in essence, for this federal Court to serve as an appellate body and rehear an internal educational matter based on the conclusory assertion that Columbia was intent on punishing him because he is a man.

The Complaint should be dismissed. Columbia's policies and procedures for investigating and disciplining students for sexual misconduct are carefully drawn to account for the interests of all students—including the complaining student and the respondent—and to advance the educational mission of the University. They reflect the University's judgment about how best to secure a safe, inclusive educational environment, free from the presence or threat of gender bias, harassment, or intimidation. The University's decision to discipline a student for sexual misconduct is thus an educational one, and warrants deference by the courts where, as here, the University has complied with its internal policies and procedures, and where there is no plausible allegation of discrimination or bad faith.

Plaintiff's Complaint is devoid of any plausible allegation of discrimination on the basis of sex. While Plaintiff alleges that he was treated unfairly, he does not plead a single fact tying that alleged treatment to his sex. As to his contract and related state-law claims, Plaintiff's allegations are either inconsistent with the very policies and procedures that constitute his

1

implied contract with the University or are contradicted by other allegations in the Complaint. Plaintiff's Complaint indicts the University's disciplinary process for being unfair, but that is not a cognizable legal claim.

Columbia takes the issue of campus sexual misconduct most seriously. Sexual misconduct, including student-on-student misconduct, directly affects the educational mission of the University. Columbia's policies and procedures for resolving allegations of misconduct take into account the interests of both complaining and responding students, as well as those of the University community. Private universities are not criminal courts—they are not required to find their students to be guilty beyond a reasonable doubt in order to discipline them. Rather, when, in the judgment of the University, a student is deemed responsible based on a preponderance of the evidence for an act of misconduct that breaches the University's policies or guidelines, the University acts well within its rights in disciplining him or her. That is precisely what happened here.

**STATUTORY, REGULATORY, AND POLICY BACKGROUND**

**A.     Title IX**

Congress enacted Title IX of the Education Amendments of 1972 to "supplement the Civil Rights Act of 1964's bans on racial discrimination in the workplace and in universities" by prohibiting discrimination on the basis of sex in federally funded educational programs. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994). The statute provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The United States Department of Education—the agency charged with enforcing Title IX—and the courts recognize that "[s]exual harassment of students, which includes acts of sexual violence, is a form of sex discrimination

2

prohibited by Title IX." Ltr. from Russlynn Ali, Ass't Sec'y for Civil Rights, U.S. Dep't of Educ. at 1 (Apr. 4, 2011) ("Dear Colleague Ltr.") (Exh. A);[1] *see also Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999) (student-on-student sexual harassment may violate Title IX). Sexual violence is not limited to the criminal definition of rape or sexual assault. Rather, "[a] number of different acts fall into the category of sexual violence, including rape, sexual assault, sexual battery, and sexual coercion. All such acts of sexual violence are forms of sexual harassment covered under Title IX." Dear Colleague Ltr. 1-2.

To further Congress's goals of "avoid[ing] the use of federal resources to support discriminatory practices" and "provid[ing] individual citizens effective protection against those practices," *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998), the Department of Education has promulgated regulations requiring schools that receive federal funding to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited," 34 C.F.R. § 106.8(b). As the Department has explained, these "[p]rompt and [e]quitable [r]equirements" encompass, among other things, notice to students about grievance procedures, "[a]dequate, reliable, and impartial investigation of complaints," "[d]esignated and reasonably prompt time frames for the major stages of the complaint process," and notice to parties of the outcome of the complaint. Dear Colleague Ltr. 9. These duties are distinct from the obligations of law enforcement: "[B]ecause the standards for criminal investigations are different, police investigations or reports are not determinative of whether sexual harassment or violence violates Title IX. Conduct may

---

[1]      The Department of Education's "Dear Colleague Letter" is a "significant guidance document" under the Office of Management and Budget's Final Bulletin for Agency Good Guidance Practices, 72 Fed. Reg. 3432 (Jan. 25, 2007). Dear Colleague Ltr. 1 n.1; *see Bleiler v. Coll. of the Holy Cross*, No. Civ.A.11-11541, 2013 WL 4714340, at *3 (D. Mass. Aug. 23, 2013) (discussing letter in sexual misconduct case); *see also Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 96-97 (2d Cir. 2012) (discussing similar Office for Civil Rights letters).

constitute unlawful sexual harassment under Title IX even if the police do not have sufficient evidence of a criminal violation." *Id.* at 10.

### B.    Columbia's Gender-Based Misconduct Policies for Students[2]

Columbia has policies and procedures to ensure the prompt and equitable resolution of Title IX complaints.  Those policies—which are intended to "foster[] a healthy and safe environment in which every member of the community can realize her or his fullest potential"[3] and to "provid[e] a learning, living, and working environment free from discrimination and harassment and to foster[] a nurturing and vibrant community founded upon the fundamental dignity and worth of all of its members"[4]— are provided to all students and are accessible on Columbia's website.  "Complaints against students for gender-based misconduct are processed in accord with [Columbia's] *Gender-Based Misconduct Policies for Students*."[5]

The *Gender-Based Misconduct Policies for Students* ("*GBMPS*") (Exh. B) delineate both the various forms of impermissible conduct and the processes the University uses to respond to, investigate, and resolve complaints of gender-based misconduct.  Among the listed "[e]xamples of gender-based misconduct" are "[p]ressure for a date or a romantic or intimate relationship," "[u]nwelcome touching, kissing, hugging, or massaging," and "[p]ressure for or forced sexual activity."  *GBMPS* 2.  The *GBMPS* list six specific categories of policy violations, including sexual harassment, gender-based harassment, intimate partner violence, stalking, sexual assault (non-consensual sexual intercourse), and sexual assault (non-consensual sexual contact).  *Id.* at

---

[2]        John Doe has incorporated Columbia's policies and procedures into the Complaint.  *See* Compl. ¶¶ 19-22, 135-38 (citing policies); *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 59-60 (S.D.N.Y. 2010) (policies may be "deemed part of the pleadings" and therefore "may be considered in deciding the motion" to dismiss where the complaint makes "a clear, definite and substantial reference to the documents").

[3]        *Gender-Based Misconduct Policies for Students* 1 ("*GBMPS*") (Exh. B).

[4]        *Student Policies and Procedures on Discrimination and Harassment* 2 ("*SPPDH*") (Exh. C).

[5]        *Id.* at 2.

2-3.  As relevant here, sexual assault (non-consensual sexual intercourse) is defined to include

"[a]ny form of sexual intercourse … without consent."  *Id.* at 3.  "Consent" is in turn defined to

include "explicit communication and mutual approval for the act in which the parties are/were

involved."  *Id.*  "Consent cannot be procured by the use of … coercion," which can involve

"[u]nreasonable pressure for sexual activity."  *Id.* at 4.  "The use of coercion can involve the use

of pressure, manipulation, substances, and/or force.  Ignoring the objections of another person or

pressuring them is a form of coercion."  *Id.*

Consistent with the Department of Education's "prompt and equitable requirements," the

*GBMPS* establish reporting and investigative procedures and timelines for responding to

complaints of gender misconduct.  *GBMPS* 9, 11-12.  Under those procedures, after a complaint

is received, the respondent is notified of the filing and is given both written notice of the

allegations as well as an opportunity to meet with the Assistant Director for Student Services for

Gender-Based and Sexual Misconduct to review the relevant policies and procedures.  *Id.* at 11-

12.  A trained investigator interviews the complainant, respondent, and relevant witnesses,

gathers germane documentation, and provides a report from the gathered information.  *Id.* at 12.

The investigator retains significant discretion to determine whom she will interview; for example,

she "will not interview witnesses whose sole purpose is to provide character information."  *Id.*[6]

If, following the investigation, the University determines that there is a reasonable

suspicion of a policy violation, the respondent and complainant are given the opportunity to

review the investigative report.  *GBMPS* 13.  If, after reviewing the report, the "respondent

declines responsibility, or chooses not to respond, a hearing panel will be convened," ordinarily

---

[6]      Throughout the investigation and hearing process, both the complainant and respondent are entitled to the
support of a member of the University community.  The supporter may "talk quietly with the student or pass notes in
a non-disruptive manner," but may not "in any way, intervene in the meeting/hearing or address the
investigator/hearing panel."  *GBMPS* 12-13.

within 30 days. *Id.* at 13-14. The panelists—who may not have any affiliation with the complaining or responding student, and whose participation may be challenged by either party— have the opportunity to review the investigative report and documentation prior to the hearing. *Id.* at 14. The hearing is conducted according to prescribed procedures set forth in the *GBMPS* and may include a complainant statement, a respondent statement, questions by the panelists to the complainant and respondent, testimony by and questioning of witnesses, clarification from the investigator, and closing statements from the complainant and respondent. *Id.* at 14-15. Both the complainant and the respondent may offer questions of the other and of witnesses, but the hearing panel decides which questions will be asked and which witnesses will be heard. *Id.* at 15.

To find a respondent responsible for a policy violation, the panel must, by a majority vote, find that a preponderance of the evidence supports such a finding. *GBMPS* 15. The parties are informed in writing of the panel's decision. *Id.* at 16-17. If the respondent is found responsible, the Dean of Students for the respondent's school determines the appropriate sanction based on an array of enumerated factors, including "the violation, prior disciplinary violations, precedent cases, [and] University safety concerns" considering the relevant circumstances. *Id.* at 15. Sanctions may range from a reprimand or warning to suspension or dismissal from the University. *Id.* at 16. The parties are notified of the sanction in writing. *Id.* at 16-17.

Either party is entitled to appeal from the panel's decision, the sanction, or both. *GBMPS* 16. The grounds for appeal are limited to (1) an outcome-determinative procedural error, (2) substantive new evidence, and (3) an inappropriately severe sanction. *Id.* Disagreement with the findings or sanction is not grounds for appeal. *Id.* The decision to uphold or reverse the

panel's decision is committed to the discretion of the Dean of the respondent's school, and it is not appealable. *Id.*

Finally, in order to ensure the integrity of the investigation, all parties and relevant witnesses are informed of the "University's expectation regarding confidentiality, privacy, and non-retaliation." *GBMPS* 10.  The hearings themselves are closed. *Id.* at 14.  The University undertakes to "make all reasonable efforts to maintain the confidentiality and privacy of parties involved in gender-based misconduct investigations, restricting information to those with a legitimate need to know." *Id.* at 10.

## STATEMENT OF FACTS[7]

### A.   Columbia's Investigation Into The Complaint Of Sexual Misconduct Against John Doe

In September 2013, Columbia received a complaint from a University sophomore ("Jane Doe"), who stated that she had been engaged in non-consensual sexual intercourse by John Doe the previous May.  Compl. ¶¶ 3, 42.  Pursuant to the protocol described above, the University initiated an investigation. *Id.* ¶¶ 41-42.[8]

After being served with a "formal written notice" of the complaint against him, Compl. ¶ 42, John Doe met with Columbia's Title IX investigator "for the purpose of providing his

---

[7]     The facts recited herein are drawn from the Complaint as well as the pertinent Columbia policies and procedures, which John Doe has incorporated into the Complaint. *See supra* n.2.  The Complaint's factual allegations are accepted as true for purposes of this motion. *See N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp. plc*, 709 F.3d 109, 119-20 (2d Cir. 2013).

[8]     The Complaint alleges that John Doe was previously aware of Columbia's policies regarding sexual misconduct hearings and investigations, had received copies of those policies, and was able to view the policies on Columbia's website.  Compl. ¶¶ 18, 139, 144-45.

account of the evening of May 12, 2013," *id.* ¶ 44.[9]   The investigator "took notes on what she

deemed important[.]"  *Id.* ¶ 45.  John Doe met with the investigator a second time one month

later.  *Id*. ¶ 49.  At the second meeting, John Doe suggested that the investigator speak with a

particular witness, whom he identified by name, regarding the night of the alleged sexual

misconduct.  *Id.*  The investigator interviewed that witness.  *Id*. ¶ 54.   According to John Doe, at

the same meeting, he reviewed and approved the investigator's notes regarding the first interview.

*Id*. ¶ 49.  John Doe and the Title IX investigator spoke a third time by telephone to follow up on

several aspects of John Doe's prior interview statements.  *Id*. ¶ 52.  Among other topics, the

investigator and John Doe discussed Jane Doe's alcohol and drug use, including her level of

intoxication on the night of May 12.  *Id*.

     Following the Title IX investigator's completion of the report, John Doe met with

Columbia's Interim Assistant Director of Student Services for Gender-Based and Sexual

Misconduct and Deputy Title IX Coordinator to review and provide any comments on the

completed investigation report in detail.  Compl. ¶ 54.  John Doe was then asked to state his

formal response to the completed report.  *Id.* ¶ 57.  Because John Doe stated that he was not

responsible for the charged misconduct, a panel was convened and a hearing scheduled.  *Id*. ¶ 58.

### B.   Sexual Misconduct Hearing and Appeal

     John Doe's sexual misconduct hearing took place on February 12, 2014.  Compl. ¶ 71.

For two hours, panelists heard statements and testimony from Jane Doe and John Doe.  *Id.* ¶¶ 78,

85.  John Doe took notes and prepared cross-examination questions for Jane Doe, which he

---

[9]    John Doe claims that he was "utterly blindsided by the allegations" when he was served with written notice of the complaint in September 2013.  Compl. ¶ 43.  But, as the Complaint alleges, John Doe had been contacted in May 2013 by his resident advisor, who "informed him that Jane Doe had approached her to discuss the Evening of May 12 in confidence, but that [the resident advisor] was required by state law to report it to Columbia University." *Id*. ¶ 38.  While John Doe alleges that no such report was ever filed, *id.* ¶ 39, he was aware no later than May 2013 that Jane Doe had raised concerns about the events of May 12 with University personnel.

submitted to the panelists.  *Id.* ¶ 82.  The panelists posed some but not all of those questions to Jane Doe, *id.*, consistent with their discretion to "determine which questions are relevant," *GBMPS* 15.  Pursuant to University protocol, John Doe and Jane Doe were each accompanied by a supporter of his or her own choosing.  Compl. ¶ 72.

Approximately one week after the hearing, John Doe received formal notice that the hearing panel determined that he was responsible for "sexual assault: non-consensual sexual intercourse" with Jane Doe.  Compl. ¶ 86.  Shortly thereafter, John Doe received notice of his sanction—suspension from the University from Spring 2014 until Fall 2015.  *Id.* ¶ 87.  John Doe was apprised of his right to appeal the sanction, and he submitted his appeal the following week. *Id.* ¶¶ 90, 92.  A week later, Dean of Columbia College James Valentini denied John Doe's appeal.  *Id.* ¶ 94.  Among other grounds, Dean Valentini rejected John Doe's argument that the investigation was inadequate due to the Title IX investigator's failure to interview certain witnesses.  *Id.*  Dean Valentini noted that those witnesses were not identified before the hearing, and he concluded that they could not provide relevant testimony because they were not present during the incident.  *Id.*  Dean Valentini also upheld the sanction on the ground that "sexual assault is egregious."  *Id.*

## C.     John Doe's Complaint

John Doe filed suit in May 2014, challenging the University's investigation, disciplinary proceedings, and sanction under Title IX and several state-law theories.  As to the Title IX claim, John Doe alleges that Columbia "conducted its investigation … and subsequent Hearing [] in a manner that was biased against the male being accused," Compl. ¶ 115, and further alleges that the University's facially neutral "guidelines and regulations are set up to disproportionately affect the male student population of the Columbia University community," *id.* ¶ 118.  He further

9

alleges that "male respondents in sexual misconduct cases at Columbia University … are invariably found guilty, regardless of the evidence, or lack thereof." *Id.* ¶ 119.

As to the state-law claims, John Doe alleges that the University deviated from its own procedures by failing to conduct an adequate and impartial investigation and hearing, and in doing so breached its agreement with John Doe and violated its state statutory and common-law duties to him. *See, e.g.*, Compl. ¶¶ 123, 129, 139-40, 147, 151, 157. John Doe seeks compensatory damages for harm to his "physical well-being," emotional and psychological health, and reputation, *see id.*, Prayer for Relief ¶ (i); compensatory damages for "past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects," *see id.*; a declaration reversing "the outcome and findings made by Columbia University," restoring his reputation, expunging his disciplinary record, permanently destroying the record of his disciplinary hearings, and declaring Columbia's policies "unconstitutional as applied," *see id.* ¶ (viii); and attorney's fees and costs, *see id.* ¶¶ (i)-(vii).

## STANDARD OF REVIEW

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), this Court "must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, __ F. Supp. 2d. __, 2014 WL 917055, at *4 (S.D.N.Y. Mar. 10, 2014). Where, however, the plaintiff has "failed to plead sufficient facts to state a claim to relief that is facially plausible," the claim must be dismissed. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that the "plaintiff must allege facts showing 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint is insufficient if it "offers only 'labels and conclusions' or 'a formulaic recitation of elements of a

cause of action'"; it similarly fails if the "plaintiff has not 'nudged [its] claims across the line

from conceivable to plausible.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555, 570).

## ARGUMENT

John Doe challenges the decision of a private university to discipline a student for sexual

misconduct committed against another student—a serious violation of the norms by which

Columbia expects and requires its students to abide, and a serious disruption of the educational

mission of the University, which includes assuring all students that they will be able to pursue

their education in a safe and nondiscriminatory environment.  Courts have consistently

recognized that such claims call for particularly restrained judicial intervention.  It is only in

"rare education cases where it is appropriate for a court to intervene."  *Papelino v. Albany Coll.*

*of Pharmacy of Union Univ.*, 633 F.3d 81, 94 (2d Cir. 2011); *see also Maas v. Cornell Univ.*, 721

N.E.2d 966, 968 (N.Y. 1999) ("This Court's case law reflects the policy that the administrative

decisions of educational institutions involve the exercise of highly specialized professional

judgment and these institutions are, for the most part, better suited to make relatively final

decisions concerning wholly internal matters."); *Routh v. Univ. of Rochester*, 981 F. Supp. 2d

184, 208  (W.D.N.Y. 2013) ("'[W]hen a disciplinary dispute arises between the student and the

institution, judicial review of the institution's actions is limited to whether the institution acted

arbitrarily or whether it substantially complied with its own rules and regulations.'" (quoting

*Jones v. Trs. of Union Coll.*, 937 N.Y.S.2d 475, 477 (App. Div. 2012))).  Indeed, the Supreme

Court has expressly enjoined that "courts should refrain from second-guessing the disciplinary

decisions made by school administrators."  *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629,

648 (1999).  Under these firmly established principles, John Doe's claims fail as a matter of law.

I.      **John Doe Fails To State A Claim For Sex Discrimination In Violation Of Title IX**

John Doe's claim for sex discrimination under Title IX should be dismissed because he fails to allege the essential component of such a claim: that he was discriminated against *on the basis of his sex*. Title IX prohibits discrimination "on the basis of sex." 20 U.S.C. § 1681(a). To raise a cognizable claim of sex discrimination, John Doe must plausibly allege that "a particular course of action [was undertaken] at least in part *because of*, not merely in spite of, its adverse effects upon" his sex. *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (emphasis added) (internal quotation marks omitted) (constitutional equal protection). Thus, to survive a motion to dismiss, John Doe must "specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of … discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994). Allegations of a disparate *impact* on members of one sex are thus insufficient for a Title IX lawsuit, as are mere conclusory assertions of intentional bias. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Yusuf*, 35 F.3d at 715 ("The fatal gap … is the lack of a particularized allegation relating to a causal connection between the flawed outcome and gender bias.").

The Complaint does not include a single plausible allegation that any purported errors or omissions in the investigative or disciplinary process are attributable to intentional gender bias. In *Yusuf*, which "raise[d] important questions as to when college disciplinary proceedings violate" Title IX, 35 F.3d at 711, the Second Circuit offered examples of the kinds of allegations necessary to state a Title IX claim in this context. "Such allegations might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Id.* at 715. John

Doe makes no such allegations here.  Nowhere in the Complaint, for example, does John Doe allege that any university official or employee said or even intimated anything at all related to John Doe's sex.

Instead, John Doe alleges in entirely conclusory fashion that Columbia engaged in a pattern of decision-making that has the effect of discriminating against men.  Specifically, he alleges that Columbia's facially sex-neutral "guidelines and regulations are set up to disproportionately affect the male student population."  Compl. ¶ 118.  But that allegation sounds in disparate impact—for which there is no private cause of action under Title IX—not disparate treatment, which is required here.  *See, e.g.*, *Weser v. Glen*, 190 F. Supp. 2d 384, 395 (E.D.N.Y.), *aff'd*, 41 F. App'x 521 (2d Cir. 2002).[10]  Further, in the same paragraph, the Complaint acknowledges that any disproportionate effect of Columbia's sexual misconduct policies on Columbia's male population is simply "a result of the higher incidence of female complainants of sexual misconduct[.]"  Compl. ¶ 118.  That point, by itself, defeats a claim of sex bias, for it shows that any disparate impact is not attributable to *intentional* discrimination.  *See Feeney*, 442 U.S. at 279.

John Doe also alleges that Columbia men against whom complaints of sexual misconduct are asserted are "invariably found guilty."  Compl. ¶ 119.  That unsupported allegation—for which John Doe cites no facts—fails to state a Title IX claim.  *See Harris v. St. Joseph's Univ.*, No. Civ.A. 13-3937, 2014 WL 1910242, at *4 (E.D. Pa. May 13, 2014) (rejecting nearly

---

[10]	The Office for Civil Rights of the United States Department of Education maintains oversight of universities' Title IX compliance, and has the authority to ensure that their reporting and disciplinary procedures for sexual misconduct are prompt and equitable.  Thus, were there anything about the University's procedures that effected a disparate impact on one sex or the other, the Office for Civil Rights would have authority to raise those concerns with the University.  But it is settled that Title IX does not confer a *private* right of action on a disparate-impact theory.  *Weser*, 190 F. Supp. 2d at 395.

identical allegation).[11]  What is more, it is contradicted by articles that John Doe has

incorporated into his own Complaint, which report that numerous male respondents have been

found *not* responsible for sexual misconduct.  *See, e.g.*, Compl. ¶ 61 (citing *Columbia drops ball*

*on jock 'rapist' probe: students*, a *New York Post* article detailing cases in which male

undergraduates were found not responsible for sexual misconduct); *id.* ¶ 65 (citing *Accessible,*

*Prompt, and Equitable?*, and *Fallen Through the Cracks*, reports from the Columbia student

newspaper about cases in which male undergraduates were found not responsible for sexual

misconduct).[12]

John Doe is clearly unhappy with the outcome of the disciplinary proceedings and the

resulting sanction.  But "one case by an individual who was subjectively dissatisfied with a result

does not" rise to the level of a Title IX violation.  *Mallory v. Ohio Univ.*, 76 F. App'x 634, 640

(6th Cir. 2003).  While he alleges various failings in the Columbia disciplinary process—for

example, that the investigator took notes that were slanted against him, Compl. ¶ 115, that the

panelists did not pose all of his submitted questions to Jane Doe on cross-examination, *id.* ¶ 82,

that certain witnesses were not present at the hearing to testify on his behalf, *id.* ¶ 4, and that

there was no rational basis for denying his appeal, *id.* ¶ 95—those complaints are untethered to

---

[11]      *Yusuf* does not point to a different result.  While *Yusuf* found that "[t]he allegation that males invariably lose when charged with sexual harassment at Vassar provides a verifiable causal connection similar to the use of statistical evidence in an employment case," 35 F.3d at 716, it did so in the context of a now-discarded pleading regime.  Under *Twombly* and *Iqbal*, that bare allegation is insufficient to "nudge [plaintiff's] claim[] across the line from conceivable to plausible."  *Atlantica Holdings*, 2014 WL 917055, at *4 (quoting *Twombly*, 550 U.S. at 570). What is more, whatever resonance that allegation had in *Yusuf*, it is manifestly insufficient here, where the articles John Doe cites in the Complaint report numerous instances of men being found *not* responsible for sexual misconduct.

[12]      John Doe further alleges that certain events—a December 2013 *New York Post* article about sexual assault at Columbia, a campaign by Columbia University Democrats to improve the University's transparency on issues of campus assault, a series of January 2014 articles in the Columbia student newspaper, town hall meetings concerning sexual misconduct held in February and March 2014, an April 2014 Twitter post about sexual assault by a student leader, and an April 2014 Title IX complaint filed with the U.S. Department of Education—provide the "backdrop" for the events at issue in this lawsuit.  Compl. ¶ 70.  But John Doe fails to note that the investigation into his sexual misconduct began in September 2013, *before* any of the events discussed.  Those incidents therefore have no relevance to his case.

any plausible allegation of bias on the basis of sex.  He has therefore failed to state a claim under Title IX.  *See Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009) (dismissing Title IX claim for failure to adequately allege sex bias despite allegations of, *inter alia*, prejudicial timing of notice and scheduling of hearing, deficient written notice, failure of investigator to meet with witnesses, failure to provide plaintiff with witness statements or opportunity to call witnesses, failure to disclose exculpatory evidence);[13] *Harris*, 2014 WL 1910242, at *4 (dismissing Title IX claim for failure to adequately allege sex bias despite allegations of disregard of exculpatory text messages by investigator, condoning of investigator's "harsh and abusive attitude" toward plaintiff (Am. Compl. ¶ 92), failure to provide plaintiff the opportunity to review the investigative report prior to the hearing, and denial of the right to cross-examine accusers).[14]

Accordingly, John Doe's Title IX claim should be dismissed.[15]

## II.     John Doe Fails To State A Claim For Breach Of Any Express Or Implied Contract

### A.      Breach of Contract

Under New York law, "an implied contract is formed when a university accepts a student for enrollment: if the student complies with the terms prescribed by the university and completes the required courses, the university must award him a degree." *Papelino*, 633 F.3d at 93.  "The

---

[13]      *See also* Compl. ¶ 132, *Doe v. Univ. of the South*, No. 4:09-cv-00062, 2009 WL 2496143 (E.D. Tenn. June 3, 2009), ECF No. 1.

[14]      *See also* Am. Compl. ¶ 92, *Harris v. St. Joseph's Univ.*, No. Civ.A. 13-3937 (E.D. Pa. Sept. 3, 2013), ECF No. 20.

[15]      To the extent that John Doe alleges a violation of his due process and equal protection rights under Title IX, *see* Compl. ¶ 114, any such claim fails because Columbia is not a state actor.  *See Fundator v. Columbia Univ.*, No. 95 Civ. 9653, 1996 WL 197780, at *1 (S.D.N.Y. Apr. 23, 1996).  And Title IX does not contemplate a statutory due process claim.  *See Vega v. State Univ. of N.Y. Bd. of Trs.*, No. 97 Civ. 5767, 2000 WL 381430, at *4 (S.D.N.Y. Apr. 13, 2000) (holding that Title IX implementing regulations do not create independent due process rights); *Cooper v. Gustavus Adolphus Coll.*, 957 F. Supp. 191, 194 (D. Minn. 1997) (relying on *Yusuf* in holding that "there is no statutory right to due process in grievance proceedings under Title IX separate from its prohibition of discrimination").

terms of the implied contract are contained in the university's bulletins, circulars and regulations made available to the student."  *Id.* (internal quotation marks omitted).  As alleged in the Complaint, John Doe's contract claim arises from the *GBMPS*, Columbia's *Student Policies and Procedures on Discrimination and Harassment*, and the University's *Confidentiality, Privacy & Non-Retaliation Policy*.  Those policies, according to the Complaint, imply an agreement between the University and its students to conduct prompt and equitable investigations into, and disciplinary proceedings arising from, charges of sexual misconduct, and to "make all reasonable efforts to maintain the confidentiality and privacy of parties involved in gender-based misconduct investigations."  *See* Compl. ¶¶ 19-22, 135-38.[16]

In these Policies and Procedures, the University commits itself to "providing a learning environment free from gender-based discrimination and harassment."  Compl. ¶ 20 (quoting *GBMPS*).  Upon receiving a report of gender-based discrimination or harassment, "the University will respond promptly, equitably, and thoroughly."  *Id.*  Respondents—the students against whom reports of sexual misconduct are made—are entitled to an array of rights and safeguards throughout the disciplinary process, including the general rights to "be treated with respect, dignity, and sensitivity throughout the process," "a prompt and thorough investigation of the allegations," and "confidentiality and privacy to the extent provided under applicable law," as well as the more specific rights to "be informed of the University's [Policies and Procedures]," to "be accompanied at the hearing by a supporter," to be given adequate time to prepare for the hearing, and to "appeal either the hearing panel's decision or the sanctions determined by the Dean of Students."  Compl. ¶ 21.

---

[16]     Except where referring specifically to one of these documents, we refer to them collectively as Columbia's "Policies and Procedures."

John Doe's claim for breach of contract does not identify any specific agreement that Columbia allegedly breached. *See* Compl. ¶¶ 122-127. Rather, Plaintiff makes general and conclusory allegations that "Columbia breached express and/or implied agreement(s) with John Doe." *Id.* ¶ 123. The contract claim should be dismissed for that reason alone. *See Routh*, 981 F. Supp. 2d at 208 (dismissing contract claim for failure to identify a "particular rule or procedure" violated by the university); *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998) (same, where student did "not point to a specific promise").

But even if the Complaint can be read to identify specific provisions of the Policies and Procedures, it fails to allege any *breach* of those provisions.[17] John Doe's contract claims fall into three categories, none of which plausibly states a claim:

*First*, John Doe complains about Columbia's failure to furnish things that are either not provided for in the Policies and Procedures or expressly forbidden by them. As to these, there is manifestly no contract breach. For example, John Doe complains about his lack of a legal representative or student advocate at the hearing. Compl. ¶¶ 75, 79. The Policies and Procedures explicitly forbid a legal representative at the hearing, and do not provide for a student advocate; rather, they provide for a "supporter," who may be a student. *GBMPS* 12-13. John Doe acknowledges that he had a supporter with him at the disciplinary hearing. Compl. ¶ 79. John Doe also alleges that the panel improperly excluded certain cross-examination questions he

---

[17]     In addition, the Complaint should be dismissed because it fails to allege that any claimed breach by Columbia resulted in injury to John Doe. Under New York law, "[c]ausation is an essential element of damages in a breach of contract action; and, as in tort, a plaintiff must prove that a defendant's breach directly and proximately caused his or her damages." *Kaye Dentistry, PLLC v. Turchin*, No. 13 Civ. 5306, 2014 WL 2649976, at *2 (S.D.N.Y. June 13, 2014) (internal quotation marks omitted). Here, that means John Doe was required to plead that, absent Columbia's alleged contract breaches, the outcome of the investigation and disciplinary proceedings would have been different—*i.e.*, that no injury would have occurred had Columbia honored its contractual duties. Absent any allegation in that regard, the contract claim fails as a matter of law. *See Kennedy v. Syracuse Univ.*, No. 94 Civ. 269, 1995 WL 548710, at *3-4 (N.D.N.Y. Sept. 12, 1995) (granting summary judgment to university on student's contract claim because student failed to demonstrate an "essential element" of the breach of contract claim—that the university's alleged breach was the proximate cause of his injuries).

had provided.  *Id.* ¶ 82.  But the Policies and Procedures give the panel discretion to "revise or remove" submitted questions.  *GBMPS* 15.  Any exclusion of John Doe's questions by the panel was permitted by the Policies and Procedures.  And John Doe has identified no specific questions that he proposed to the panel that he alleges were improperly excluded.

*Second*, John Doe alleges that he was not informed of certain disciplinary procedures, purportedly in breach of Columbia's contractual duties.  *See, e.g.*, Compl. ¶ 46 (Columbia failed to notify him of the right to submit a written statement to the hearing panel), ¶ 59 (same, with regard to the right to seek advice and counsel from his Dean of Students), ¶ 77 (same, with regard to the opportunity to make opening statement at hearing).  Even if these purported rights were guaranteed by the Policies and Procedures—and none is (though a respondent may give an opening statement at the hearing "whenever possible," *GBMPS* 14)—Columbia was under no contractual duty to remind John Doe of them.  The Policies and Procedures specify that respondents have a right "[t]o be informed of the University's Gender-Based Misconduct Policies and Procedures for Students."  *Id.* at 18.  And John Doe admits that he was both informed of the Policies and Procedures and provided with copies of them.  *See* Compl. ¶¶ 18, 139(a).  Any complaint that he was not directed to a specific provision of the Policies and Procedures cannot suffice to state a contract claim.

*Third*, John Doe alleges that the University breached its contract—presumably its non-specific contractual undertaking to respond "equitably and thoroughly" to complaints of sexual misconduct—in carrying out certain elements of the investigation and appeal.  Such general statements of university policy cannot give rise to a claim for breach of contract.  *See Ward v. New York Univ.*, No. 99 Civ. 8733, 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000) ("general statements of policy … cannot [be] the basis of a breach of contract claim"); *see also Gally*, 22 F.

Supp. 2d at 208 (holding that "a general statement of adherence by [a school] to existing anti-discrimination laws … does not create a separate and independent contractual obligation").

By premising a cause of action on the University's policy of responding "equitably and thoroughly" to complaints of sexual misconduct, John Doe asks this Court under the guise of a contract claim to second-guess the considered judgment of educational professionals responsible for "fostering a healthy and safe environment in which every member of the community can realize her or his fullest potential." *GBMPS* 1.  New York courts have consistently held that they hesitate to intervene in such matters, *see, e.g.*, *Maas*, 721 N.E.2d at 968, and have accordingly held that "when a disciplinary dispute arises between the student and the institution, judicial review of the institution's actions is limited to whether the institution acted arbitrarily or whether it substantially complied with its own rules and regulations," *Routh*, 981 F. Supp. 2d at 208 (internal quotation marks omitted).

John Doe's allegations confirm that, at the very least, Columbia "substantially complied with its own rules and regulations," and they therefore fail to state a claim for breach of contract. For example, John Doe alleges that the Title IX investigator failed to question certain witnesses (whom ultimately the Dean of Columbia College deemed "irrelevant" to the disciplinary proceedings because they were not present at the time of the sexual misconduct).  Compl. ¶¶ 44, 54, 56, 81.  Columbia's written policies provide that "[a] specially trained investigator(s) … will interview … any witnesses" and "will then prepare a report detailing the relevant content from the interviews and the documentation materials gathered." *GBMPS* 12.   The policies do not, however, give either the complainant or the respondent the authority to dictate which witnesses the investigator must interview; that is a matter for the investigator's professional judgment (subject ultimately to review by the Dean), including the judgment that certain witnesses are

irrelevant because they were not present where and when the incident took place.  And in any event, the Complaint acknowledges that the investigator *did* interview witnesses, including at least one whom John Doe himself identified.  *See, e.g.*, Compl. ¶ 49.  To the extent John Doe now complains that the investigator should have searched yet more broadly and should have interviewed additional other students—or that the Dean made an error of judgment in concluding that those witnesses were irrelevant—that does not show that Columbia disregarded its own Policies and Procedures or that it acted arbitrarily.  *See Routh*, 981 F. Supp. 2d at 208.

As to the appeal, John Doe complains that the result was not "rational."  Compl. ¶ 95. But Columbia's Policies and Procedures vest the Dean with discretion to "determine whether a change in the hearing panel's decision is warranted," *GBMPS* 16, and, as the Complaint details, the Dean's letter denying Doe's appeal set forth a reasoned basis for his decision, Compl. ¶ 94. The Complaint itself explains that the Dean concluded that none of the proffered student testimony had any bearing on whether John Doe coerced the complainant into having sexual intercourse behind closed doors, and that because the witness issue was not raised until the appeal, there was no error in their exclusion.  *Id.*  John Doe may disagree with that reasoning, but the Dean's denial of his appeal was not arbitrary, and was entirely consistent with University's Policies and Procedures.

All told, the Complaint describes a thorough and fair disciplinary process.  John Doe alleges that he was well aware of Columbia's publicly available Policies and Procedures governing those proceedings.  Compl. ¶¶ 42, 139(a).  He acknowledges that he was afforded the opportunity to submit relevant questions to be asked of the accuser (*id*. ¶ 82), was accompanied at the hearing by a supporter of his choice (*id*. ¶ 72), was able to propose the inclusion of a witness who was subsequently interviewed (*id*. ¶¶ 49, 54), and was provided the opportunity to

pursue an appeal, which he did (*id.* ¶ 94).  That John Doe was unsatisfied with the result and the

discipline he received is insufficient to state a contract claim.[18]

### B.        Breach of the Implied Covenant of Good Faith and Fair Dealing

John Doe's claim for breach of the covenant of good faith and fair dealing should also be

dismissed.  "Implicit in all contracts is a covenant of good faith and fair dealing in the course of

contract performance," which encompasses "any promises which a reasonable person in the

position of the promise would be justified in understanding were included."  *Dalton v. Educ.*

*Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995) (internal quotation marks omitted).  Here, John

Doe's claim for breach of the covenant of good faith and fair dealing is inextricably linked to his

breach of contract claim.  *See, e.g.*, *Gally*, 22 F. Supp. 2d at 206 ("When a student enrolls at a

university, an implied contract arises: if the student complies with the terms prescribed by the

university, she will obtain the degree she seeks….  Implicit in this contract is that the university

must act in good faith in dealing with the student….  Also implicit is that the student must fulfill

her end of the bargain by satisfying the university's academic requirements and complying with

its procedures if she hopes to receive her degree." (citations omitted)); *Dalton*, 663 N.E.2d at

292-94 (analyzing breach of contract and breach of covenant of good faith and fair dealing

together); *cf. Fraad-Wolff v. Vassar Coll.*, 932 F. Supp. 88, 91 (S.D.N.Y. 1996) ("[W]hatever the

legal theory underlying plaintiff's claim may be, the crucial issue is whether defendant

conducted the disciplinary proceedings against plaintiff substantially in accordance with its

---

[18]        There is no plausible allegation that Columbia violated its own confidentiality policy, which states that
Columbia will "make all reasonable efforts to maintain … confidentiality."  *See* Compl. ¶¶ 91-92; *GBMPS* 10.  The
Policies and Procedures "encourage [individuals participating in the investigation] to maintain the privacy of the
process[.]"  *GBMPS* 10.  But Columbia has no control over individuals other than its employees, and Doe makes no
plausible allegation that a Columbia employee leaked confidential information to a campus newspaper.  Compl. ¶ 91.

established procedures.").  Because John Doe's claim for breach of contract fails, his claim for breach of the implied covenant of good faith and fair dealing necessarily fails as well.[19]

### III.   John Doe Fails To State A Claim For Violation Of G.B.L. § 349

"To state a [New York General Business Law] section 349 cause of action, a plaintiff must allege that the defendant's challenged act was consumer-oriented and materially misleading and resulted in injury to the plaintiff."  *Kickertz v. New York Univ.*, 971 N.Y.S.2d 271, 277 (App. Div. 2013) (internal citation omitted).  John Doe alleges that Columbia misled him by causing him to believe that (1) it would follow its policies and (2) if he paid tuition, Columbia would hold up its obligations as described in those policies.  Compl. ¶ 139.

This claim, premised as it is on an allegation that Columbia failed to follow its own policies, fails for the reasons enumerated above with respect to John Doe's contract claim.  *See supra* Section II.A.  And the claim has another fundamental defect:  John Doe fails to allege any act of deception on Columbia's part or to assert how its conduct here was in any way misleading.  *See* Compl. ¶¶ 135-138.  His bare allegation that he was "caused to believe" that Columbia would follow its policies, *id.* ¶ 139, fails to state a Section 349 claim.  *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) (citing *Benjaminov v. Republic Ins. Grp.*, 660 N.Y.S.2d 148, 149 (App. Div. 1997)) (dismissing G.B.L. § 349 claim where plaintiff neither identified specific deceptive acts nor explained why they were deceptive).

---

[19]      Further, the sole allegation underlying John Doe's good faith and fair dealing claim is that Columbia "met[ed] out a disproportionate sanction."  Compl. ¶ 129.  That allegation alone cannot support the claim:  It does not entail a lack of good faith, it is untethered to any contractual undertaking, and it contains no basis for determining whether his sanction was "disproportionate."  The claim should be dismissed on this ground as well.

**IV.    John Doe Fails To State A Claim For Estoppel And Reliance**

There is no claim for "estoppel and reliance" cognizable under New York law.  To the

extent John Doe alleges either promissory estoppel or equitable estoppel, both claims are

deficient and fail at the pleading stage.

"Promissory estoppel is 'a rule applicable only in the absence of an enforceable contract.'"

*Holmes v. Lorch*, 329 F. Supp. 2d 516, 527 (S.D.N.Y. 2004).  Because a contract exists between

John Doe and Columbia, *see* Compl. ¶ 123, this claim cannot lie.  Even apart from this elemental

failing, the claim is inadequately pleaded.  A plaintiff asserting promissory estoppel must plead

"i) a clear and unambiguous promise; ii) a reasonable and foreseeable reliance on [his] part; and

iii) an unconscionable injury to [him] as a result of this reliance."  *Ward*, 2000 WL 1448641, at

*6.  Not only has John Doe failed to identify "a clear and unambiguous promise" Columbia

made to him, but, as discussed above, the allegations in the Complaint only demonstrate that

Columbia complied with each undertaking made in its bulletin and related documents.  "[A]

claim for promissory estoppel cannot survive" where, as here, "defendants have neither breached

the implicit contract between the parties nor violated the University's rules and procedures."  *Id.*

Any claim for equitable estoppel fails as well.  The "'doctrine of equitable estoppel is

properly invoked where the enforcement of the rights of one party would work an injustice upon

the other party due to the latter's justifiable reliance upon the former's words or conduct.'"  *In re*

*Vebeliunas*, 332 F.3d 85, 93 (2d Cir. 2003) (quoting *Kosakow v. New Rochelle Radiology*

*Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001)).  The plaintiff must demonstrate, as to the party

estopped, "(1) conduct which amounts to a false representation or concealment of material facts;

(2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the

real facts."  *Id.* at 93-94.  To demonstrate the false representation or concealment of material

facts in this context, a "plaintiff would have to show that defendants knew that they were not

going to follow the procedures in the Handbook, and that they concealed that fact from him."
*Romer v. Bd. of Trs. of Hobart & William Smith Colls.*, 842 F. Supp. 703, 710 (W.D.N.Y. 1994).
There is no allegation in the Complaint that could be construed to satisfy this element.  The claim
should therefore be dismissed.

## V.      John Doe Fails To State A Claim For Intentional Infliction Of Emotional Distress

The Complaint fails to allege conduct anywhere near the level required to sustain a cause
of action for intentional infliction of emotional distress (IIED) under New York law.  To
establish an IIED claim, a plaintiff must show "(i) extreme and outrageous conduct; (ii) intent to
cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal
connection between the conduct and the injury; and (iv) severe emotional distress."  *Howell v.
New York Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993).  Whether conduct is outrageous is a
matter of law for the court to decide.  *See Wahlstrom v. Metro-North Commuter R.R. Co.*, 89 F.
Supp. 2d 506, 529 (S.D.N.Y. 2000) (citing *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)).
"New York … requires that the conduct be so outrageous in character, and so extreme in degree,
as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized society."  *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985)
(internal quotation marks omitted).

The gravamen of the Complaint is that Columbia failed to abide by its own procedural
guidelines and regulations in conducting its investigation and disciplining John Doe.  This
alleged conduct is a far cry from the extreme and outrageous behavior—typically involving
physical or psychological abuse or a long-running campaign of harassment—that courts find
adequate to state a claim for intentional infliction of emotional distress.  *See, e.g., McGrath v.
Dominican Coll. of Blauvelt, N.Y.*, 672 F. Supp. 2d 477, 493 (S.D.N.Y. 2009) (denying motion to

dismiss by defendants in case where college "refused to investigate allegations of rape and directed the alleged victim to a police detective who was also a school employee," and student subsequently committed suicide).

Indeed, several courts have held that even patently false charges of sexual harassment are not examples of "extreme or outrageous conduct." *See, e.g.*, *Routh*, 981 F. Supp. 2d at 215 (dismissing IIED claim against employee who allegedly made false charges; "such false accusations are insufficiently extreme and outrageous to establish an IIED claim under New York law"); *see also id.* at 215 n.20 (citing *Fraad-Wolff*, 932 F. Supp. at 93-94 (college's handling of investigation and hearing of sexual harassment charges was not sufficiently "extreme and outrageous" for IIED claim); *James v. DeGrandis*, 138 F. Supp. 2d 402, 421 (W.D.N.Y. 2011) ("Even a false charge of sexual harassment does not rise to the level of outrage required to recover on an intentional infliction of emotional distress claim under New York law.")).

Nor has John Doe adequately alleged the type of harm required for an intentional infliction of emotional distress claim. "[T]he distress inflicted must be so severe that no reasonable man could be expected to endure it." *Richard L. v. Armon*, 536 N.Y.S.2d 1014, 1016 (App. Div. 1989) (internal quotation marks omitted). Although John Doe alleges that he suffers distress as a result of his experience, *see*, *e.g.*, Compl. ¶¶ 103, 152, it does not rise to the required level of severity. John Doe acknowledges that he will be able to return to Columbia in about a year, and that he can transfer to a different school. *See* Compl. ¶¶ 100, 104. John Doe also complains of suffering financial harm, but acknowledges that any financial loss is his parents', not his. Compl. ¶ 102. The IIED claim should therefore be dismissed.

**VI.     John Doe Fails To State A Claim for Negligence**

John Doe alleges that Columbia breached its "duties of care" to him, namely its "duty of

reasonable care in the conduct and investigation of the allegations of rape and sexual misconduct

against him." Compl. ¶ 156.  But any duty that Columbia owed to him arises solely out of the

parties' contract.  Because the only duties Columbia owed to John Doe are contractual, any

negligence claim fails as a matter of law.

Under New York law, "[t]he elements of a cause of action alleging common-law

negligence are a duty owed by the defendant to the plaintiff, a breach of that duty, and a showing

that the breach of that duty proximately caused injury to the plaintiff."  *Merchants Mut. Ins. Co.*

*v. Quality Signs of Middletown*, 973 N.Y.S.2d 787, 788 (App. Div. 2013).  When the duty of care

at issue is created entirely by contract, no tort liability can lie.  *New York Univ. v. Cont'l Ins. Co.*,

662 N.E.2d 763, 767 (N.Y. 1995) (a "defendant may be liable in tort when it has breached a duty

of reasonable care distinct from its contractual obligations, or when it has engaged in tortious

conduct separate and apart from its failure to fulfill its contractual obligations."); *Clark-*

*Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 194 (N.Y. 1987) (concluding that the

plaintiff's allegation of negligence did not stem from a legal duty independent of the contractual

duty because "[e]ach of these allegations … is merely a restatement, albeit in slightly different

language, of the 'implied' contractual obligations asserted in the cause of action for breach of

contract").  The Complaint alleges that Columbia's obligations to John Doe stem entirely from

the implied contract between the parties.  The negligence claim fails as a matter of law for that

reason alone.

Further, it is settled that absent some separate voluntary undertaking—for example,

where a university also serves as a student's landlord—a university owes its students no other,

non-contractual duty of care.  *See, e.g.*, *Talbot v. New York Inst. of Tech.*, 225 A.D.2d 611, 612-

26

13 (App. Div. 1996); *Vought v. Teachers Coll., Columbia Univ.*, 511 N.Y.S.2d 880, 881 (App.

Div. 1987).  Because the Complaint alleges no such separate undertaking,[20] John Doe's

negligence claim fails as a matter of law.

## VII.   John Doe Fails To State A Claim For Declaratory Judgment

Finally, the Complaint asserts a cause of action for declaratory judgment.  But "[t]he

[Declaratory Judgment Act] is 'procedural only,' and 'does not create an independent cause of

action.'"  *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) (internal citation omitted).

The claim should be dismissed on this ground alone.  In addition, because all of John Doe's

substantive claims are subject to dismissal for the reasons discussed, there is no legal grounding

for a declaratory judgment.  The claim should be dismissed for this reason as well.  *See Spiteri v.

Russo*, No. 12-CV-2780, 2013 WL 4806960, at *19 n.30 (E.D.N.Y. Sept. 7, 2013) ("A plaintiff

cannot maintain a claim for a declaratory judgment where the underlying substantive claim has

been dismissed since the Declaratory Judgment Act … only created a procedural mechanism and

not an independent cause of action.").

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

---

[20]     Columbia's Policies and Procedures for investigating and disciplining sexual misconduct form the contract between the University and John Doe; they are not separate, non-contractual undertakings.  Further, there is no New York cause of action for negligent prosecution or investigation.  *See Pandolfo v. U.A. Cable Sys.*, 568 N.Y.S.2d 981, 982 (App. Div. 1991) (citing *Burt v. Smith*, 73 N.E. 495, 496 (N.Y. 1905)).  To the extent that John Doe purports to make such a claim, it should be dismissed.  *See Grennan v. Nassau Cnty.*, Civil Action No. 04-2158, 2007 WL 952067, at *22 (E.D.N.Y. Mar. 29, 2007) (summary judgment granted on teacher's claims against school that she was disciplined following an allegedly flawed administrative hearing because "New York does not recognize a cause of action for negligent investigation"); *Weitz v. State*, 696 N.Y.S.2d 656, 660  (Ct. Cl. 1999) (negligence claim brought by suspended student dismissed because "[t]he law is settled that as 'a matter of public policy, there is no cause of action in the State of New York for negligent prosecution or investigation'").

Dated: New York, New York
      July 11, 2014

Respectfully submitted,


/s/ Alan E. Schoenfeld

Paul R.Q. Wolfson (*pro hac vice*)
Bruce M. Berman (*pro hac vice*)
Danielle Conley (*pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363
paul.wolfson@wilmerhale.com
bruce.berman@wilmerhale.com
danielle.conley@wilmerhale.com

Alan E. Schoenfeld
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com

*Attorneys for Defendants Columbia University
and Trustees of Columbia University*