UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOHN DOE,

                     Plaintiff,

          -against-

COLUMBIA UNIVERSITY and
TRUSTEES of COLUMBIA UNIVERSITY,

                Defendants.

:
:
:
:
:
:
:

    Civ. Action No. 14-cv-3573-JMF

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

STATUTORY, REGULATORY, AND POLICY BACKGROUND ............................................ 2

        A.    Title IX ............................................................................. 2

        B.    Columbia's Gender-Based Misconduct Policies for Students ................... 4

STATEMENT OF FACTS ............................................................................. 7

        A.    Columbia's Investigation Of The Sexual Misconduct Complaint Against John Doe ............................................................................. 7

        B.    Sexual Misconduct Hearing and Appeal ....................................... 8

        C.    This Lawsuit ............................................................................. 9

STANDARD OF REVIEW ............................................................................. 10

ARGUMENT ............................................................................. 11

    I.    JOHN DOE FAILS TO STATE A CLAIM FOR SEX DISCRIMINATION IN VIOLATION OF TITLE IX ............................................................. 12

    II.    JOHN DOE FAILS TO STATE A CLAIM FOR VIOLATION OF OCR RULES ............................................................................. 17

    III.    JOHN DOE FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ............................................................................. 18

        A.    Alleged Breach of Contract Terms ........................................... 18

        B.    Breach of the Implied Covenant of Good Faith and Fair Dealing ........... 23

    IV.    JOHN DOE FAILS TO STATE A CLAIM FOR VIOLATION OF G.B.L. § 349 ............................................................................. 24

    V.    JOHN DOE FAILS TO STATE A CLAIM FOR ESTOPPEL AND RELIANCE ............................................................................. 24

    VI.    JOHN DOE FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ....................................... 26

    VII.    JOHN DOE FAILS TO STATE A CLAIM FOR NEGLIGENCE ..................... 27

    VIII.    JOHN DOE FAILS TO STATE A CLAIM FOR DECLARATORY JUDGMENT ............................................................................. 28

CONCLUSION ............................................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).............................................................................................10, 12, 16

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC,*
   __ F. Supp. 2d __, 2014 WL 917055 (S.D.N.Y. Mar. 10, 2014)................................10, 11, 16

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007).............................................................................................10, 11, 16

*Bliss v. Putnam Valley Central School District,*
   No. 7:06-cv-15509, 2011 WL 1079944 (S.D.N.Y. Mar. 24, 2011)..........................................3

*Burt v. Smith,*
   73 N.E. 495 (N.Y. 1905)....................................................................................................28

*Cavallaro v. Pozzi,*
   814 N.Y.S.2d 462 (App. Div. 2006)....................................................................................26

*Chevron Corp. v. Naranjo,*
   667 F.3d 232 (2d Cir. 2012)..............................................................................................28

*Clark-Fitzpatrick, Inc. v. Long Island Railroad Co.,*
   516 N.E.2d 190 (N.Y. 1987)..............................................................................................28

*Cooper v. Gustavus Adolphus College,*
   957 F. Supp. 191 (D. Minn. 1997).......................................................................................16

*Dalton v. Educational Testing Service,*
   663 N.E.2d 289 (N.Y. 1995)..............................................................................................23

*Davis v. Monroe County Board of Education,*
   526 U.S. 629 (1999)......................................................................................................3, 11

*DeLuca v. AccessIT Group, Inc.,*
   695 F. Supp. 2d 54 (S.D.N.Y. 2010)....................................................................................4

*Doe v. Bradshaw,*
   No CIV.A. 11-11593, 2013 WL 5236110 (D. Mass. Sept. 16, 2013) ....................................17

*Doe v. Brimfield Grade School,*
   552 F. Supp. 2d 816 (C.D. Ill. 2008) ..................................................................................17

*Doe v. University of the South*,
   687 F. Supp. 2d 744 (E.D. Tenn. 2009) ......................................................................16, 17

*Fraad-Wolff v. Vassar College*,
   932 F. Supp. 88 (S.D.N.Y. 1996) ..............................................................................23, 27

*Gally v. Columbia University*,
   22 F. Supp. 2d 199 (S.D.N.Y. 1998) ..........................................................................21, 23

*Gebser v. Lago Vista Independent School District*,
   524 U.S. 274 (1998) ........................................................................................................3, 17

*Gill v. Paige*,
   226 F. Supp. 2d 366 (E.D.N.Y. 2002) ..............................................................................18

*Grennan v. Nassau County*,
   Civil Action No. 04-2158, 2007 WL 952067 (E.D.N.Y. Mar. 29, 2007) ..............................28

*Haley v. Va. Commonwealth University*,
   948 F. Supp. 573 (E.D. Va. 1996) ....................................................................................14

*Harris v. St. Joseph's University*,
   No. Civ.A. 13-3937, 2014 WL 1910242 (E.D. Pa. May 13, 2014) ....................................14, 16

*Holmes v. Lorch*,
   329 F. Supp. 2d 516 (S.D.N.Y. 2004) ..............................................................................25

*Horowitz v. Stryker Corp.*,
   613 F. Supp. 2d 271 (E.D.N.Y. 2009) ..............................................................................24

*Howell v. New York Post Co.*,
   612 N.E.2d 699 (N.Y. 1993) ............................................................................................26

*In re Vebeliunas*,
   332 F.3d 85 (2d Cir. 2003) ..............................................................................................25

*James v. DeGrandis*,
   138 F. Supp. 2d 402 (W.D.N.Y. 2011) ............................................................................27

*Jones v. Trustees of Union College*,
   937 N.Y.S.2d 475 (App. Div. 2012) ................................................................................11

*Kaye Dentistry, PLLC v. Turchin*,
   No. 13 Civ. 5306, 2014 WL 2649976 (S.D.N.Y. June 13, 2014) ......................................19

*Kennedy v. Syracuse University*,
   No. 94 Civ. 269, 1995 WL 548710 (N.D.N.Y. Sept. 12, 1995) ........................................19

*Kickertz v. New York University,*
    971 N.Y.S.2d 271 (App. Div. 2013) .................................................................24

*Maas v. Cornell University,*
    721 N.E.2d 966 (N.Y. 1999) ...............................................................11, 21

*Mallory v. Ohio University,*
    76 F. App'x 634 (6th Cir. 2003) .......................................................15, 16

*Marcano v. City of Schenectady,*
    __ F. Supp. __ , 2014 WL 3953198 (N.D.N.Y. Aug. 13, 2014) ...........................26

*Martin v. Citibank, N.A.,*
    762 F.2d 212 (2d Cir. 1985) ...............................................................26

*Merchants Mutual Insurance Co. v. Quality Signs of Middletown,*
    973 N.Y.S.2d 787 (App. Div. 2013) ........................................................27

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Group plc,*
    709 F.3d 109 (2d Cir. 2013)................................................................7

*New York University v. Continental Insurance Co.,*
    662 N.E.2d 763 (N.Y. 1995) ...............................................................28

*Pandolfo v. U.A. Cable Systems,*
    568 N.Y.S.2d 981 (App. Div. 1991) .......................................................28

*Papelino v. Albany College of Pharmacy of Union University,*
    633 F.3d 81 (2d Cir. 2011).............................................................11, 18

*Personnel Administrator of Mass. v. Feeney,*
    442 U.S. 256 (1979)...................................................................12, 13

*Richard L. v. Armon,*
    536 N.Y.S.2d 1014 (App. Div. 1989) ......................................................27

*Romer v. Board of Trustees of Hobart & William Smith Colleges,*
    842 F. Supp. 703 (W.D.N.Y. 1994) .........................................................25

*Ross v. Corp. of Mercer University,*
    506 F. Supp. 2d 1325 (M.D. Ga. 2007) ....................................................17

*Routh v. University of Rochester,*
    981 F. Supp. 2d 184 (W.D.N.Y. 2013)...........................................11, 21, 22, 26

*Spiteri v. Russo,*
    No. 12-CV-2780, 2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013) ..............................28

*Talbot v. N.Y. Institute of Technology*,
  639 N.Y.S.2d 135 (App. Div. 1996)............................................................28

*Vega v. State University of N.Y. Board of Trustees*,
  No. 97 Civ. 5767, 2000 WL 381430 (S.D.N.Y. Apr. 13, 2000)................................16

*Vought v. Teachers College, Columbia University*,
  511 N.Y.S.2d 880 (App. Div. 1987)............................................................28

*Ward v. New York University*,
  No. 99 Civ. 8733, 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000)....................................20, 25

*Weitz v. State*,
  696 N.Y.S.2d 656 (Ct. Cl. 1999) ...............................................................28

*Weser v. Glen*,
  190 F. Supp. 2d 384 (E.D.N.Y.), *aff'd*, 41 F. App'x 521 (2d Cir. 2002) .............................13

*Yusuf v. Vassar College*,
  35 F.3d 709 (2d Cir. 1994)....................................................................2, 12, 13, 16

**DOCKETED CASES**

*Doe v. University of the South*,
  No. 4:09-cv-00062 (E.D. Tenn.)...............................................................16

*Harris v. St. Joseph's University*,
  No. Civ.A. 13-3937 (E.D. Pa.)................................................................17

**STATUTES & CODES**

20 U.S.C. § 1681(a) .........................................................................2, 12

20 U.S.C. § 1682............................................................................3

N.Y. Gen. Bus. Law § 349....................................................................24

**RULES**

Fed R. Civ. P. 12(b)(6)........................................................................1, 10

Fed R. Civ. P. 8(a)(2).........................................................................12

**OTHER AUTHORITIES**

34 C.F.R. § 106.8(b) ..........................................................................3

72 Fed. Reg. 3432 (Jan. 25, 2007) .............................................................3, 18

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Columbia University and the Trustees of Columbia University ("Columbia" or "the University") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Amended Complaint.

## PRELIMINARY STATEMENT

Following an investigation conducted pursuant to Columbia's written procedures, a hearing before three neutral panelists, and an appeal, John Doe was found responsible for sexual misconduct in violation of the University's Gender-Based Misconduct Policies for Students, and was suspended for one and one-half academic years. John Doe now asks this Court to substitute its judgment for that of the University in this internal educational matter, and alleges in conclusory fashion that Columbia was intent on punishing him because he is a man. The Amended Complaint should be dismissed.

Sexual misconduct committed against students by other members of the University community threatens Columbia's educational mission. Columbia's policies and procedures for investigating and disciplining students for sexual misconduct reflect the University's judgment about how best to secure a safe, inclusive educational environment for all students, free from the presence or threat of gender bias, harassment, or intimidation. The University's decision to discipline a student for sexual misconduct is thus an educational one. Such decisions warrant and have long received deference from the courts where, as here, the University has complied with its internal policies and procedures and there is no plausible allegation of discrimination or bad faith.

Columbia moved to dismiss John Doe's original complaint on the ground that it failed to allege discrimination on the basis of sex. John Doe responded by punctuating his Amended Complaint with conclusory allegations that Columbia and its investigator acted with "an anti-

1

male bias." *See, e.g.*, Am. Compl. ¶¶ 4, 50, 56, 64, 89.[1]  Those allegations are still insufficient to

state a claim under any statute or common-law theory.  Although John Doe alleges that he was

treated unfairly, he does not plead a single fact plausibly tying the treatment he allegedly

received to his gender.  As to his contract and related state-law claims, John Doe's allegations

are either inconsistent with the very policies and procedures that constitute his implied contract

with the University or are contradicted by other allegations in the Amended Complaint.

Columbia's policies and procedures for resolving allegations of sexual misconduct take

into account the interests of both complaining and responding students, as well as the interests of

the rest of Columbia's students and the University's educational mission.  Such allegations are a

matter for administrative determination by the University and reflect the exercise of its

professional educational judgment.  When the University determines, consistent with its

published procedures, that a student is responsible for sexual misconduct in violation of the

University's policies, the University acts well within its rights in disciplining him or her.

## STATUTORY, REGULATORY, AND POLICY BACKGROUND

A.    *Title IX*

Congress enacted Title IX of the Education Amendments of 1972 to "supplement the

Civil Rights Act of 1964's bans on racial discrimination in the workplace and in universities" by

prohibiting discrimination on the basis of sex in federally funded educational programs.  *Yusuf v.*

*Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994).  The statute provides, in relevant part, that "[n]o

person in the United States shall, on the basis of sex, be excluded from participation in, be denied

the benefits of, or be subjected to discrimination under any education program or activity

receiving Federal financial assistance."  20 U.S.C. § 1681(a).  An educational institution's failure

---

[1]     The Amended Complaint contains an error in paragraph numbering; two paragraphs are identified with the numbers 138 to 157.  Where this motion refers to paragraphs numbered 138-157, it also includes page numbers.

to prevent or remedy sexual harassment of a student, including sexual assault, may violate Title IX.  *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999); *Bliss v. Putnam Valley Cent. Sch. Dist.*, No. 7:06-cv-15509, 2011 WL 1079944, at *4 (S.D.N.Y. Mar. 24, 2011); Ltr. from Russlynn Ali, Ass't Sec'y for Civil Rights, U.S. Dep't of Educ. at 1 (Apr. 4, 2011) ("Dear Colleague Ltr.") (Exh. A) ("Sexual harassment of students, which includes acts of sexual violence, is a form of sex discrimination prohibited by Title IX.").[2]

Title IX is principally enforced through administrative oversight by the Office for Civil Rights of the United States Department of Education ("OCR").  The statute instructs federal agencies that distribute education funding to enact rules and regulations in furtherance of the non-discrimination mandate, and to enforce those rules "through proceedings to suspend or terminate funding or through 'other means authorized by law.'"  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 288 (1998) (quoting 20 U.S.C. § 1682).[3]  In furtherance of that mandate, OCR has promulgated regulations requiring schools that receive federal funding to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited."  34 C.F.R. § 106.8(b).  OCR reviews schools' grievance procedures to ensure that they provide for "[a]dequate, reliable, and impartial investigation of complaints," "[d]esignated and reasonably prompt time frames for the major stages of the complaint process," and "[n]otice to parties of the outcome of the complaint."  Dear Colleague Ltr. 9.  Title IX obligates schools to investigate and redress sexual misconduct involving students whether or not the conduct is prohibited by

---

[2]     The Department of Education's "Dear Colleague Letter" is a "significant guidance document" under the Office of Management and Budget's Final Bulletin for Agency Good Guidance Practices, 72 Fed. Reg. 3432 (Jan. 25, 2007).  Dear Colleague Ltr. 1 n.1.  Unlike regulations, significant guidance documents are not intended to prescribe legally binding requirements on recipients of federal funds, but they "set[] forth [the agency's] policy on a statutory, regulatory, or technical issue or an interpretation of a statutory or regulatory issue." 72 Fed. Reg. at 3434.

[3]     The Supreme Court has held that Title IX's non-discrimination mandate is also enforceable through an implied private right of action.  *See Gebser*, 524 U.S. at 281.

criminal law and whether or not a criminal investigation is underway; not all conduct prohibited by Title IX is criminal, and the standards for criminal investigations and Title IX investigations are different.  *See id.* at 10 ("Conduct may constitute unlawful sexual harassment under Title IX even if the police do not have sufficient evidence of a criminal violation.").

      B.    *Columbia's Gender-Based Misconduct Policies for Students*[4]

At all times relevant to this case, Columbia had in place policies and procedures to ensure the prompt and equitable resolution of complaints involving sexual misconduct.  Those policies—which are designed to "foster[] a healthy and safe environment in which every member of the community can realize her or his fullest potential"[5] and to "provid[e] a learning, living, and working environment free from discrimination and harassment and to foster[] a nurturing and vibrant community founded upon the fundamental dignity and worth of all of its members"[6]—are provided to all students and are accessible on Columbia's website.  Complaints against students for sexual misconduct are handled in accordance with Columbia's *Gender-Based Misconduct Policies for Students* ("*GBMPS*") (Exh. B).[7]

The *GBMPS* enumerate six specific forms of impermissible conduct, providing students and other members of the University community with notice that certain behavior is not tolerated and can result in disciplinary action.  As relevant here, "sexual assault (non-consensual sexual

---

[4]    John Doe has incorporated Columbia's policies and procedures into the Amended Complaint ("Am. Compl."). *See* Am. Compl. ¶¶ 19-23, 144 (p. 51), 157-160 (pp. 54-58) (citing policies); *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 59-60 (S.D.N.Y. 2010).

[5]    *Gender-Based Misconduct Policies for Students* 1 ("*GBMPS*") (Exh. B).

[6]    *Student Policies and Procedures on Discrimination and Harassment* 2 ("*SPPDH*") (Exh. C).

[7]    On August 15, 2014, Columbia revised its policies and procedures concerning gender-based misconduct involving students in light of recent guidance from the federal government.  The versions of the policies and procedures discussed herein, however, are those that were in effect during the investigation and disciplinary proceedings about which John Doe complains.  For narrative clarity, those policies and procedures are discussed in the present tense even though the current (post-August 15, 2014) policies and procedures, and the offices and officials responsible for carrying them out, differ in various respects.

intercourse)" is defined to include "[a]ny form of sexual intercourse … without consent." *GBMPS* 3.  Under this heading, the *GBMPS* provide clear notice that undue pressure for an intimate relationship or sexual activity may be considered misconduct; among the listed "[e]xamples of [g]ender-[b]ased [m]isconduct" are "[p]ressure for a date or a romantic or intimate relationship" and "[p]ressure for or forced sexual activity."  *Id.* at 2.

The *GBMPS* also establish reporting and investigative procedures and timelines for responding to complaints of gender-based misconduct.  *GBMPS* 9, 11-12.  Under those procedures, after a complaint is received, the respondent is notified of the filing and is given both written notice of the allegations and an opportunity to meet with the Assistant Director for Student Services for Gender-Based and Sexual Misconduct to review the relevant policies and procedures.  *Id.* at 11-12.  A trained investigator interviews the complainant, respondent, and relevant witnesses, assembles relevant documentation, and drafts a report summarizing the gathered information.  *Id.* at 12.  The investigator retains significant discretion to determine whom to interview, but the *GBMPS* provide that investigators "will not interview witnesses whose sole purpose is to provide character information."  *Id.*[8]

If, following the investigation, the University determines that there is reasonable suspicion of a policy violation, the respondent and complainant are given the opportunity to review the investigative report.  *GBMPS* 13.  If, after reviewing the report, the "respondent declines responsibility, or chooses not to respond, a hearing panel will be convened," ordinarily within 30 days.  *Id.* at 13-14.  The panelists—who must not have any affiliation with the complainant or respondent, and whose participation may be challenged by either party—have the

---

[8]     Throughout the investigation and hearing process, both the complainant and respondent are entitled to the support of a member of the University community.  The supporter may "talk quietly with the student or pass notes in a non-disruptive manner," but may not "in any way, intervene in the meeting/hearing or address the investigator/hearing panel."  *GBMPS* 12-13.

opportunity to review the investigative report and documentation prior to a hearing.  *Id.* at 14.
The hearing is conducted according to prescribed procedures set forth in the *GBMPS* and may
include a complainant statement, a respondent statement, questions by the panelists to the
complainant and respondent, testimony by and questioning of witnesses, clarification from the
investigator, and closing statements from the complainant and respondent.  *Id.* at 14-15.  Both
the complainant and the respondent may propose questions of the other and of witnesses, but the
hearing panel decides which questions will be asked and which witnesses will be heard.  *Id.* at
15.

     To find a respondent responsible for a policy violation, at least two of the three panel
members must determine that a preponderance of the evidence supports such a finding.  *GBMPS*
15.  The parties are informed in writing of the panel's decision.  *Id.* at 16-17.  If the respondent is
found responsible, the Dean of Students for the respondent's school determines the appropriate
sanction based on an array of enumerated factors, including "the violation, prior disciplinary
violations, precedent cases, [and] University safety concerns."  *Id.* at 15.  Sanctions may range
from a reprimand or warning to suspension or dismissal from the University.  *Id.* at 16.  The
parties are notified of the sanction in writing.  *Id.* at 16-17.

     Either party is entitled to appeal the panel's decision, the sanction, or both.  *GBMPS* 16.
There are three grounds for appeal: (1) that an outcome-determinative procedural error was
made, (2) that outcome-determinative substantive new evidence has become available, and (3)
that the sanction was too severe or not severe enough.  *Id.*  The decision to uphold or reverse the
panel's decision is committed to the discretion of the Dean of the respondent's school, and it is
not appealable.  *Id.*

Finally, to ensure the integrity of the investigation, all parties and relevant witnesses are informed of the "University's expectation regarding confidentiality, privacy, and non-retaliation." *GBMPS* 10.  The hearings themselves are closed.  *Id.* at 14.  The University undertakes to "make all reasonable efforts to maintain the confidentiality and privacy of parties involved in gender-based misconduct investigations, restricting information to those with a legitimate need to know." *Id.* at 10.

## STATEMENT OF FACTS[9]

A.      *Columbia's Investigation Of The Sexual Misconduct Complaint Against John Doe*

Shortly after the start of school in September 2013, Columbia received a complaint from a University undergraduate student ("Jane Doe"), who claimed that John Doe had coerced her into non-consensual sexual intercourse at the end of the previous semester.  Am. Compl. ¶¶ 3, 42.  As provided for by its policies and procedures, the University initiated an investigation.  *Id.* ¶¶ 42-43.[10]

After receiving a "formal written notice" of the complaint against him, Am. Compl. ¶ 43, John Doe met with Columbia's Title IX investigator "for the purpose of providing his account of the evening of May 12, 2013," *id.* ¶ 47.[11]  The investigator "took notes on what she deemed important[.]" *Id.* ¶ 48.  John Doe met with the investigator a second time one month later.  *Id.*

---

[9]      The facts recited herein are drawn from the Amended Complaint as well as pertinent Columbia policies and procedures that are incorporated in the Amended Complaint.  *See supra* n.4.  The Amended Complaint's factual allegations are accepted as true for purposes of this motion.  *See N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp. plc*, 709 F.3d 109, 119-20 (2d Cir. 2013).

[10]     John Doe was aware of Columbia's gender-based misconduct policies and procedures, had received copies of them, and was able to view them on Columbia's website.  Am. Compl. ¶¶ 18, 161, 169-70.

[11]     John Doe claims that he was "utterly blindsided by the allegations" when he was served with written notice of the complaint in September 2013.  Am. Compl. ¶ 44.  That is not plausible.  As the Amended Complaint alleges, John Doe had been contacted in May 2013 by his resident advisor, who "informed him that Jane Doe had approached her to discuss the Evening of May 12 in confidence, but that [the resident advisor] was required by state law to report it to Columbia University." *Id.* ¶ 39.

¶ 55.  At the second meeting, John Doe suggested that the investigator speak with a particular witness, whom he identified by name, regarding the night of the alleged sexual misconduct.  *Id*. The investigator interviewed that witness.  *Id*. ¶ 61.  According to John Doe, at the same meeting, he reviewed and approved the investigator's notes regarding the first interview.  *Id*. ¶ 55.  John Doe and the Title IX investigator spoke a third time by telephone to follow up on several aspects of John Doe's prior interview statements.  *Id*. ¶ 59.  Among other topics, the investigator and John Doe discussed Jane Doe's alcohol and drug use, including her level of intoxication on the night of May 12.  *Id*.

After the Title IX investigator completed her report, John Doe met with Columbia's Interim Assistant Director of Student Services for Gender-Based and Sexual Misconduct and Deputy Title IX Coordinator to review and comment on the completed report.  Am. Compl. ¶ 61. John Doe was then asked to state his formal response to the completed report.  *Id.* ¶ 65.  John Doe stated that he was not responsible for the charged misconduct.  Accordingly, pursuant to the *GBMPS*, a panel was convened and a hearing scheduled.  *Id*. ¶ 66.

B.    *Sexual Misconduct Hearing and Appeal*

The hearing took place on February 12, 2014.  Am. Compl. ¶ 79.  For two hours, a hearing panel heard statements and testimony from Jane Doe and John Doe.  *Id*. ¶¶ 86, 95.  John Doe took notes and prepared questions for Jane Doe, which he submitted to the panel.  *Id*. ¶ 86. The panelists posed some but not all of those questions to Jane Doe, *id.*, consistent with their discretion to "determine which questions are relevant," *GBMPS* 15.  John Doe and Jane Doe were each accompanied by a supporter of their own choosing, as permitted by the *GBMPS*.  Am. Compl. ¶ 80.

Approximately one week after the hearing, John Doe was notified that the hearing panel had found him responsible for "sexual assault: non-consensual sexual intercourse" with Jane

Doe.  Am. Compl. ¶ 96.  Shortly thereafter, John Doe was notified of his sanction—suspension from the University from Spring 2014 until Fall 2015.  *Id.* ¶ 99.  The University informed John Doe of his right to appeal the sanction, and he submitted his appeal the following week.  *Id.* ¶¶ 102, 104.

A week later, Dean of Columbia College James Valentini denied John Doe's appeal.  *Id.* ¶ 106.  Dean Valentini rejected John Doe's argument that the investigation was inadequate because the Title IX investigator failed to interview certain witnesses.  *Id.*  Dean Valentini noted that the investigator had acted within her discretion in deciding which witnesses to interview, that the purported witnesses were not identified in timely fashion, and that the witnesses could not have provided relevant testimony in any event.  *Id.*  Dean Valentini also concluded that the additional information John Doe offered was not "new evidence" that was not available at the time of the hearing.  *Id.*  Dean Valentini also upheld the sanction.  *Id.*

C.     *This Lawsuit*

John Doe filed suit in May 2014, challenging the University's investigation, disciplinary proceedings, and sanction under Title IX and several state-law theories.  Columbia moved to dismiss, arguing that John Doe had failed plausibly to allege that the University had discriminated against him on the basis of his sex.  Columbia further argued that the Complaint failed to allege actionable breaches of specific contractual provisions or any extracontractual duty of care running from the University to John Doe.  Finally, the University explained that, under governing Second Circuit and New York Court of Appeals precedent, disciplinary determinations reflecting the considered judgments of educational professionals are entitled to substantial deference.

John Doe then filed an Amended Complaint.  Although the Amended Complaint includes some additional rhetoric concerning the ostensible unfairness of the process, *see, e.g.*, Am.

9

Compl. ¶ 94, John Doe's core allegations remain the same.  The Amended Complaint attempts to address the deficiencies of the original complaint by including bare assertions that the Title IX investigator's actions were motivated by "an anti-male bias," *id.* ¶¶ 4, 50, 56, 64, 89, and that Columbia or other officials acted "on the basis of gender discrimination against the male accused," *id.* ¶¶ 97, 106, 130.  The Amended Complaint also includes a new cause of action based on Columbia's asserted violation of "OCR rules," apparently referring to the "Dear Colleague" letter discussed above.  *See supra* pp. 3-4 & n.2.

John Doe seeks compensatory damages for harm to his "physical well-being," emotional and psychological health, and reputation, *see* Prayer for Relief ¶ (i); compensatory damages for "past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects," *see id.*; a declaration reversing "the outcome and findings made by Columbia University," restoring his reputation, expunging his disciplinary record, permanently destroying the record of his disciplinary hearings, and declaring Columbia's policies "unconstitutional as applied," *see id.* ¶ (ix); and attorney's fees and costs, *see id.* ¶¶ (i)-(viii).

## STANDARD OF REVIEW

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), this Court "must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff."  *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, __ F. Supp. 2d __, 2014 WL 917055, at *4 (S.D.N.Y. Mar. 10, 2014).  Where, however, the plaintiff has "failed to plead sufficient facts to state a claim to relief that is facially plausible," the claim must be dismissed.  *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means that the "plaintiff must allege facts showing 'more than a sheer possibility that a defendant has acted unlawfully.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A complaint is insufficient if it "offers only 'labels and conclusions' or 'a formulaic recitation of elements of a

cause of action'"; it similarly fails if the "plaintiff has not 'nudged [its] claims across the line

from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 570).

## ARGUMENT

John Doe challenges Columbia's decision to discipline him for violating its policy

prohibiting sexual misconduct.  Sexual misconduct is antithetical to the norms by which

Columbia expects and requires its students to abide and disrupts the educational mission of the

University, which includes assuring all students that they will be able to pursue their education in

a safe and nondiscriminatory environment.  The Amended Complaint thus directly challenges an

educational determination by the University.  John Doe effectively requests that this Court

review and revise that determination, as though this Court were hearing an appeal from an

administrative agency's or a lower court's decision.

Courts have consistently recognized that such claims call for particularly restrained

judicial intervention.  It is only in "rare education cases where it is appropriate for a court to

intervene." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 94 (2d Cir.

2011); *see also Maas v. Cornell Univ.*, 721 N.E.2d 966, 968 (N.Y. 1999) ("This Court's case law

reflects the policy that the administrative decisions of educational institutions involve the

exercise of highly specialized professional judgment and these institutions are, for the most part,

better suited to make relatively final decisions concerning wholly internal matters.").

Accordingly, "when a disciplinary dispute arises between the student and the institution, judicial

review of the institution's actions is limited to whether the institution acted arbitrarily or whether

it substantially complied with its own rules and regulations." *Routh v. Univ. of Rochester*, 981 F.

Supp. 2d 184, 208  (W.D.N.Y. 2013) (quoting *Jones v. Trs. of Union Coll.*, 937 N.Y.S.2d 475,

477 (App. Div. 2012)).  Indeed, the Supreme Court has expressly enjoined that "courts should

refrain from second-guessing the disciplinary decisions made by school administrators." *Davis*

*v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).  Under these firmly established

principles, John Doe's claims fail as a matter of law.

## I.      JOHN DOE FAILS TO STATE A CLAIM FOR SEX DISCRIMINATION IN VIOLATION OF TITLE IX

John Doe's claim for sex discrimination under Title IX should be dismissed because he

fails to allege the essential component of such a claim: that he was discriminated against *on the*

*basis of his sex*.  Title IX prohibits discrimination "on the basis of sex."  20 U.S.C. § 1681(a).  To

raise a cognizable claim of sex discrimination, John Doe must plausibly allege that "a particular

course of action [was undertaken] at least in part *because of*, not merely in spite of, its adverse

effects upon" his sex.  *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (emphasis

added) (internal quotation marks omitted) (constitutional equal protection).  Thus, to survive a

motion to dismiss, John Doe must "specifically allege the events claimed to constitute intentional

discrimination as well as circumstances giving rise to a plausible inference of … discriminatory

intent."  *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994).  Allegations of a disparate

*impact* on members of one sex are thus insufficient for a Title IX lawsuit, as are mere conclusory

assertions of intentional bias.  "[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ.

P. 8(a)(2)); *see also Yusuf*, 35 F.3d at 715 ("The fatal gap is … the lack of a particularized

allegation relating to a causal connection between the flawed outcome and gender bias.").

The Amended Complaint does not include a single plausible allegation that any purported

errors or omissions in the investigative or disciplinary process are attributable to intentional

gender bias.  In *Yusuf*, which "raise[d] important questions as to when college disciplinary

proceedings violate" Title IX, 35 F.3d at 711, the Second Circuit offered examples of the kinds

of allegations necessary to state a Title IX claim in this context.  "Such allegations might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender."  *Id.* at 715.  John Doe makes no such allegations here.  Nowhere in the Amended Complaint, for example, does John Doe allege that any University official or employee said or even intimated anything at all related to John Doe's sex.

Instead, John Doe alleges in entirely conclusory fashion that Columbia engaged in a pattern of decision-making that *has the effect of* discriminating against men.  Specifically, he alleges that Columbia's facially sex-neutral "guidelines and regulations are set up to disproportionately affect the male student population."  Am. Compl. ¶ 138 (p. 46).  But that allegation sounds in disparate impact—for which there is no private cause of action under Title IX—not disparate treatment, which is required here.  *See, e.g.*, *Weser v. Glen*, 190 F. Supp. 2d 384, 395 (E.D.N.Y.), *aff'd*, 41 F. App'x 521 (2d Cir. 2002).[12]  Further, in the same paragraph, the Amended Complaint acknowledges that any disproportionate effect of Columbia's sexual misconduct policies on Columbia's male population is simply "a result of the higher incidence of female complainants of sexual misconduct[.]"  Am. Compl. ¶ 138 (p. 46).  That point, by itself, defeats a claim of sex bias, for it shows that any disparate impact is not attributable to *intentional* discrimination.  *See Feeney*, 442 U.S. at 279.

Perhaps recognizing the deficiencies in that claim, John Doe indicts Columbia's Title IX investigator, who, he alleges, conducted a slanted investigation infected by "anti-male bias."  But John Doe's actual allegations amount to little more than name-calling.  His assertion that the

---

[12]     OCR maintains oversight of universities' Title IX compliance, and ensures that their reporting and disciplinary procedures for sexual misconduct are prompt and equitable.  Thus, were there anything about the University's procedures that effected a disparate impact on one sex or the other, OCR could raise those concerns with the University.  But it is settled that Title IX does not confer a *private* right of action on a disparate-impact theory.  *Weser*, 190 F. Supp. 2d at 395.

13

investigator used different interview strategies and a different tone with Jane Doe and John Doe, even if taken as true, does not give rise to a plausible inference that the investigator was motivated by gender-based bias. *See* Am. Compl. ¶¶ 48-50. As courts have sensibly recognized, the mere fact that an investigator or adjudicator may be more attentive to a complainant than a respondent in a sexual misconduct case does not amount to gender bias. *See, e.g.*, *Haley v. Va. Commonwealth Univ.*, 948 F. Supp. 573, 579 (E.D. Va. 1996) ("[The plaintiff's] allegations at best reflect a bias against people accused of sexual harassment and in favor of victims and indicate nothing about gender discrimination."). The Amended Complaint's unsupported allegations that the investigator's decisions regarding whom to interview were "not rational" or were intended to "protect a false, anti-male biased narrative" do not nudge John Doe's claim of gender discrimination across the line of plausibility. Am. Compl. ¶ 50. Nor can "anti-male bias" be inferred from the alleged fact that the investigator "worked for a women's resource center in the past." *Id.* ¶ 48. Finally, John Doe does not plausibly allege that the investigator's supposed bias affected the outcome of the disciplinary process, given that he was determined to have violated the *GBMPS* not by the investigator, but by the hearing panel, whose decision was affirmed on appeal by the Dean of Columbia College.

John Doe's other criticisms of the process are also unavailing. For example, John Doe asserts that the investigator "failed to interview any witnesses in support" of his account. Am. Compl. ¶¶ 64, 153 (p. 49). That assertion is actually contradicted by his own acknowledgement that the investigator did interview at least one individual whom John Doe identified by name. *See id.* ¶¶ 55, 61. But more fundamentally, John Doe makes no plausible allegation that the investigator's failure to seek out (unspecified) witnesses on John Doe's behalf was motivated by John Doe's sex. *See Harris v. St. Joseph's Univ.*, No. Civ.A. 13-3937, 2014 WL 1910242, at *4

14

(E.D. Pa. May 13, 2014) (rejecting nearly identical allegations because averments purportedly identifying gender bias "do not suggest gender bias as a motivating factor.").[13]

John Doe also alleges that Columbia men against whom complaints of sexual misconduct are asserted are "invariably found guilty."  Am. Compl. ¶ 139 (p. 46).  That unsupported allegation—for which John Doe cites no facts—is not only implausible, but it is also contradicted by articles that he incorporated into the Amended Complaint, which report that numerous male respondents have been found *not* responsible for sexual misconduct at Columbia. *See, e.g.*, *id.* ¶ 69 (citing *Columbia drops ball on jock 'rapist' probe: students*, a *New York Post* article detailing cases in which male undergraduates were found not responsible for sexual misconduct); *id.* ¶ 73 (citing *Accessible, Prompt, and Equitable?*, and *Fallen Through the Cracks*, reports from the Columbia student newspaper about cases in which male undergraduates were found not responsible for sexual misconduct).[14]  Given the absence of any plausible assertion that there is a "pattern" of Columbia discriminating against men in this context, *cf. Mallory v. Ohio Univ.*, 76 F. App'x 634, 640 (6th Cir. 2003), John Doe must plausibly allege that

---

[13]     John Doe also does not explain how testimony by his purported witnesses could have changed the outcome of the disciplinary proceeding.  As the Amended Complaint acknowledges, John Doe was found responsible for "direct[ing] unreasonable pressure for sexual activity toward the Complainant over a period of weeks."  Am. Compl. ¶ 96.  John Doe does not explain how the testimony of the missing witnesses—who saw Jane Doe on the night of May 12, *id.* ¶ 63—would have been relevant to that finding.  Indeed, Dean Valentini reasonably concluded that these witnesses' testimony was not relevant to the panel's ultimate finding. *See supra* p. 9.  Nothing about this alleged chain of events creates a plausible inference of gender discrimination.

[14]     John Doe further alleges that certain events—a December 2013 *New York Post* article about sexual assault at Columbia, a campaign by Columbia University Democrats to improve the University's transparency on issues of campus assault, a series of January 2014 articles in the Columbia student newspaper, town hall meetings concerning sexual misconduct held in February and March 2014, an April 2014 Twitter post about sexual assault by a student leader, and an April 2014 Title IX complaint filed with OCR—established the "environment" for the events at issue in this lawsuit.  Am. Compl. ¶ 78.  But John Doe fails to note that the investigation into his sexual misconduct began in September 2013, *before* any of the events discussed.  Those incidents therefore have no relevance to his case.

the hearing panel members who found him responsible, or Dean Valentini on appeal, acted out of gender bias in *his* case.[15]

John Doe is clearly unhappy with the outcome of the disciplinary proceedings and the resulting sanction. But "one case by an individual who was subjectively dissatisfied with a result does not" rise to the level of a Title IX violation. *Mallory*, 76 F. App'x at 640. While he alleges various failings in the Columbia disciplinary process—for example, that the investigator took notes that were supposedly slanted against him, Am. Compl. ¶ 127, that the panelists did not pose all of his submitted questions to Jane Doe on cross-examination, *id.* ¶ 91, that certain witnesses were not present at the hearing to testify on his behalf, *id.* ¶ 90, and that there was no rational basis for denying his appeal, *id.* ¶ 107—those complaints are untethered to any plausible allegation of bias on the basis of sex. He has therefore failed to state a claim under Title IX.[16] *See Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009) (dismissing Title IX claim for failure to adequately allege sex bias despite allegations of, *inter alia*, prejudicial timing of notice and scheduling of hearing, deficient notice, failure of investigator to meet with witnesses, failure to provide plaintiff with witness statements or opportunity to call witnesses, failure to disclose exculpatory evidence);[17] *Harris*, 2014 WL 1910242 at *4 (dismissing Title IX

---

[15]     *Yusuf* does not point to a different result. While *Yusuf* found that "[t]he allegation that males invariably lose when charged with sexual harassment at Vassar provides a verifiable causal connection similar to the use of statistical evidence in an employment case," 35 F.3d at 716, it did so in the context of a now-discarded pleading regime. Under *Twombly* and *Iqbal*, that bare allegation is insufficient to "nudge [plaintiff's] claim[] across the line from conceivable to plausible." *Atlantica Holdings*, 2014 WL 917055, at *4 (quoting *Twombly*, 550 U.S. at 570).

[16]     To the extent that John Doe alleges a violation of his due process and equal protection rights under Title IX, *see* Am. Compl. ¶ 126, any such claim fails because Title IX does not contemplate a statutory due process claim independent of any allegation of intentional sex discrimination. *See Vega v. State Univ. of N.Y. Bd. of Trs.*, No. 97 Civ. 5767, 2000 WL 381430, at *4 (S.D.N.Y. Apr. 13, 2000) ("a plaintiff does not state a cause of action under Title IX by alleging a procedural infirmity"); *see also Cooper v. Gustavus Adolphus Coll.*, 957 F. Supp. 191, 194 (D. Minn. 1997) (relying on *Yusuf* in holding that "there is no statutory right to due process in grievance proceedings under Title IX separate from its prohibition of discrimination").

[17]     *See also* Compl. ¶ 132, *Doe v. Univ. of the South*, No. 4:09-cv-00062, 2009 WL 2496143 (E.D. Tenn. June 3, 2009), ECF No. 1.

claim for failure to adequately allege sex bias despite allegations of disregard of exculpatory text messages by investigator, condoning of investigator's "harsh and abusive attitude" (*Harris* Am. Compl. ¶ 92) toward plaintiff, failure to provide plaintiff the opportunity to review the investigative report prior to the hearing, and denial of the right to cross-examine accusers).[18]

## II.      JOHN DOE FAILS TO STATE A CLAIM FOR VIOLATION OF OCR RULES

John Doe's new claim that Columbia violated "rules" promulgated by OCR should be dismissed because there is no private cause of action for violations of Title IX implementing regulations, let alone for violations of the "Dear Colleague" letter on which John Doe's claim is premised.  As the Supreme Court has explained, although the Department of Education is authorized to enforce regulations promulgated under Title IX, the Court has "never held … that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements."  *Gebser*, 524 U.S. at 292.  Numerous courts have since affirmed that Title IX's implementing regulations are not privately enforceable.  *See Doe v. Univ. of the South*, 687 F. Supp. 2d at 758; *Doe v. Brimfield Grade Sch.*, 552 F. Supp. 2d 816, 825-26 (C.D. Ill. 2008); *Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d 1325, 1353 (M.D. Ga. 2007); *Doe v. Bradshaw*, No CIV.A. 11-11593, 2013 WL 5236110 at *10 (D. Mass. Sept. 16, 2013).

These principles apply with even greater force here, where John Doe purports to sue for alleged violations of the "Dear Colleague" letter, not any Department of Education regulations themselves.  Am. Compl. ¶¶ 139-149 (pp. 47-48).  The Dear Colleague letter, which was not subject to the notice and comment procedures of the Administrative Procedure Act, provides guidance to federal funding recipients about the Department of Education's policies and

---

[18]      *See also* Am. Compl. ¶ 92*, Harris v. St. Joseph's Univ.*, No. Civ.A. 13-3937 (E.D. Pa. Sept. 3, 2013), ECF No. 20.

priorities in reviewing compliance with Title IX, but it did not create any "legislative rules" and cannot "create new law, rights, or duties," let alone free-standing causes of action.  *Gill v. Paige*, 226 F. Supp. 2d 366, 374-375 (E.D.N.Y. 2002); Dear Colleague Ltr. 1 n.1 ("This letter does not add requirements to applicable law…."); Final Bulletin for Agency Good Guidance Practices, 72 Fed. Reg. 3432, 3434 (Jan. 25, 2007) ("Nothing in this Bulletin is intended to indicate that a guidance document can impose a legally binding requirement.").

## III.   JOHN DOE FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

### A.   *Alleged Breach of Contract Terms*

Under New York law, "an implied contract is formed when a university accepts a student for enrollment."  *Papelino*, 633 F.3d at 93.  "The terms of the implied contract are contained in the university's bulletins, circulars and regulations made available to the student."  *Id.* (internal quotation marks omitted).  As alleged in the Amended Complaint, John Doe's contract claim arises from the *GBMPS*, Columbia's *Student Policies and Procedures on Discrimination and Harassment*, and the University's *Confidentiality, Privacy & Non-Retaliation Policy*.  Those policies, according to the Amended Complaint, imply an agreement between the University and its students to conduct prompt and equitable investigations into, and disciplinary proceedings arising from, charges of sexual misconduct, to maintain an environment free from gender-based discrimination or harassment, to treat those involved in the process with respect and sensitivity, and to "make all reasonable efforts to maintain the confidentiality and privacy of parties involved in gender-based misconduct investigations."  *See* Am. Compl. ¶¶ 19-23, 144 (p. 52).

Through these policies, the University has committed itself to "providing a learning environment free from gender-based discrimination and harassment."  Am. Compl. ¶¶ 20, 144 (p. 51) (quoting *GBMPS*).  Upon receiving a report of gender-based discrimination or harassment, "the University will respond promptly, equitably, and thoroughly."  *Id.*  Respondents

are entitled to an array of rights and safeguards throughout the disciplinary process, including the general rights to "be treated with respect, dignity, and sensitivity throughout the process," "a prompt and thorough investigation of the allegations," and "confidentiality and privacy to the extent provided under applicable law," as well as the more specific rights to "be informed of the University's [policies and procedures]," to "be accompanied at the hearing by a supporter," to be given adequate time to prepare for the hearing, and to "appeal either the hearing panel's decision or the sanctions determined by the Dean of Students."  Am. Compl. ¶¶ 21, 159.

The Amended Complaint fails to allege a breach of any of these provisions.[19]  John Doe's contract claims fall into three categories, none of which plausibly states a claim.

*First*, John Doe complains about Columbia's failure to furnish things that either are not provided for in the policies and procedures or are expressly forbidden by them.  As to these, there plainly can be no contract breach.  For example, John Doe complains about his lack of a legal representative or supporter at the hearing.  Am. Compl. ¶¶ 83, 88.  The policies explicitly forbid a legal representative at the hearing.  *GBMPS* 13.  They do allow the complainant and respondent to be accompanied by a "supporter," who may be a student.   John Doe acknowledges that he had a "support person" with him at the disciplinary hearing.  Am. Compl. ¶ 80.  John Doe also alleges that the panel improperly excluded certain questions he had provided.  *Id*. ¶ 91.  But the policies and procedures explicitly give the panel discretion to "revise or remove" submitted

_____

[19]     The Amended Complaint also fails to allege that any claimed breach resulted in injury to John Doe.  Under New York law, "[c]ausation is an essential element of damages in a breach of contract action; and, as in tort, a plaintiff must prove that a defendant's breach directly and proximately caused his or her damages."  *Kaye Dentistry, PLLC v. Turchin*, No. 13 Civ. 5306, 2014 WL 2649976, at *2 (S.D.N.Y. June 13, 2014) (internal quotation marks omitted).  The Amended Complaint makes no plausible, concrete allegation that, absent Columbia's alleged contract breaches, the outcome of the investigation and disciplinary proceedings would have been different—*i.e.*, that no injury would have occurred had Columbia honored its contractual duties.  The contract claim thus fails as a matter of law.  *See Kennedy v. Syracuse Univ.*, No. 94 Civ. 269, 1995 WL 548710, at *3-4 (N.D.N.Y. Sept. 12, 1995) (granting summary judgment to university on student's contract claim because student failed to demonstrate an "essential element" of the breach of contract claim—that the university's alleged breach was the proximate cause of his injuries).

questions.  *GBMPS*  15.  Moreover, John Doe has identified no specific questions that he proposed to the panel that he alleges were improperly excluded.

*Second*, John Doe alleges that he was not informed of certain disciplinary procedures, purportedly in breach of Columbia's contractual duties.  *See, e.g.*, Am. Compl. ¶ 51 (Columbia failed to notify him of the right to submit a written statement to the hearing panel), ¶ 67 (same, with regard to the right to seek advice and counsel from the Dean of Students), ¶ 85 (same, with regard to the opportunity to make opening statement at hearing).  Even if these purported rights were guaranteed by Columbia's policies—and none is (though a respondent may give an opening statement at the hearing "whenever possible," *GBMPS* 14)—Columbia was under no contractual duty to remind John Doe of them.  The policies specify that respondents have a right "[t]o be informed of the University's Gender-Based Misconduct Policies and Procedures for Students." *Id.* at 18.  John Doe admits that he was both informed of the policies and procedures and provided with copies of them.  *See* Am. Compl. ¶¶ 18, 161(a).  Any complaint that he was not directed to a specific provision of the *GBMPS* or any other document cannot suffice to state a contract claim.

*Third*, John Doe alleges that the University breached its contractual undertakings to respond "promptly, equitably, and thoroughly" to complaints of sexual misconduct in carrying out certain elements of the investigation and appeal, to treat respondents with "respect, dignity, and sensitivity," and to provide "a learning environment free from gender-based discrimination and harassment."  Am. Compl. ¶ 144 (pp. 51-52).  Such general statements of university policy cannot give rise to a claim for breach of contract.  *See Ward v. New York Univ.*, No. 99 Civ. 8733, 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000) (holding that "general statements of policy … cannot [be] the basis of a breach of contract claim"); *id.* at *4-*5 (rejecting claim based

on university's commitment to "treat [adult students] with respect" where teacher's actions were allegedly "intimidating" and "belittling"); *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998) (holding that "a general statement of adherence by [a school] to existing anti-discrimination laws … does not create a separate and independent contractual obligation"). In any event, John Doe makes no non-conclusory allegations concerning Columbia's supposed breach of any of these general statements.

By premising a cause of action on the University's policy of responding "equitably and thoroughly" to complaints of sexual misconduct, John Doe asks this Court under the guise of a contract claim to second-guess the considered judgments of educational professionals responsible for "fostering a healthy and safe environment in which every member of the community can realize her or his fullest potential." *GBMPS* 1. New York courts are loath to assume this role of a superintending body over university disciplinary matters, *see, e.g.*, *Maas*, 721 N.E.2d at 968, and have accordingly held that "when a disciplinary dispute arises between the student and the institution, judicial review of the institution's actions is limited to whether the institution acted arbitrarily or whether it substantially complied with its own rules and regulations," *Routh*, 981 F. Supp. 2d at 208 (internal quotation marks omitted).

John Doe's allegations confirm that, at the very least, Columbia "substantially complied with its own rules and regulations," and they therefore fail to state a claim for breach of contract. For example, John Doe alleges that the Title IX investigator failed to question certain witnesses (whom ultimately the Dean of Columbia College deemed "irrelevant" to the disciplinary proceedings). Am. Compl. ¶¶ 47, 64, 97, 106. But although Columbia's written policies provide that "[a] specially trained investigator(s) … will interview … any witnesses," *GBMPS* 12, they do not give either the complainant or the respondent the authority to dictate which witnesses the

investigator must interview; that is a matter for the investigator's professional judgment (subject ultimately to review by the Dean), including the judgment that certain witnesses are irrelevant. And in any event, the Amended Complaint acknowledges that the investigator *did* interview witnesses, including at least one identified by John Doe.  *See, e.g.*, Am. Compl. ¶ 61.  To the extent John Doe now complains that the investigator should have interviewed additional witnesses, or that the Dean made an error of judgment in concluding that those witnesses were irrelevant, that does not show that Columbia disregarded its own policies and procedures or that it acted arbitrarily.  *See Routh*, 981 F. Supp. 2d at 208.[20]

John Doe's contention that "no evidence was presented in support of Jane Doe's claim that John Doe 'coerced' her to engage in sexual intercourse over a period of weeks prior to the evening of May 12" is not entitled to any weight, even at the motion to dismiss stage.  Am. Compl. ¶ 130.  Jane Doe herself testified at the hearing, *see id.*; and John Doe points to nothing to explain why the panel was not entitled to credit that testimony and find it sufficient to support the allegation against him.  Nothing in Columbia's policies and procedures require that allegations of sexual misconduct be supported by independent corroborating evidence, and nothing therein provides that the complainant's own testimony is insufficient.  Absent any plausible allegation of procedural or substantive impropriety, the factfinders' weighing of the available evidence is not subject to this Court's review on a contract claim.

As to the appeal, John Doe complains that the result was not "rational."  Am. Compl. ¶ 107.  But Columbia's policies vest the Dean with discretion to "determine whether a change in the hearing panel's decision is warranted," *GBMPS* 16, and, as the Amended Complaint details,

---

[20]     John Doe alleges that the Columbia student newspaper obtained information about his disciplinary hearing, Am. Compl ¶ 103, but he has made no allegation that this information came from an employee of the University. He has therefore not sufficiently alleged that Columbia violated its confidentiality policy, which states that Columbia will "make all reasonable efforts to maintain … confidentiality" in sexual misconduct proceedings  *See id.* ¶ 144 (p. 52); *GBMPS* 10.

the Dean's letter denying John Doe's appeal set forth a reasoned basis for his decision, *see* Am. Compl. ¶ 106.  For instance, the Dean concluded that none of the purported student witnesses had any bearing on the panel's determination that John Doe coerced the complainant over a period of weeks into having sexual intercourse, and that there was therefore no error in their exclusion.  *Id.*  John Doe may disagree with that reasoning, but the Dean's denial of his appeal was not arbitrary, and was entirely consistent with the University's policies and procedures.

All told, the Amended Complaint describes a disciplinary process that fully conformed with Columbia's policies and procedures.  That John Doe was unsatisfied with the result and the discipline he received is insufficient to state a contract claim.

B.    *Breach of the Implied Covenant of Good Faith and Fair Dealing*

John Doe's claim for breach of the covenant of good faith and fair dealing should also be dismissed.  "Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance," which encompasses "any promises which a reasonable person in the position of the promisee would be justified in understanding were included."  *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995) (internal quotation marks omitted).  Here, John Doe's claim for breach of the covenant of good faith and fair dealing is inextricably linked to his breach of contract claim.  *See, e.g.*, *Gally*, 22 F. Supp. 2d at 206; *Dalton*, 663 N.E.2d at 292-94; *cf. Fraad-Wolff v. Vassar Coll.*, 932 F. Supp. 88, 91 (S.D.N.Y. 1996) ("[W]hatever the legal theory underlying plaintiff's claim may be, the crucial issue is whether defendant conducted the disciplinary proceedings against plaintiff substantially in accordance with its established

procedures.").  Because John Doe's claim for breach of contract fails, his claim for breach of the

implied covenant of good faith and fair dealing necessarily fails as well.[21]

## IV.  JOHN DOE FAILS TO STATE A CLAIM FOR VIOLATION OF G.B.L. § 349

"To state a [New York General Business Law] section 349 cause of action, a plaintiff

must allege that the defendant's challenged act was consumer-oriented and materially misleading

and resulted in injury to the plaintiff."  *Kickertz v. New York Univ.*, 971 N.Y.S.2d 271, 277 (App.

Div. 2013) (internal citation omitted).  John Doe alleges that Columbia misled him by causing

him to believe that (1) it would follow its policies and (2) if he paid tuition, Columbia would

adhere to its obligations as described in those policies.  Am. Compl. ¶ 161.

This claim, premised as it is on an allegation that Columbia failed to follow its own

policies, fails for the reasons enumerated above with respect to John Doe's contract claim.  *See

supra* Section III.A.  And the claim has another fundamental defect:  John Doe fails to allege any

act of deception on Columbia's part or to assert how its conduct here was in any way misleading.

*See* Am. Compl. ¶¶ 161-164.  His bare allegation that he was "caus[ed] to believe" that

Columbia would follow its policies, *id.* ¶ 161, fails to state a Section 349 claim.  *Horowitz v.

Stryker Corp.*, 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) (dismissing G.B.L. § 349 claim where

plaintiff neither identified specific deceptive acts nor explained why they were deceptive).

## V.  JOHN DOE FAILS TO STATE A CLAIM FOR ESTOPPEL AND RELIANCE

There is no claim for "estoppel and reliance" cognizable under New York law.  To the

extent John Doe alleges either promissory estoppel or equitable estoppel, both claims fail at the

pleading stage.

---

[21]      Further, the sole allegation underlying John Doe's good faith and fair dealing claim is that Columbia
"met[ed] out a disproportionate sanction."  Am. Compl. ¶ 151 (p.53).  That allegation alone cannot support the
claim:  It does not entail a lack of good faith, it is not tied to any contractual undertaking, and it contains no basis for
determining whether his sanction was "disproportionate."  The claim should be dismissed on this ground as well.

"Promissory estoppel is 'a rule applicable only in the absence of an enforceable contract.'" *Holmes v. Lorch*, 329 F. Supp. 2d 516, 527 (S.D.N.Y. 2004).  Because a contract exists between John Doe and Columbia, *see* Am. Compl. ¶ 143 (p.51), this claim cannot lie. Even apart from this elemental failing, the claim is inadequately pleaded.  A plaintiff asserting promissory estoppel must plead "i) a clear and unambiguous promise; ii) a reasonable and foreseeable reliance on [his] part; and iii) an unconscionable injury to [him] as a result of this reliance."  *Ward*, 2000 WL 1448641, at *6.  Not only has John Doe failed to identify "a clear and unambiguous promise" that Columbia made to him but failed to honor, but, as discussed above, the allegations in the Amended Complaint demonstrate that Columbia complied with each undertaking made in its bulletin and related documents.  "[A] claim for promissory estoppel cannot survive" where, as here, "defendants have neither breached the implicit contract between the parties nor violated the University's rules and procedures."  *Id.*

Any claim for equitable estoppel fails as well.  For such a claim, a plaintiff must demonstrate, as to the party estopped, "(1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts."  *In re Vebeliunas*, 332 F.3d 85, 93-94 (2d Cir. 2003). To demonstrate the necessary element of a false representation or concealment of material facts in this context, a "plaintiff would have to show that defendants knew that they were not going to follow the procedures in the Handbook, and that they concealed that fact from him."  *Romer v. Bd. of Trs. of Hobart & William Smith Colls.*, 842 F. Supp. 703, 710 (W.D.N.Y. 1994).  There is no allegation in the Amended Complaint that could be construed to satisfy this element:  John Doe's conclusory allegation that "Columbia had no intention of following its own policies and procedures" does not suffice.  Am. Compl. ¶¶ 131-132.

25

## VI.   JOHN DOE FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The Amended Complaint fails to allege conduct anywhere near the level required to sustain a cause of action for intentional infliction of emotional distress (IIED) under New York law.  To establish an IIED claim, a plaintiff must show "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress." *Howell v. New York Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993).  "Determining whether the alleged conduct is sufficiently outrageous to be actionable is a question of law for the Court." *Marcano v. City of Schenectady*, __ F. Supp. __ , 2014 WL 3953198, at *16 (N.D.N.Y. Aug. 13, 2014).  "New York … requires that the conduct be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985) (internal quotation marks omitted).

The gravamen of the Amended Complaint is that Columbia failed to abide by its own procedural guidelines and regulations in conducting its investigation and disciplining John Doe. Even if true, this alleged conduct is a far cry from the extreme and outrageous behavior— typically involving physical or psychological abuse or a long-running campaign of harassment— that courts find adequate to state a claim for IIED.  *See, e.g.*, *Cavallaro v. Pozzi*, 814 N.Y.S.2d 462, 466 (App. Div. 2006) (affirming denial of defendant's motion to dismiss where defendant allegedly engaged in a "constant campaign of harassment and intimidation, which included threatening to kill plaintiff and his children").

Indeed, several courts have held that even false charges of sexual harassment do not constitute "extreme or outrageous conduct."  *See, e.g.*, *Routh*, 981 F. Supp. 2d at 215 (dismissing

IIED claim against employee who allegedly made false charges of rape to University, police, and family court; "such false accusations are insufficiently extreme and outrageous to establish an IIED claim under New York law"); *see also Fraad-Wolff*, 932 F. Supp. at 93-94 (college's handling of investigation and hearing of sexual harassment charges was not sufficiently "extreme and outrageous" for IIED claim); *James v. DeGrandis*, 138 F. Supp. 2d 402, 421 (W.D.N.Y. 2011) ("Even a false charge of sexual harassment does not rise to the level of outrage required to recover on an intentional infliction of emotional distress claim under New York law.").

Nor has John Doe adequately alleged the type of harm required for an IIED claim. "[T]he distress inflicted must be so severe that no reasonable man could be expected to endure it." *Richard L. v. Armon*, 536 N.Y.S.2d 1014, 1016 (App. Div. 1989) (internal quotation marks omitted). Although John Doe alleges that he suffers distress as a result of his experience, *see, e.g.*, Am. Compl. ¶¶ 115, 177, it does not rise to the required level of severity. John Doe acknowledges that he will be able to return to Columbia next fall. *See id.* ¶ 112. John Doe also complains of suffering financial harm, but acknowledges that any financial loss is his parents', not his. *Id.* ¶ 114.

## VII.   JOHN DOE FAILS TO STATE A CLAIM FOR NEGLIGENCE

John Doe alleges that Columbia breached its "duties of care" to him, namely its "duty of reasonable care in the conduct and investigation of the allegations of rape and sexual misconduct against him." Am. Compl. ¶ 181. But any duty that Columbia owed to John Doe arises solely out of the parties' contract. Because the only duties Columbia owed to John Doe are contractual, any negligence claim fails as a matter of law.

Under New York law, "[t]he elements of a cause of action alleging common-law negligence are a duty owed by the defendant to the plaintiff, a breach of that duty, and a showing that the breach of that duty proximately caused injury to the plaintiff." *Merchants Mut. Ins. Co.*

*v. Quality Signs of Middletown*, 973 N.Y.S.2d 787, 788 (App. Div. 2013).  When the duty of care

at issue is created entirely by contract, no tort liability can lie.  *New York Univ. v. Cont'l Ins. Co.*,

662 N.E.2d 763, 767 (N.Y. 1995); *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d

190, 194 (N.Y. 1987).  The Amended Complaint alleges that Columbia's obligations to John Doe

stem entirely from the implied contract between the parties.  The negligence claim fails as a

matter of law for that reason alone.

Further, it is settled that absent some separate voluntary undertaking, a university owes

its students no other, non-contractual duty of care.  *See, e.g.*, *Talbot v. N.Y. Inst. of Tech.*, 639

N.Y.S.2d 135, 136-37 (App. Div. 1996); *Vought v. Teachers Coll., Columbia Univ.*, 511

N.Y.S.2d 880, 881 (App. Div. 1987).  Because the Amended Complaint alleges no such separate

undertaking,[22] John Doe's negligence claim fails as a matter of law.

## VIII.  JOHN DOE FAILS TO STATE A CLAIM FOR DECLARATORY JUDGMENT

Finally, the Amended Complaint asserts a cause of action for declaratory judgment.  But

"[t]he [Declaratory Judgment Act] is 'procedural only,' and 'does not create an independent

cause of action.'"  *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) (citation

omitted).  In addition, because all of John Doe's substantive claims are subject to dismissal for

the reasons discussed, there is no legal grounding for a declaratory judgment.  *See Spiteri v.

Russo*, No. 12-CV-2780, 2013 WL 4806960, at *19 n.30 (E.D.N.Y. Sept. 7, 2013).

---

[22]    Columbia's policies and procedures for investigating and disciplining sexual misconduct form the contract between the University and John Doe; they are not separate, non-contractual undertakings.  Further, there is no New York cause of action for negligent prosecution or investigation.  *See Pandolfo v. U.A. Cable Sys.*, 568 N.Y.S.2d 981, 982 (App. Div. 1991) (citing *Burt v. Smith*, 73 N.E. 495, 496 (N.Y. 1905)).  To the extent that John Doe purports to make such a claim, it should be dismissed.  *See Grennan v. Nassau Cnty.*, Civil Action No. 04-2158, 2007 WL 952067, at *22 (E.D.N.Y. Mar. 29, 2007) (summary judgment granted on teacher's claims against school that she was disciplined following an allegedly flawed administrative hearing because "New York does not recognize a cause of action for negligent investigation"); *Weitz v. State*, 696 N.Y.S.2d 656, 660 (Ct. Cl. 1999) (negligence claim brought by suspended student dismissed because "[t]he law is settled that as 'a matter of public policy, there is no cause of action in the State of New York for negligent prosecution or investigation'").

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety.

Dated: New York, New York
   September 8, 2014

Respectfully submitted,

/s/ Alan E. Schoenfeld

Paul R.Q. Wolfson (*pro hac vice*)
Bruce M. Berman (*pro hac vice*)
Danielle Conley (*pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363
paul.wolfson@wilmerhale.com
bruce.berman@wilmerhale.com
danielle.conley@wilmerhale.com

Alan E. Schoenfeld
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com

*Attorneys for Defendants Columbia University
and Trustees of Columbia University*