UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X          Civ. Action No. 14-cv-03573
JOHN DOE,

                              Plaintiff,

          -against-

COLUMBIA UNIVERSITY and
TRUSTEES OF COLUMBIA UNIVERSITY,

                              Defendants.
-------------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................…...……...i-iv

PRELIMINARY STATEMENT.....................................................................…...…..1

STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT................................3

A.    The Parties.............................................................................3

B.    The Consensual Sex.............................................................…...3

C.    The University Charge of Non-Consensual Sex and The Investigation......................4

D.    Campus Pressures To Getting Tough On Male "Rapists" and Male "Assault."...........…....5

E.    The Disciplinary Hearing and Panel Decision.......................................…...5

F.    The Sanction.......................................................................…...6

G.    Plaintiff's and Jane Doe's Appeals...................................................6

H.    Plaintiff's Damages...............................................................…...7

STATEMENT OF PROCEDURAL HISTORY...............................................…...7

THE LEGAL STANDARD GOVERNING MOTIONS TO DISMISS...............................8

ARGUMENT......................................................................…...…..9

I.    THE AMENDED COMPLAINT DOES NOT CHALLENGE AN EDUCATIONAL
      DETERMINATION: WHETHER CONSENSUAL SEX OCCURRED IS NOT AN
      EDUCATIONAL DECISION..............................................................9

A.    Inapposite Case Law.............................................................… 9

B.    Conflict With Yusuf v. Vassar College...............................................…..10

C.    The Allegations Of The Amended Complaint...............................................11

II.   THE AMENDED COMPLAINT STATES A CLAIM OF TITLE IX
      DISCRIMINATION.....................................................................12

A.    The Amended Complaint and Yusuf v. Vassar College......................................12

      1.   Misuse and Misapplication of Twombly and Iqbal...........................................12

      2.   Selective Reading and Misreading of the Amended Complaint...........................13

B.      The Amended Complaint and The Anti-Male Bias Of The Investigator....................16

C.      The Amended Complaint and The Allegation That Male Students Are Found Guilty.... 19

D.      The Erroneous Outcome and The Flawed Process...........................................20

III.    THE AMENDED COMPLAINT STATES ALTERNATIVE STATE
        LAW CLAIMS...................................................................................21

A.      The Amended Complaint States A Breach of Contract Claim...............................21

B.      The Amended Complaint States A Negligence Claim.......................................24

C.      The Amended Complaint States Other State Law Claims...................................26

        1.   New York General Business Law § 349(a).............................................26

        2.   Estoppel and Reliance..................................................................28

        3.   Intentional Infliction of Emotional Distress...........................................29

        4.   Declaratory Judgment..................................................................30

CONCLUSION...............................................................................30

## <u>TABLE OF AUTHORITIES</u>

<u>Ashcroft v. Iqbal</u>,
556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)................. ...... 1, 8, 9, 12, 13, 19

<u>Atlantica Holdings, Inc. v. Sovereign Wealth</u>
<u>Fund Samruk-Kazyna</u> JSC, __ F.Supp.2d __, 2014 WL 917055 (S.D.N.Y. 2014)..........1, 8, 9, 13

<u>Atria v. Vanderbilt Univ.</u>
142 F. App'x 246 (6th Cir.2005)..................................................................25

<u>Auser v. Cornell Univ.</u>
71 Misc.2d 1084, 337 N.Y.S.2d 878 (N.Y.Sup.Ct.1972)..............................................22

<u>Becker v. Schwartz</u>
46 N.Y.2d 401, 386 N.E.2d 807 (1978).................................................................24

<u>Bell Atlantic Corp. v. Twombly</u>
550 U.S. 544, (2007)..............................................................1, 8, 9, 12, 13, 19, 20

<u>Chevron Corp. v. Naranjo</u>
667 F.3d 232, (2d Cir. 2012)..........................................................................30

<u>Cohen v. Avande, Inc.</u>
874 F.Supp.2d 315, (S.D.N.Y. 2012)..................................................................8

<u>Dixon v. Alabama</u>
294 F.2d at 157.........................................................................................23

<u>Doe v. University of the South</u>
687 F. Supp.2d 744 (E.D. Tenn. 2009)..............................................................20, 21

<u>Doe v. Univ. of the South</u>
2011 WL 1258104 (E.D. Tenn. 2011)................................................................24

<u>Filner v. Shapiro</u>,
633 F.2d 139 (2d Cir. 1980)..........................................................................24

<u>Gally v. Columbia University</u>
22 F.Supp.2d 199 (S.D.N.Y. 1998)..................................................................21

<u>Grove City College v. Bell</u>,
465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984)................................................10

<u>Haley v. Virginia Commonwealth Univ.</u>
948 F.Supp. 573 (E.D.Va. 1996)......................................................................18

Harris v. St. Joseph's Univ.
2014 WL 1910242 (E.D. Pa. May 13, 2014)……………………………………………18, 19

Howell v. New York Post Co.
81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699, (1993)……………………………..……29

Jones v. Trustees of Union College,
92 A.D.3d 997, 937 N.Y.S.2d 475 (3d Dep't 2012)…………………………………………10

Keles v. New York Univ.
1994 WL 119525 (S.D.N.Y. 1994)………………………………,…………………………22

Lee v. Burkhart,
991 F.2d 1004, (2d Cir. 1993)…………………………………………..………………..…28

Levine v. Gurney,
149 A.D.2d 473, 473, 539 N.Y.S.2d 967, 968 (2d Dep't 1989)…………………………….29

Maas v. Cornell Univ.,
94 N.Y.2d 87, 721 N.E.2d 966, 699 N.Y.S.2d 719 (1999)……………………….…………10

Mallory v. Ohio University,
76 F. App'x 634 (6th Cir. 2003)……………………………………………………………20

Matter of Carr v. St. John's Univ., New York,
17 A.D.2d 632, 231 N.Y.S.2d 410 (2d Dep't 1962)……………………………………..…22

Nieswand v. Cornell Univ.,
692 F.Supp. 1464, (N.D.N.Y.1988)……………………………………..……..……….....22

Olsson v. Bd. of Higher Ed.,
49 N.Y.2d 408, 414, 402 N.E.2d 1150 (1980)……………………………………………….22

Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank,
85 N.Y.2d 20, 25, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995)………………………..…..27

Papelino v. Albany Coll. of Pharmacy of Union Univ.
663 F.3d 81 (2d Cir. 2011)…………………………………………….……………………9

Petrelli v. City of Mount Vernon,
9 F.3d 250 (2d Cir. 1993)……………………………………………………….……………28

Routh v. Univ. of Rochester,
981 F.Supp.2d 184, 208, 210-212 (W.D.N.Y. 2013)…………………………………..…..10, 22

## PRELIMINARY STATEMENT

Plaintiff John Doe ("Plaintiff") respectfully submits this Memorandum of Law in opposition to the motion of Defendants Columbia University and its Trustees ("Columbia") to dismiss the 67-page Amended Complaint for failure to state a claim. The motion should be denied in its entirety. Plaintiff states *bona fide* claims for relief under Title IX and state law. The Amended Complaint details sex discrimination against male students accounting for what was an erroneous outcome from a flawed proceeding that ended in an unjustly severe penalty imposed on Plaintiff. Columbia's effort to argue otherwise consists of two error producing elements.

*First*, Columbia's motion is legally defective as it fails to adhere to the required standards for motions to dismiss. As this Court has recognized, on a motion to dismiss, each of the factual allegations are assumed to be true and reasonable inferences are drawn from them. Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC, __ F.Supp.2d __, 2014 WL 917055 * 4, (S.D.N.Y. 2014). A Court is to consider a motion to dismiss in terms of the plaintiff's actual pleadings in the Complaint, and not in terms of a defendant's selective characterization of the facts. Streit v. Bushell, 424 F.Supp.2d 633 (S.D.N.Y. 2006). Bell Atlantic Corp. v. Twombley, 550 U.S. 544, 570 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), in affirming that factual allegations are assumed to be true and requiring only that a plaintiff allege sufficient facts that state a claim to relief that is facially plausible, was not giving license to defendants such as Columbia to ignore factual pleadings and label the Complaint's allegations as not plausible and conclusory all the while not facing up to what the Complaint actually alleges.

Columbia thus errs in refusing to address that which is factually alleged to have been the consensual sex had by Plaintiff and Jane Doe, and further, in not dealing forthrightly with the many other factual allegations that establish the sex discrimination and other breaches of duty pleaded in the Amended Complaint. A reader of Columbia's papers would not know, for

1

example, that it was Jane Doe who provided the condom and undressed herself to have sex. Given what is actually alleged, this case easily passes muster under such cases as <u>Yusuf v. Vassar College</u>, 35 F.3d 709 (2d Cir. 1994).

*Second*, Columbia's motion is legally defective in attempting to immunize itself from liability for discriminating against male students based on a self-proclaimed need to police alleged sexual misconduct (i.e., non-consensual sex) as an "educational" decision. Columbia trumpets its policies as taking account of competing interests (whatever that means), asserts that non-consensual sex is a matter for administrative determination by Columbia with the exercise of professional educational judgment and insists that when Columbia determines in accordance with its procedures that a student is responsible for sexual misconduct (i.e., non-consensual sex), Columbia is acting well within its rights in disciplining "him or her" (never mind that there are no "her" cases). Such self-protection, however, suffers from three basic defects. First, it is not grounded in the case law. Columbia badly misreads certain cases involving breach of contract claims; no case rules that consent to sex is an educational decision. Second, Columbia urges a position flatly in conflict with Title IX law as stated in <u>Yusuf</u>, 35 F.3d at 715. Third, Columbia's argument is shown by the allegations of the Amended Complaint to be quite ill conceived. Whether a man and a woman engaged in consensual sex is not an educational decision and does not entail the application of educational criteria and so called professional judgment.

Finally, the Amended Complaint and Motion to Dismiss must be considered within the context of the greater proposition for which this case stands - that of fundamental rights of equity, fairness and a right to be heard. These principles dictate that Plaintiff have redress for being wrongfully punished in a situation so factually unfounded that even the Jane Doe, shocked by the results, assisted the Plaintiff with his appeal. Columbia failed to address this and so many other

critical issues, the consequences Columbia's institutional hubris has indelibly scarred Plaintiff, his

future and his belief in a system which has, among its bedrock principles, that of due process.

## STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT

Columbia's 2-page summary of the facts (Col. Mem. 7-9) is woefully incomplete and

distorted with respect to the factual allegations contained in the 67-page Amended Complaint.

### A.    The Parties.

Plaintiff was a member of the class of 2016 at Columbia with an unblemished record.

Plaintiff, upon acceptance, was provided with copies of Columbia's policies and procedures. (Am.

Cmplt. ¶¶ 1, 10-12, 16-19.) Jane Doe, also a member of the class of 2016, was friends with

Plaintiff and both of them were friends within the same social circle at Columbia University.

### B.    The Consensual Sex.

On the night of May 12, 2013, Plaintiff was studying for his Statistics final in the lounge of

the 7th floor of Columbia University's Carman Hall. Around midnight, two fellow Columbia

students, Trevor Bell and Sidney Brinson, entered the 7th floor of Carmen Hall and sat down near

Plaintiff, who continued to study. Around 1:00 AM, Jane Doe came off the elevator on the 7th

floor, walked over to Bell and Brinson and sat down to talk with them while Plaintiff continued to

study. After Bell and Brinson left, Jane Doe started talking to Plaintiff about school and summer

plans. They talked until 2:30 am in the morning, and then took an hour-long walk outside. When

they returned to Carmen Hall, they flirted with each other and talked about "hooking up." Plaintiff

and Jane Doe both had roommates asleep in their respective dorm rooms, so Jane Doe directed

that they go to the bathroom within her suite to have sex. Once in her suite bathroom, Plaintiff

went into her bedroom to get a condom. Jane Doe came back into the bathroom with the condom

and undressed herself in front of Plaintiff. Jane Doe and Plaintiff proceeded to engage in sexual

intercourse in the bathroom using the condom provided by Jane Doe. (Am. Cmplt. ¶¶ 2, 26-37.)

3

Subsequently, there was never any police report or medical visit by Jane Doe. Jane Doe expressed her concern to Plaintiff about the potential social impact if their friends found out about their sexual activity. The semester ended and they left for summer vacation break without Jane Doe making any report to the university. (Am. Cmplt. ¶¶ 3, 37-41, 63, 127.)

## C.   The University Charge of Non-Consensual Sex and The Investigation.

Many months later, at the start of Fall 2013 semester, Jane Doe filed a complaint alleging non-consensual sexual activity. On September 25, 2013, Rosalie Siler, Title IX Coordinator, served Plaintiff with charges of "Non-Consensual Sexual Intercourse" in violation of Columbia's "Gender-Based Misconduct Policies for Students." Plaintiff's access to residence halls on campus was restricted, and he was advised not to contact Jane Doe. (Am. Cmplt. ¶¶ 3, 42-46.)

That same day, September 25, 2013, Plaintiff met with Title IX investigator Jilleian Sessions-Stackhouse to give his account of the night of May 12. Ms. Sessions-Stackhouse was prosecutorial with Plaintiff; her questioning was in the nature of cross-examination; no attempt was made to reconstruct factually what had happened; she did not investigate the witnesses who were present on the 7th floor and would have information relevant to the issue of consent. No recording was made of the interview, just handwritten notes taken by Ms. Sessions-Stackhouse stating only what she deemed important for prosecuting Plaintiff. (Am. Cmplt. ¶¶ 47-54.)

On October 22, 2013, Plaintiff met a second time with Ms. Sessions-Stackhouse, and reviewed her handwritten notes from their first meeting. Plaintiff noticed that her notes inaccurately recorded his verbal account of May 12 and made conclusory statements about Plaintiff's responsibility for the charges. Plaintiff requested Ms. Sessions-Stackhouse to make changes, but she refused and sought an admission of guilt from him. (Am. Cmplt. ¶¶ 55-58, 62.)

On November 22, 2013, Plaintiff met a third time with Ms. Sessions-Stackhouse. When asked if Jane Doe appeared intoxicated or under the influence of drugs, Plaintiff answered "no." In

the past, he has observed Jane Doe when she had been drinking and taking drugs and Jane Doe was not acting in that way on the early morning of May 13.  (Am. Cmplt. ¶ 59.)

On January 25, 2014, Plaintiff met with Title IX Coordinator Virginia Ryan to review Ms. Sessions-Stackhouse's report. Ms. Sessions-Stackhouse accepted at face value Jane Doe's account, distorted Plaintiff's account and omitted evidence that would support his account of consensual sex. (Am. Cmplt. ¶¶ 2, 60-64.)

**D.      Campus Pressures To Getting Tough On Male "Rapists" and Male "Assault."**

During the 2013-2014 school year, various female students, a student-run newspaper, and the Columbia University Democrats ("CUD") voiced public criticism of Columbia's handling of sexual assault. Complaints were filed by 23 Columbia students to the Department of Education alleging the mishandling of sexual misconduct complaints. It was in this charged environment that Plaintiff's disciplinary hearing was held. (Am. Cmplt. ¶¶ 6-7, 68-78.)

**E.      The Disciplinary Hearing and Panel Decision.**

On February 12, 2014, a two-hour hearing was held with respect to the charges. Jane Doe attended the hearing with Sarah Weinstein, Membership Director of the CUD. Jane Doe and Sarah Weinstein were not friends and had no prior relationship. Plaintiff, not entitled to have legal representation at the hearing, had his roommate accompany him. (Am. Cmplt. ¶¶ 79-84.)

Plaintiff denied doing anything wrong. Only unsworn statements from Plaintiff and Jane Doe were taken by the hearing panel. Ms. Session-Stackhouse's investigation report was reviewed by the panel and received into evidence, thus treating a false, anti-male narrative as evidence of what happened.  Because Ms. Sessions-Stackhouse's report did not reference witnesses on the 7th floor of Carman Hall the night of May 12, no such witnesses testified and no witness statements were submitted. Plaintiff submitted questions to the panel to ask Jane Doe, but many questions were deemed irrelevant and not asked. Jane Doe was able to escape critical questioning by

engaging in bouts of crying. There was no inquiry made of character and no questioning of credibility, even though in a "he said, she said" situation, credibility is critical. Effectively, there was a presumption of guilt where the burden of proving innocence was placed on Plaintiff. (Am. Cmplt. ¶¶ 4, 85-95, 129-130.)

On February 18, 2014, Plaintiff was advised that the panel found him "responsible" for non-consensual sex with Jane Doe. The decision stated that Plaintiff had directed "unreasonable pressure for sexual activity" toward Jane Doe over a period of weeks, which constituted coercion. However, no testimony or evidence was ever referenced in support of this purported "pressure" exerted by Plaintiff, and Plaintiff did not have a fair opportunity to defend against this claim. The decision pandered to the political climate on campus and pressure from women's groups to act aggressively against male students. The decision was irreconcilable with the facts that Jane Doe initiated conversation with Plaintiff in the early morning hours of May 13, spent hours talking and walking with him, had sex with Plaintiff in a location she chose, undressed herself and provided a condom. (Am. Cmplt. ¶¶ 3-4, 96-97.)

F.     **The Sanction.**

On February 26, 2014, Plaintiff was advised that he was suspended until Fall 2015 and that Columbia refused to credit Plaintiff for the Spring 2013 semester; effectively, suspending Plaintiff for 1½ years, even though Columbia's policies regarding sanctions requires consideration of certain factors, including disciplinary history, aggravating circumstances and community impact, and Plaintiff was a student in good standing and had no history of sexual misconduct and no disciplinary record of any kind. (Am Cmplt. ¶¶ 8, 98-102.)

G.     **Plaintiff's and Jane Doe's Appeals.**

On March 3, 2014, Plaintiff submitted his appeal, identifying procedural errors and exonerating evidence of doctor notes, emails and interviews with student witnesses whom Ms.

Sessions-Stackhouse failed to interview or include in her report who were not called before the panel. Jane Doe also appealed the severity of the sanction. (Am. Cmplt. ¶¶ 8, 103-105.)

On March 10, 2014, Dean Valentini denied Plaintiff's appeal on the grounds that the failure to interview key witnesses was within Ms. Sessions-Stackhouse's discretion, that such witnesses did not constitute "new evidence," that Plaintiff's behavior was coercive and committed outside the view of witnesses, that Plaintiff's evidence threatened "the integrity of the process" and that the sanction was warranted. Plaintiff had, however, identified the witnesses to Ms. Sessions-Stackhouse; the Title IX investigator had failed to interview key witnesses; there was no factual basis in the testimony for finding Plaintiff's actions to be coercive; and the sanction failed to take account of Plaintiff's lack of history of sexual misconduct. (Am. Cmplt. ¶¶ 8, 106-107.) On March 11, 2014, Jane Doe's appeal was denied. (Am. Cmplt. ¶ 108.)

## H.   Plaintiff's Damages.

As a result of the disciplinary case and sanction, Plaintiff's academic career has been put on hold. His academic record has been tarnished in a way that will not effectively allow for a transfer to another school and will jeopardize Plaintiff's future graduate school applications. His varsity crew team membership has been terminated. The resulting trauma includes psychological care, and his parents' financial resources on an expensive Ivy League education have been squandered. (Am. Cmplt. ¶¶ 9, 58, 110-117.)

## STATEMENT OF PROCEDURAL HISTORY

The following brief statement of procedural history is provided because Columbia misstates the procedural history and mischaracterizes the Amended Complaint (Col. Mem. 9-10).

Plaintiff brought a 53-page Complaint invoking Title IX and state law seeking redress against Columbia "due to the actions, omissions, errors, flawed procedures, and/or negligence and

overall failure to provide [Plaintiff] with an expected standard of due process, concerning the allegations of sexual misconduct made against Plaintiff."  (Am. Cmplt. ¶ 1.)

Columbia moved to dismiss, denying the Complaint had alleged sex discrimination and breaches of state law duties and asserting an entitlement to deference to educational determinations.  (SDNY ECF Nos. 21-23.)

The Court then entered an Order dated July 15, 2014, directing that by August 1, 2014, Plaintiff either file an Amended Complaint or an opposition to the motion to dismiss, with the caution that Plaintiff would not be given a further opportunity to amend.  (SDNY ECF No. 25.)

On July 22, 2014, the Court modified the schedule to give Plaintiff until August 18, 2014 to either file an amended Complaint or an opposition to Columbia's motion to dismiss, with no further opportunity to amend. (SDNY ECF No. 27.)  On August 18, 2014, Plaintiff filed the 67-page Amended Complaint, providing further detail so that an argument could not reasonably be made that Title IX was not allegedly violated and state law breaches not allegedly committed. (SDNY ECF Nos. 28-33.)   On September 8, 2014, Columbia filed a motion to dismiss the Amended Complaint. (SDNY ECF Nos. 34-36.)

## THE LEGAL STANDARD GOVERNING MOTIONS TO DISMISS

This Court, in Atlantica Holdings, Inc., 2014 WL 917055 * 4, reviewed the legal standard applicable to a motion to dismiss as follows:

"In reviewing a motion to dismiss pursuant to Rule 12(b)(6), this Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff."  Cohen v. Avande, Inc., 874 F.Supp.2d 315, 319 (S.D.N.Y. 2012) (citing Homes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  The Court will not dismiss any claims pursuant Rue 12(b)(6) unless the plaintiff has failed to plead sufficient facts to state a claim to relief is facially plausible, see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  More specifically, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." Id.  A complaint that offers only

"labels and conclusions" or a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955. Further, if a plaintiff has not 'nudged [its] claims across the line from conceivable to plausible, [those claims] must be dismissed." Id. At 570, 127 S.Ct. 1955.

Notably, when applying Twombly and Iqbal, the Atlantica Court focused on whether facts, accepted as true and from which reasonable inferences are drawn, had been sufficiently alleged. This Court in Atlantica and the U.S. Supreme Court in both Twombly and Iqbal rejected the idea that factual allegations of the Complaint could be ignored or derided as implausible while calling the Complaint conclusory.

## ARGUMENT

### I.
### THE AMENDED COMPLAINT DOES NOT CHALLENGE AN EDUCATIONAL DETERMINATION: WHETHER CONSENSUAL SEX OCCURRED IS NOT AN EDUCATIONAL DECISION

Columbia asserts that the Amended Complaint directly challenges an educational determination because sexual misconduct disrupts the educational mission of the university and that courts have consistently recognized that such claims call for restrained judicial intervention. (Col. Mem. 11-12.) This misconceived argument is: (A) based on a misreading of the five cases cited by Columbia; (B) in conflict with the Second Circuit's decision in Yusuf, 35 F.3d 709; and (C) shown by the allegations of the Amended Complaint to be unwise.

**A.**   **Inapposite Case Law.**

Columbia relies upon inapposite case law for the strained proposition that sexual misconduct qualifies as an "educational decision" and that this Court should exercise restraint in intervening with the student conduct process involving Plaintiff. Upon closer analysis of Columbia's case law authority, judicial restraint was exercised in a case of cheating (Papelino v. Albany Coll. of Pharmacy of Union Univ., 663 F.3d 81, 93-94 [2d Cir. 2011]), or in discussing the

9

relationship of a school's administrative procedures to a professor's contract (Maas v. Cornell Univ., 94 N.Y.2d 87, 721 N.E.2d 966, 699 N.Y.S.2d 719 [1999]).

The holding that judicial review is limited to whether the education institution acted arbitrarily or whether it complied with its own rules and regulations was made in the context of considering a male student's breach of contract claim (Routh v. Univ. of Rochester, 981 F.Supp.2d 184, 208, 210-212 [W.D.N.Y. 2013]; Jones v. Trustees of Union College, 92 A.D.3d 997, 937 N.Y.S.2d 475 [3d Dep't 2012]), and not with respect to Title IX claims.

In short, none of the cases cited by Columbia state that the decision of whether sexual misconduct occurred is an educational decision beyond the reach of Title IX. The courts were invariably addressing university procedures and actions in relation to state law contract claims.

**B.    Conflict With *Yusuf v. Vassar College.***

Columbia, by attempting with a misapplication of inapposite case law to read into Title IX a deference to university decision-making, is urging a position very much in conflict with the Second Circuit's decision in Yusuf v. Vassar College, 35 F.3d 709. There, the Second Circuit recognized the implied private right of action under Title IX's prohibition of sex discrimination and then stated:

> Title IX was enacted to supplement the Civil Rights of 1964's bans on racial discrimination in the workplace and in universities. Because the statutes share the same goals and because Title IX mirrors the substantive provisions of Title VI of the Civil Rights Act of 1964, Grove City College v. Bell, 465 U.S. 555, 566, 104 S.Ct. 1211, 1217-18, 79 L.Ed.2d 516 (1984), courts have interpreted Title IX by looking to the body of law developed under Title VI, as well as the case law interpreting Title VII. . . .

> Looking at these analogous bodies of law, we may safely say that Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline.

35 F.3d at 715. The Second Circuit added:

> Plaintiffs attacking a university disciplinary proceeding on grounds of gender bias can be expected to fall generally within two categories. In the first category, the claim is that the

plaintiff was innocent and wrongly found to have committed an offense. In the second, the plaintiff alleges selective enforcement.

35 F.3d at 715. Title IX law so interpreted simply does not allow for Columbia's position.

**C.     The Allegations Of The Amended Complaint.**

The Amended Complaint reflect, among other things, that the determination as to whether there was sexual misconduct (i.e, whether a student engaged in non-consensual sex) is not an educational decision. Finding Plaintiff responsible for non-consensual sex with Jane Doe (never mind Jane Doe providing the condom and undressing herself to have sex) involved no educational criteria, but did require a distorted anti-male lens to reach; and throwing Plaintiff out of school until the Fall 2015 semester did not serve the educational mission of Columbia, but did placate political pressures. Professional judgment and educational criteria were not applied to find Plaintiff responsible for non-consensual sex with Jane Doe despite, among other things, Jane Doe providing the condom and undressing herself to have sex in a place chosen by her. Pretentious talk of disciplining students for sexual misconduct to serve Columbia's educational mission is but a cover for Columbia having a license to engage in discrimination against male students, tarnishing the lives of male students with "determinations" based not on objective fact-finding but on politically correct reconstructions. Plaintiff's conviction of sexual misconduct (i.e., sex without consent) and 1½ year suspension was not about serving Columbia's educational mission, but about placating political pressures. What Columbia seeks, then, is to be free to engage in discrimination against male students, tarnishing the lives of male students with "determinations" based not on objective fact-finding but on politically correct reconstructions manufactured by a prosecutorial minded "investigation" and given the guise of regularity by a hearing and appeal process that in fact, as discussed below, does not afford due process and the fair determination of the truth.

11

## II.

## THE AMENDED COMPLAINT STATES A CLAIM OF TITLE IX DISCRIMINATION

Columbia contends that the Amended Complaint fails to state a claim upon which relief may be granted for sex discrimination in violation of Title IX and does so by advancing four lines of argument. (Col. Mem. 12-18.) Critical examination of those arguments, however, leads to the contrary conclusion that the Amended Complaint does sufficiently state a Title IX claim.

### A.      The Amended Complaint and *Yusuf v. Vassar College.*

In <u>Yusuf v. Vassar College</u>, 35 F.3d 709, the motion to dismiss was denied; thus, Columbia attempts to distinguish the case. Columbia points out that Title IX prohibits intentional sex discrimination, quoting <u>Yusuf</u>, 35 F.3d at 713, that Plaintiff must "specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of . . . discriminatory intent." (Col. Mem. 12.)  Columbia also quotes <u>Iqbal</u>, 556 U.S. at 679, for the point that that "where the well-pleaded facts do not permit a court to infer more than the mere possibility of misconduct," a claim for relief has not been pled; and Columbia again quotes <u>Yusuf</u>, 35 F.3d at 715, for the point that the pleaded facts must support a connection between the flawed outcome and gender bias.  (Col. Mem. 12.) These three points, in and of themselves, are fairly reported.  Where Columbia goes awry is in then asserting that "[t]he Amended Complaint does not include a single plausible allegation that any purported errors or omissions in the investigative or disciplinary process are attributable to gender bias." (Col. Mem. 12.) This assertion is flat wrong because it is based on: (1) a misuse and misapplication of <u>Twombly</u> and <u>Iqbal</u>; and (2) a jaundiced, legally flawed treatment of the Amended Complaint.

### 1.   Misuse and Misapplication of *Twombly* and *Iqbal.*

First, the wording employed by Columbia reveals its misuse and misapplication of the word "plausible" from <u>Twombly</u> and <u>Iqbal</u>. Instead of accepting as true the Amended Complaint's

12

factual allegations and drawing reasonable inferences from them and deciding then whether a claim for relief is plausibly alleged, as this Court recognized in <u>Atlantica Holdings, Inc.</u>, 2014 WL 917055 * 4, Columbia is erroneously treating factual allegations as supposedly implausible and thus to be completely disregarded or to be derided as conclusory without reference to the specific supporting factual allegations.

      As noted in the Preliminary Statement above (pp. 1-2), the reader of the Columbia's papers would never know, among other things:

    (i)   that fellow Columbia freshmen John Doe and Jane Doe were in a circle of friends, and after spending hours talking and walking together one late May night, they flirted and talked about "hooking up," and then ended up having sex at a location suggested by Jane Doe with a condom provided by Jane Doe, who undressed herself to have sex and who subsequently never made any police report, never made any report to the university and never sought any medical examination;

    (ii)  that the university sexual misconduct charges against John Doe came out of the blue four months later;

    (iii)  that the investigator proceeded in a prosecutorial minded way to obtain an admission of guilt by John Doe and to protect a false, anti-male narrative by, among other things, distorting John Doe's account, refusing to interview and/or take into account witnesses in support of John Doe's account, accepting Jane Doe's apparent account while ignoring the lack of any police report, contemporaneous university report or medical visit by Jane Doe;

    (iv)  that Columbia was at the time under pressure from the Department of Education Office of Civil Rights (OCR), campus political activist groups and the public eye to go after male "rapists";

    (v)  that the disciplinary hearing took only unsworn "testimony," received into evidence the investigator's non-percipient jaundiced "report," allowed evasiveness by Jane Doe and placed the burden of proving innocence on John Doe at a time when John Doe had no counsel or supporter present;

    (vi)  that the panel's decision of non-consensual sex and "unreasonable pressure for sexual activity" could not be reconciled with the facts that Jane Doe undressed herself to have sex using a condom she provided and in a location she chose and indeed was not based on any concrete facts;

    (vii) that John Doe had no prior history of sexual misconduct or any other disciplinary record; and (viii) that even Jane Doe appealed the severity of John Doe's sanction of 1½ years suspension. (Am. Cmplt. ¶¶ 26-64, 67-78, 109, 127-131.)

That approach taken by Columbia is not what <u>Twombly</u> and <u>Iqbal</u> teaches.

### 2. <u>Selective Reading and Misreading of the Amended Complaint.</u>

Columbia quotes <u>Yusuf</u> for what Columbia says are the kind of allegations supporting a Title IX sex discrimination claim: "Such allegations might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." 35 F.3d at 715.  But when making that statement, the Second Circuit was identifying the kind of allegations that would support the connection of gender bias to a flawed outcome in a "flawed outcome" case (as opposed to "selective enforcement" case).  The Second Circuit was not identifying all the kind of allegations that supported a Title IX case and was not even providing an exclusive list of the kind of allegations supporting the link of gender bias to flawed outcome in a "flawed outcome" case.

Columbia nevertheless denies that the Amended Complaint satisfies <u>Yusuf</u>, dismissing the allegation at paragraph 138 of the Amended Complaint that Columbia has engaged in a pattern of decision-making having the effect of discriminating against men as pleading only a disparate impact case and not an intentional discrimination case. (Col. Mem. 12-13.) The argument, however, is a phony. Columbia is selectively reading and misreading the Amended Complaint.

A cause of action for intentional sex discrimination in violation of Title IX is pleaded in paragraphs 118 through 141, including:

127.    Based on the foregoing, *supra,* at ¶¶ 42-67, 79-95, Defendant Columbia conducted its investigation of the Evening of May 12, and subsequent Hearing, in a manner that was biased against the male being accused.  From the outset, Ms. Sessions-Stackhouse's Final Investigation Notes were slanted in favor of Jane Doe and took her statements at face-value.  Absent from Ms. Sessions-Stackhouse's report is the mention of (or explanation for its absence) any police report or health examination/rape kit made in connection with the Evening of May 12.

137.    Based on the foregoing, *supra,* at ¶¶ 42-67, 79-95, Defendant Columbia imposed sanctions on Plaintiff that were disproportionate to the severity of the charges levied against him and without any consideration of his clean disciplinary record at Columbia University, and without providing any written summary for the basis therefor.

138.    Based on the foregoing, *supra,* at ¶¶ 42-67, 79-95, Defendant Columbia's guidelines and regulations are set up to disproportionately affect the male

student population of the Columbia University community as a result of the higher incidence of female complainants of sexual misconduct against male complainants of sexual misconduct.

140.    Based on the foregoing, *supra,* at ¶¶ 42-67, 79-95, Defendant Columbia's mishandling of the investigation, Hearing and sanctions determination was motivated solely by great criticism by the Columbia University Democrats, negative public scrutiny and its desire to make an "example" out of Plaintiff as a student-athlete who has been "punished".

(Am. Cmplt. ¶¶ 127, 137-138, 140.)

Also, the Amended Complaint ties specific facts to gender bias, as follows:

128.    Ms. Sessions-Stackhouse's failure to interview any witnesses in support of Plaintiff's defense demonstrates Columbia University's favorable treatment of Jane Doe on the basis of her gender.

129.    Columbia University has created an environment where an accused male student is fundamentally denied due process by being prosecuted through the conduct process under a presumption of guilt.  Such a one-sided process deprived Plaintiff, as a male student, of educational opportunities at Columbia University on the basis of his sex.

130.    At the Hearing, Defendant Columbia freely allowed Jane Doe to escape critical questioning by crying on the witness stand, and was completely dismissive of Plaintiff's attempts to engage in meaningful cross-examination of Jane Doe and challenge of her credibility on the issues of consent and her alleged drug-induced state on the evening of the Evening of May 12.  Additionally, no evidence was presented in support of Jane Doe's claim that Plaintiff "coerced" her to engage in sexual intercourse over a period of weeks prior to the Evening of May 12.  Notwithstanding, Defendant Columbia credited Jane Doe's claim that she was coerced over Plaintiff's claim that he did not coerce her, on the basis of gender discrimination against the male accused.  Indeed, the lack of any evidence of a contemporaneous police report or medical evidence contradicted Jane Doe's claim.

(Am. Cmplt. ¶¶ 128-130.)

The foregoing allegations clearly satisfy the requirement of connecting a flawed outcome to gender bias according to Yusuf.  See also Wells v. Xavier Univ., 2014 WL 972172 (S.D. Ohio Mar. 12, 2014) (male student accused of raping a female student after a game of "truth or dare" adequately pled Title IX claim where plaintiff alleged that Xavier rushed to judgment, failed to train its panel members, ignored the county prosecutor's doubts about the rape accusation, denied

plaintiff the right to counsel, denied him the opportunity to cross-examine his accuser, and

allowed character witnesses for the female student, but denied character witnesses for plaintiff).

**B.      The Amended Complaint and The Anti-Male Bias Of The Investigator.**

Columbia argues that Plaintiff's allegations about the investigation are deficient, starting

with the pleading of "anti-male" bias on the part of the investigator.  (Col. 13-15.)  Columbia

dismisses the allegations as to the investigator's anti-male bias as mere name calling, citing to

paragraphs 48 through 50 of the Amended Complaint.  Those paragraphs, however, along with

paragraph 47 are anything but just name calling.

Paragraphs 47 through 50 begin with Ms. Sessions-Stackhouse's initial meeting with

Plaintiff, as to which it is alleged:

> Plaintiff mentioned the existence of several witnesses who were present at the 7th floor
> lounge of Carman Hall on the evening in question; some of whom he knew by name and
> others who he did not.  However, Ms. Sessions-Stackhouse failed to question him about
> such witnesses or conduct an investigation into such witnesses or follow up on their
> identity.

(Am. Cmplt. ¶ 47.)  Ms. Sessions-Stackhouse's role at Columbia is described:

> Ms. Sessions-Stackhouse is not an independent fact finder or disinterested party with any
> specialized training; she is employed by Columbia University and her role is essentially
> one of prosecuting sexual assault on campus. As such, Ms. Sessions-Stackhouse's line of
> questioning was more akin to cross-examination calculated to illicit a confession from
> Plaintiff, it was decidedly not an objective attempt to factually reconstruct an event.  The
> interview was not recorded; Ms. Sessions-Stackhouse took handwritten notes of her
> interview with Plaintiff.   Instead of performing an objective interview to identify
> witnesses, events and timelines, Ms. Sessions-Stackhouse only took notes on what she
> deemed important and disregarded everything else Plaintiff stated.   In fact, having
> worked for a women's resource center in the past, Ms. Sessions-Stackhouse does not
> come from a gender-neutral background, yet she is charged with creating the narrative
> account that is eventually adopted by the hearing panel.

(Am. Cmplt. ¶ 48.)  The Amended Complaint contrasts the investigator's gentler, non-adversarial

treatment of Jane Doe (Am. Cmplt. ¶ 49) and states:

> Ms. Sessions-Stackhouse's failure to investigate or follow up on the identity of the
> witnesses who were present at the 7th floor lounge of Carman Hall that evening was a

material error and did not reflect a rational decision, but rather an anti-male biased decision, considering that the proof of the charge of sexual assault, by definition, requires a finding that the sexual intercourse was without consent, which includes the use of force, threats, coercion, alcohol or drugs. Plaintiff identified several witnesses who could attest to the <u>absence</u> of force, threats, coercion, alcohol or drugs on the Evening of May 12. Those witnesses were ignored in order to protect a false, anti-male biased narrative.

(Am. Cmplt. ¶ 50; emphasis in the original.) Columbia argues that these allegations are not plausible (Col Mem. 14), but that argument suffers from (i) misapplying the plausible language in <u>Twombly</u> and <u>Iqbal</u> and (ii) selectively reading and misreading the Amended Complaint.

Paragraphs 55 to 56 and 59 to 64 outline Ms. Sessions-Stackhouse's subsequent actions in the investigation with respect to additional meetings with Plaintiff and the content of the report that was particularly revealing about the anti-male bias. (Am. Cmplt. ¶¶ 55-56, 59-64.) Paragraphs 61-64 importantly state:

61.     On January 25, 2014, Plaintiff met with Ms. Ryan [Deputy Title IX Coordinator] to review the investigation report. It was clear to Plaintiff Plaintiff that Ms. Sessions-Stackhouse had, once again, disregarded Plaintiff's advisement of Jane Doe's clear expressed verbal consent on the night of the Evening of May 12. Ms. Sessions-Stackhouse had also failed to follow through with and reconcile the conflicting information provided by Ms. Knight and Jane Doe on Jane Doe's motivations and account of the night of the Evening of May 12.

62.     Again, Plaintiff attempted to correct multiple mistakes that Ms. Sessions-Stackhouse failed to correct from their last meeting in October. Instead of correcting her written mistakes, Ms. Sessions-Stackhouse continued to pursue an admission of "guilt" from Plaintiff by her persistent line of questioning and disregard for his explanations. Among other flaws with the report, noticeably absent from the investigation report was the mention of any police report or health examination/rape kit made in connection with the Evening of May 12, i.e. any supporting evidence, other than Jane Doe's "say so" taken at face value.

63.     Further absent from the investigation report was any mention of Ms. Sessions-Stackhouse's interview of or receipt of any statement from Trevor Bell (who was present in the lounge on the evening of the Evening of May 12), Sidney Brinson (also present to observe Jane Doe on the evening of the Evening of May 12) or Zoe Wood (Jane Doe's roommate at the time of the Evening of May 12). Furthermore, the investigation report did not acknowledge the fact that Jane Doe did not admit herself to the campus health center or any local hospital.

64.    Upon information and belief, the investigation report did not reflect any statements from witnesses who personally observed Jane Doe's words or actions before and after the Evening of May 12, 2013.  In fact, Ms. Sessions-Stackhouse did not interview Jane Doe's own roommate, Zoe Wood, who was present in Jane Doe's dormitory room on the Evening of May 12, 2013 and who was able to witness Jane Doe's words and actions on a daily basis.  The interaction between Plaintiff and Jane Doe on the Evening of May 12, 2013 amounts to "he said, she said."  Ms. Sessions-Stackhouse, however, failed to interview any witnesses in support of Plaintiff's defense and only followed up on Jane Doe's version of the Evening of May 12, 2013.  Upon information and belief, Ms. Sessions-Stackhouse's adopted Jane Doe's version of the Evening of May 12 in her report to the exclusion of important details provided by Plaintiff.  Upon information and belief, Ms. Sessions-Stackhouse's actions were based on an anti-male gender bias.

(Am. Cmplt. ¶¶ 61-64.)

Columbia argues, referencing only paragraphs 55 and 61, that Plaintiff has no plausible allegation that the investigator's failure to seek out unspecified witnesses on Plaintiff's behalf was motivated by Plaintiff's sex.  (Col. Mem. 14.)  Yet again, Columbia is selectively reading and misreading the Amended Complaint.  Among other things, as can be seen from the above quoted paragraphs, witnesses were specified, and their relevance was stated such that it is more than sufficiently alleged and indeed is self-evident that the failure to obtain the witness accounts reflected an anti-male gender bias.

In this connection, Columbia cites two highly inapposite cases. (Col. Mem. 14-15.) Haley v. Virginia Commonwealth Univ., 948 F.Supp. 573 (E.D.Va. 1996), involved a male student who was charged with verbal and physical abuse and harassment and who complained that a Dean overseeing the disciplinary process held a gender biased against him as a male charged with harassment. The Haley court rejected that complaint about the Dean as inconsequential; the Haley court was not dealing with an investigator supposedly charged with finding out what happened. Harris v. St. Joseph's Univ., 2014 WL 1910242 (E.D. Pa. May 13, 2014), involved a case brought by a male student disciplined for sexual assault and was before the Harris court on a motion to dismiss. Although Columbia asserts that the case is nearly identical to the instant action, there is

18

no basis at all for that assertion.  The <u>Harris</u> court did not describe the factual allegations of the Harris Complaint and did not identify what the allegations were that the <u>Harris</u> court found insufficient as to gender bias; the <u>Harris</u> court's treatment of the Title IX claim in that case consisted of statements of Title IX law and a one-sentence conclusion about plaintiff Harris's Complaint.

**C.    The Amended Complaint and The Allegation That Male Students Are Found Guilty.**

Columbia argues that paragraph 139 is implausible and contradicted by the Amended Complaint by the campus articles criticizing the university for "dropping the ball on jock rapists." (Col. Mem. 15-16.) Columbia is again: (i) misusing and misapplying the "plausible" language in <u>Twombly</u> and <u>Iqbal</u>; and (ii) selectively reading and misreading the Amended Complaint. Paragraph 139 states:

> Based on the foregoing, *supra,* at ¶¶ 42-67, 79-95, male respondents in sexual misconduct cases at Columbia University are discriminated against solely on the basis of sex.  They are invariably found guilty, regardless of the evidence, or lack thereof.

While there is nothing "implausible" about this allegation, Columbia is erroneously attacking the allegation itself, wrongly invoking the language of <u>Twombly</u> and <u>Iqbal</u> that is, as discussed above (pp. 12-13, 17), not what those cases are about.  Further, Columbia ignores the paragraph's cross-reference to factual allegations in earlier paragraphs and instead focuses on what are the allegations about the campus political pressures placed on the process to prosecute make students accused of sexual misconduct found at paragraphs 6-7 and 68-78 of the Amended Complaint. Columbia makes the bogus argument that the Amended Complaint, by referring to the campus articles, makes those articles presumed to be true, which is certainly not the case, as the campus articles were referenced for the facts of the political pressure and not for the validity of their

advocacy.  Columbia's argument is thus legally defective; at this point in the case, Columbia's denial of a pattern of discrimination is not available.

**D.**   **The Erroneous Outcome and The Flawed Process.**

Columbia argues that while Plaintiff is not satisfied with the outcome of the disciplinary proceedings, one case does not make for a sex discrimination case, citing Mallory v. Ohio University, 76 F. App'x 634 (6th Cir. 2003), and that Plaintiff's criticisms of Columbia's disciplinary process are not tethered to any plausible allegation of sex discrimination.  (Col. Mem. 16-17.) Columbia, yet again, (i) misuses and misapplies the "plausible" language in Twombly and Iqbal; and (ii) selectively reads and misreads the Amended Complaint.  As the Second Circuit stated in Yusuf, 35 F.3d at 715, the recognized forms of Title IX cases are "erroneous outcome" and "selective enforcement," and both are invoked in the Amended Complaint.  The one case cited by Columbia in this context, Mallory, 76 F. App'x 634, expressly recognized both forms and simply held on summary judgment that the male student, who had asserted that Ohio University's process was old fashioned in presuming men were the sexual aggressors, failed to prove either form of a Title IX case.  In this case, the Amended Complaint in this case does take pains to allege the flawed Columbia's procedures and denial of due process as leading to the "erroneous outcome" per Yusuf.  At the hearing, there was no sworn testimony, the biased investigator report was received as evidence, there was an ineffective questioning of the parties and the lack of non-party witnesses, and the burden of proof was effectively placed on Plaintiff; the decision was not based on the preponderance of the evidence; appeal rights were unreasonably constricted and treated.

Columbia recognizes many of the elements -- the biased investigator report, the limited questioning at the hearing, the lack of witnesses, the lack of a rational ground for decision -- but points to Doe v. University of the South, 687 F. Supp.2d 744 (E.D. Tenn. 2009), where the

treatment of procedural weaknesses was not viewed as supporting an erroneous outcome case. Doe v. University of the South, however, is wholly inconsistent in this regard with Yusuf v. Vassar College, 35 F.3d at 715, which recognized that procedural flaws may support erroneous outcome case.

### III.
### THE AMENDED COMPLAINT STATES ALTERNATIVE STATE LAW CLAIMS

Columbia contends that the Amended Complaint fails to state claims upon which relief can be granted for breach of state law duties.  (Col. Mem. 18-28.) Critical examination of Columbia's arguments shows that the Amended Complaint does sufficiently allege such state law claims.

**A.**    **The Amended Complaint States A Breach of Contract Claim.**

Columbia argues that the Gender-Based Misconduct Policies for Students are mere "general pronouncements" and that Plaintiff has failed to identify how Columbia has breached its policies during the course of the investigation and decision-making in Plaintiff's disciplinary process. (Col. Mem. 18-23.) Instead, Columbia argues, Plaintiff's contract claim wrongfully requires this Court to second-guess Columbia's "educational decision." (Col. Mem. 21.)

The cases to which Columbia cites for the proposition that there is no contractual relationship between Columbia and Plaintiff erroneously involve situations that relate to *academic matters* as opposed to the allegations rising to the level of criminal conduct, such as the allegation of nonconsensual sex lodged by Jane Doe.  Gally v. Columbia University, 22 F.Supp.2d 199 (S.D.N.Y. 1998); Ward v. New York University, 2000 WL 1448641 (S.D.N.Y. 2000).  This action did not involve Columbia's discretion and/or decision-making with respect to Plaintiff's academic performance; Plaintiff's claims clearly involve disciplinary action taken against Plaintiff for allegations of a criminal nature, namely, sexual misconduct.

21

Plaintiff has indisputably stated a cause of action for breach of contract against Columbia under New York law. Olsson v. Bd. of Higher Ed., 49 N.Y.2d 408, 414, 402 N.E.2d 1150 (1980) (implied contract exists between the institution and its students such that if the student complies with the terms set out by the institution, he will obtain the degree which he sought); Matter of Carr v. St. John's Univ., New York, 17 A.D.2d 632, 231 N.Y.S.2d 410, 413 (2d Dep't 1962) ("The essence of the implied contract is that an academic institution must act in good faith in its dealings with its students"). New York courts have recognized that an implied contract arises once a student is admitted to a university. Keles v. New York Univ., 1994 WL 119525 (S.D.N.Y. 1994); Nieswand v. Cornell Univ., 692 F.Supp. 1464, 1470–71 (N.D.N.Y.1988); Vought v. Teachers College, Columbia Univ., 127 A.D.2d 654, 511 N.Y.S.2d 880, 881 (2d Dep't 1987); Auser v. Cornell Univ., 71 Misc.2d 1084, 337 N.Y.S.2d 878 (Sup.Ct. Tompkins Co. 1972).

> When a student is duly admitted by a private university, secular or religious, there is an implied contract between the student and the university that, if he complies with the terms prescribed by the university, he will obtain the degree which he sought. The university cannot take the student's money, allow him to remain and waste his time in whole or in part (because the student might regard it as a waste of time if he does not obtain the degree), and then arbitrarily expel him or arbitrarily refuse, when he has completed the required courses, to confer on him that which it promised, namely, the degree.

Carr, 17 A.D.2d 632, 231 N.Y.S.2d 410, 413 (2d Dep't 1962).Further, Plaintiff has stated with specificity several provisions of Columbia's policies that have been violated and the ways in which they have been so violated, unlike the plaintiff in Routh v. Univ. of Rochester, 981 F. Supp. 2d 184, 209 (W.D.N.Y. 2013), where a notice provision was complied with.

Columbia's mischaracterization of Plaintiff's well-pleaded allegations of the contracts at issue in this action do not control. Streit v. Bushnell, 424 F.Supp.2d 633. The Amended Complaint states that the parties entered into an express or implied contract via the "Gender-Based Misconduct Policies for Students" upon his acceptance of admission to Columbia in 2012. (Am.

Cmplt ¶ 24.) <u>Dixon v. Alabama</u>, 294 F.2d at 157.  Plaintiff accepted the terms of the contracts by

his full payment of tuition. (Am. Cmplt. ¶ 114.) In exchange for Plaintiff's payment of tuition,

Columbia agreed to the following:

> "The University does not tolerate discrimination or harassment on the basis of
> membership in a Protected Class..." <u>See</u> Columbia University's Student Policies and
> Procedures on Discrimination and Harassment, *available at* http://www.essential-
> policies.columbia.edu/student-policies-and-procedures-discrimination-and-harassment
> (last visited September 18, 2014).

> "Columbia University, Barnard College, and Teachers College are committed to
> providing a learning environment free from gender-based discrimination and
> harassment." <u>See</u> Gender-Based Misconduct Policies for Students, p. 1.

> Students who believe they have been subjected to gender-based discrimination or
> harassment are encouraged to report these incidents. Upon receiving a report, the
> University will respond promptly, equitably, and thoroughly.  <u>Id</u>.

> The right "To be treated with respect, dignity, and sensitivity throughout the process."  <u>Id</u>.
> at 18.

> The right "To a prompt and thorough investigation of the allegations."  <u>Id</u>.

> The right "To confidentiality and privacy to the extent provided under applicable
> law.  The University will make all reasonable efforts to ensure preservation of privacy,
> restricting information to those with a legitimate need to know."  <u>Id</u>.

> "The University will make all reasonable efforts to maintain the confidentiality and
> privacy of parties involved in gender-based misconduct investigations, restricting
> information to those with a legitimate need to know."  <u>Id</u>. at 10.

Columbia breached the parties' contract(s) by, *inter alia*: (i) engaging in discrimination

against Plaintiff based on his male sex by failing to afford due process to Plaintiff during the

investigation of Jane Doe's false complaint of rape (Am. Cmplt. ¶¶ 42-67); (ii) failing to conduct a

full and complete investigation of all relevant witnesses and facts (Am. Cmplt. ¶¶ 42-67); (iii)

failing to credit Plaintiff's report that Jane Doe was making a false complaint against him in

violation of Columbia's policies (Am. Cmplt. ¶ 44); and (iv) violating its own confidentiality

policies by facilitating a breach of confidentiality in violation of its own policies when the outcome of Plaintiff's Decision and Sanction was leaked to Anna Bahr (Am. Cmplt. ¶¶ 103-104).

Plaintiff has also properly pleaded a cause of action for breach of the covenant of good faith and fair dealing of such underlying contract.  Under New York law, every contract includes an implied covenant of good faith and fair dealing which "precludes each party from engaging in conduct that will deprive the other party of the benefits of the agreement." Filner v. Shapiro, 633 F.2d 139, 143 (2d Cir. 1980) (citing Kirke La Shelle Co. v. Paul Armstrong Co., 263 N.Y. 79, 87-88, 188 N.E. 163, 167 [N.Y. 1933]); see Restatement (Second) of Contracts § 205 (1981).  The Restatement (Second) of Contracts notes that every contract imposes on each party a duty of good faith and fair dealing in its performance and enforcement.  See Restatement (Second) of Contracts § 205 (1981).  A comment to the Restatement states that "[g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." Id.  Plaintiff has sufficiently alleged that Columbia breached the covenant of good faith and fair dealing in the parties' contracts.

**B.    The Amended Complaint States A Negligence Claim.**

Columbia's asserts that no negligence claim may lie because the "duties" complained of arise from the contract(s) between Plaintiff and Columbia. (Col. Mem. 27.) Such assertion palpably ignores the existence of duties owed to Plaintiff outside of the parties' contract(s).

To state a claim of negligence, a plaintiff must demonstrate the existence of a duty, the breach of which may be considered the proximate cause of the damages suffered by the injured party. Becker v. Schwartz, 46 N.Y.2d 401, 410, 386 N.E.2d 807, 811 (1978), citing Restatement, Torts 2d, § 281 and Prosser, Torts (4th ed.), § 30.  In Doe v. Univ. of the South, 2011 WL

24

1258104 (E.D. Tenn. 2011), a male student was wrongly accused and found responsible of sexually assaulting a female student and expediently forced out of the institution following several missteps during the conduct process. The District Court held that a jury could find that the University must take reasonable care in both composing and implementing a conduct process, and that failure to do so makes for a breach of the duty of reasonable care:

> As in [Atria v. Vanderbilt Univ., 142 F. App'x 246 (6th Cir.2005)], in this case a jury could find that the harm caused by the University's allegedly and arguably haphazard implementation of its own Sexual Assault Policies was foreseeable, especially where here, as there, the harm was severe: a wrongful conviction by a disciplinary committee.

Doe v. Univ. of the South, 4:09-CV-62, 2011 WL 1258104 *21.

It follows that Columbia does owe a duty to Plaintiff to conduct its disciplinary proceedings in a reasonable manner, and that includes protecting Plaintiff from harm inflicted by false allegations of sexual misconduct lodged against him by Jane Doe, a duty that based on the discussion above under Title IX, Columbia breached causing damage to Plaintiff.  Here, Columbia owed Plaintiff a duty to protect him from unreasonable risk of harm stemming from the false allegations of sexual misconduct lodged against him by Jane Doe.  Columbia was aware of the existence of key exculpatory witnesses who could attest to the absence of coercion, force or threats by Plaintiff, and Jane Doe's condition, demeanor and behavior toward Plaintiff in the immediate hours before the consensual activity took place on May 12, 2013, yet failed to interview them or obtain written statements from them in support of Plaintiff's defense. (Am. Cmplt. ¶¶ 47, 63, 97.) Columbia's investigator, Jilleian Sessions-Stackhouse failed to report a full, fair and accurate account of Plaintiff's defense to the claims by repeatedly ignoring and/or mischaracterizing Plaintiff's stated account of the evening of May 12, 2013. (Am. Cmplt. ¶¶ 55-56, 61-64.) Columbia failed to obtain relevant character or credibility evidence notwithstanding that the determination of "responsibility" requires Columbia to make a judgment call with respect to an

event that is largely "he said, she said" *(Am. Cmplt.* ¶ 93); failed to provide Plaintiff with the opportunity to submit written witness statements in support of his defense (Am. Cmplt. ¶ 92); denied Plaintiff the right to effective cross-examination of Jane Doe during the Hearing (Am. Cmplt. ¶ 91); and assessed a disproportionately severe two-year suspension sanction notwithstanding that <u>both</u> Plaintiff and Jane Doe appealed to have the sanction lowered (Am. Cmplt. ¶¶ 104-106).

At the Hearing, Defendant Columbia freely allowed Jane Doe to escape critical questioning by crying on the witness stand, and was completely dismissive of Plaintiff's attempts to engage in meaningful cross-examination of Jane Doe and challenge of her credibility on the issues of consent and her alleged drug-induced state on the evening of the Evening of May 12. Additionally, no evidence was presented in support of Jane Doe's claim that Plaintiff "coerced" her to engage in sexual intercourse over a period of weeks prior to the Evening of May 12. Notwithstanding, Defendant Columbia credited Jane Doe's claim that she was coerced over Plaintiff's claim that he did not coerce her, on the basis of gender discrimination against the male accused.  Indeed, the lack of any evidence of a contemporaneous police report or medical evidence contradicted Jane Doe's claim. (Am. Cmplt. ¶ 130.)

In validating Jane Doe's false allegations in the face of exculpatory evidence, and ignoring Plaintiff's complaint that Jane Doe was guilty of filing a false complaint against him, Columbia's decision to find him "responsible" for sexual misconduct and sanctioning him to a two-year suspension was arbitrary and capricious and without just cause, which resulted in significant damages to Plaintiff including, without limitation, emotional distress, economic injuries and other direct and consequential damages.  (Am. Cmplt, ¶¶ 110-117.)

**D.     The Amended Complaint States Other State Law Claims.**

**1.     New York General Business Law § 349(a).**

26

Based on a review of the relevant factual allegations in the Amended Complaint (pp.18-23) Plaintiff sufficiently states a claim under General Business Law § 349, consumer-oriented misconduct (students are consumers) which is materially misleading to a reasonable consumer who is damaged. <u>Wilner v. Allstate Insurance Company</u>, 2010 NY Slip Op 248; 893 N.Y.S.2d 208 (2d Dep't 2010); <u>Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank</u>, 85 N.Y.2d 20, 25, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995).

Columbia engaged in materially misleading conduct tending to support Plaintiff's claim that Columbia "had no intention of following its own policies and procedures" (Am. Cmplt. ¶¶ 131-132) where:

(i) investigator Ms. Sessions-Stackhouse proceeded in a prosecutorial minded way to obtain an admission of guilt by Plaintiff and to protect a false, anti-male narrative;

(ii) Ms. Sessions-Stackhouse repeatedly distorted and mischaracterized Plaintiff's account, thus, hampering his fair opportunity to present a defense;

(iii) Ms. Sessions-Stackhouse refused to interview and/or take into account witnesses in support of Plaintiff's account;

(iv) Ms. Sessions-Stackhouse accepted Jane Doe's apparent account while ignoring the lack of any police report, contemporaneous university report or medical visit by Jane Doe;

(v) Columbia buckled under pressure from the OCR, the Columbia University Democrats, and negative public scrutiny to go after male "rapists";

(vi) the panel found Plaintiff "responsible" for sexual misconduct based on no evidence of wrongdoing, except for Jane Doe's "say so" and Ms. Sessions-Stackhouse's slanted "investigation report";

(vii) the panel's decision of non-consensual sex and "unreasonable pressure for sexual activity" could not be reconciled with the facts that Jane Doe undressed herself to have sex using a condom she provided and in a location she chose and indeed was not based on any concrete facts;

(viii)   Plaintiff received a severe two-year suspension sanction notwithstanding the lack of any prior history of sexual misconduct or any other disciplinary record; and

(ix) Plaintiff received a severe two-year suspension sanction notwithstanding Jane Doe's appeal of the severity of Plaintiff's sanction.

(Am. Cmplt. ¶¶ 26-64, 67-78, 109, 127-131.)

The conduct complained of undeniably has a broad impact on "consumers" at large and is "consumer-oriented" for purposes of the Consumer Fraud Act.  According to statistics from the

National Center for Education Statistics, between 2000 and 2010, enrollment in degree-granting institutions increased 37 percent, from 15.3 million to 21.0 million nationwide.  See Fast Facts, Enrollment, http://nces.ed.gov/fastfacts/display.asp?id=98 [accessed July 15, 2014]).   Thus, college students are "consumers" of education and statistically comprise a great percentage of society at large.  The conduct complained of in the underlying action will have a broad impact on individuals who are admitted or seek admission to Columbia.

**2.  Estoppel and Reliance.**

On Plaintiff's estoppel claim, Columbia argues that Plaintiff has failed to state what clear and unambiguous promise was made and not upheld by Columbia.   Plaintiff does not allege a cause of action for promissory estoppel but, rather, one for equitable estoppel.

In New York, the elements of estoppel are a material misrepresentation, reasonable reliance, and provable damages. Lee v. Burkhart, 991 F.2d 1004, 1009 (2d Cir. 1993). Whether equitable estoppel applies presents an issue of fact.  See Petrelli v. City of Mount Vernon, 9 F.3d 250, 256 (2d Cir. 1993).

Contrary to Columbia's short shrift to the allegations in the Complaint, Plaintiff states more than just "Columbia had no intention of following its own policies and procedures" in support of his estoppel claim. (Col. Mem. p. 25.) As alleged in the Complaint, Columbia clearly made material misrepresentations of fact when it stated that it "does not tolerate discrimination or harassment on the basis of membership in a Protected Class" (Am. Cmplt, ¶ 19) and that the University is "committed to providing a learning environment free from gender-based discrimination and harassment" (Am. Cmplt, ¶ 20). In reliance on Columbia's representations, covenants and warranties, Plaintiff accepted admission to Columbia in 2012 and paid tuition for the 2012/2013 and 2013/2014 academic years, in addition to the costs of room and board, activities, health insurance and school supplies. As a result of Columbia's finding of "responsible"

for sexual misconduct and a two-year suspension on Plaintiff's record, Plaintiff has sustained emotional distress, loss of educational opportunities, economic injuries and other direct and consequential damages, including the need to undergo regular psychological counseling. (Am. Cmplt. ¶¶ 110-117.)

### 3. <u>Intentional Infliction of Emotional Distress.</u>

To establish intentional infliction of emotional distress in New York, plaintiff must prove: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. <u>See</u> <u>Howell v.</u> <u>New York Post Co.</u>, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993).

The filing of a false complaint, given the threat of the loss of liberty, can rise to the level of actionable "outrageous conduct" to sustain a cause of action for intentional infliction of emotional distress. <u>Levine v. Gurney</u>, 149 A.D.2d 473, 473, 539 N.Y.S.2d 967, 968 (2d Dep't 1989).

Akin to the threat of the loss of liberty, so too does the threat of being branded a "rapist" and having one's entire future, career prospects and economic earning power damaged as a result of a false complaint rise to the level of actionable "outrageous conduct." Columbia intended on inflicting emotional distress when it flatly disregarded and ignored key exculpatory witnesses, including Trevor Bell and Sidney Brinson, who could attest to the absence of coercion, force or threats by Plaintiff, and Jane Doe's condition and behavior toward Plaintiff in the immediate hours before the consensual activity took place on May 12 (Am. Cmplt. ¶¶ 47, 63, 97); failed to report a full and accurate account of Plaintiff's defense to the claims (Am. Cmplt. ¶¶ 55-56, 61-64); failed to obtain relevant character or credibility evidence notwithstanding that the determination of "responsibility" requires Columbia to make a judgment call with respect to an event that is largely "he said, she said" (Am. Cmplt. ¶ 93); failed to allow Plaintiff to submit written witness statements in support of his defense (Am. Cmplt. ¶ 92); denied Plaintiff the right to effective

cross-examination of Jane Doe during the Hearing (Am. Cmplt. ¶ 91); and assessed a disproportionately severe two-year suspension sanction notwithstanding that <u>both</u> Plaintiff and Jane Doe appealed to have the sanction lowered (Am. Cmplt. ¶¶ 104-106).

Columbia's conduct is extreme and outrageous in that it unfairly judges male students on the basis of little to no evidence of wrongdoing, and resulted in the two-year suspension of Plaintiff, a male student, which delays his educational career and threatens his future education and/or employment opportunities of similar caliber. What's worse is that Columbia's mishandling of the investigation, Hearing and sanctions determination, and desire to make an "example" out of Plaintiff as a student-athlete was driven by the pressure and great criticism Columbia was receiving at the time from OCR, the CUD, and negative public scrutiny. As a result of Columbia's actions, Plaintiff has sustained significant damages including, without limitation, emotional distress, loss of educational opportunities, economic injuries and other direct and consequential damages. (Am. Cmplt. ¶¶ 110-117.) Since Columbia's discriminatory treatment of Plaintiff, Plaintiff has had to seek regular psychological counseling. (Am. Cmplt. ¶ 115.) Plaintiff has sufficiently stated a cause of action for intentional infliction of emotional distress.

### 4. **Declaratory Judgment.**

Columbia's argument that 28 U.S.C. § 2201 "does not create an independent cause of action," ignores the fact that the District Court has the discretion and authority to make declarations of the "legal rights and other legal relations of any interested party seeking such declaration." <u>Chevron Corp. v. Naranjo</u>, 667 F.3d 232, 244 (2d Cir. 2012).

## CONCLUSION

Based on the foregoing, Columbia's motion to dismiss should be denied, and the Court should order such further and other relief as deemed just and proper.

Dated:  New York, New York
        September 22, 2014

NESENOFF & MILTENBERG LLP
Attorneys for Plaintiff John Doe

By:_____/s/_____
        Andrew T. Miltenberg, Esq. (AM 7006)
        Kimberly C. Lau, Esq. (KL 9374)
        Philip A. Byler, Esq. (PB 1234)
        363 Seventh Avenue – Fifth Floor
        New York, New York 10001
        (212) 736-4500
                -and-

        David Aylor Law Offices
        David Aylor, Esq.
        24 Broad Street
        Charleston, SC 29401
        (843) 577-5530
        David@davidaylor.com
                -and-
        Schmutz & Schmutz
        Stephen Schmutz, Esq.
        24 Broad St
        Charleston, SC 29401
        (843) 577-5530
        steve@schmutzlaw.com

31