UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOHN DOE,                                          :

            Plaintiff,                :

     -against-                               :  Civ. Action No. 14-cv-3573-JMF

COLUMBIA UNIVERSITY and                :
TRUSTEES of COLUMBIA UNIVERSITY,
                                   :
           Defendants.
                                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**

**TABLE OF CONTENTS**

**Page**

I. JOHN DOE FAILS TO STATE A CLAIM FOR SEX DISCRIMINATION IN VIOLATION OF TITLE IX ................................................................................................1

II. JOHN DOE FAILS TO STATE A CLAIM FOR VIOLATION OF OCR RULES............7

III. JOHN DOE FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT..................8

    A. ALLEGED BREACH OF CONTRACT TERMS.....................................................8

    B. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING..................................................................................................................10

IV. JOHN DOE FAILS TO STATE A CLAIM FOR VIOLATION OF G.B.L. § 349...........10

V. JOHN DOE FAILS TO STATE A CLAIM FOR ESTOPPEL AND RELIANCE...........10

VI. JOHN DOE FAILS TO STATE AN IIED CLAIM..............................................................11

VII. JOHN DOE FAILS TO STATE A CLAIM FOR NEGLIGENCE ...................................12

VIII. JOHN DOE FAILS TO STATE A CLAIM FOR DECLARATORY JUDGMENT ........12

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................. 4, 10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................................... 4

*Brown v. Castleton State College*,
    663 F. Supp. 2d 392 (D. Vt. 2009) ................................................................................ 3, 4, 5

*Chamberlain v. City of White Plains*,
    986 F. Supp. 2d 363 (S.D.N.Y. 2013) ...................................................................................... 8

*Chevron Corp. v. Naranjo*,
    667 F.3d 232 (2d Cir. 2012) ..................................................................................................... 12

*Doe v. University of the South*,
    687 F. Supp. 2d 744 (E.D. Tenn. 2009) ............................................................................... 6, 7

*Fellheimer v. Middlebury College*,
    869 F. Supp. 238 (D. Vt. 1994) ................................................................................................ 11

*Fraad-Wolff v. Vassar College*,
    932 F. Supp. 88 (S.D.N.Y. 1996) ............................................................................................. 11

*Gachette v. Metro North High Bridge*,
    No. 12-civ-3838, 2013 WL 144947 (S.D.N.Y. Jan. 14, 2013) ................................................ 6

*Gally v. Columbia University*,
    22 F. Supp. 2d 199 (S.D.N.Y. 1998) ................................................................................ 8, 10

*Green v. District Council 1707*,
    No. 13-civ-8671, 2014 WL 3734101 (S.D.N.Y. July 29, 2014) ............................................. 7

*Haley v. Virginia Commonwealth University*,
    948 F.Supp. 573 (E.D.Va. 1996) ..................................................................................... 4, 6, 7

*Harris v. Saint Joseph's University*,
    No. 13-CV-3937, 2014 WL 1910242 (E.D. Pa. May 13, 2014) ......................................... 4, 7

*In re Vebeliunas*,
    332 F.3d 85 (2d Cir. 2003) ....................................................................................................... 11

*Jackson v. City of New York*,
 No. 11-CV-3028, 2014 WL 1010785 (E.D.N.Y. Mar. 17, 2014) ............................................ 11

*New York University v. Continental Insurance Co.*,
 662 N.E.2d 763 (N.Y. 1995) ............................................................................................ 12

*Pungitore v. Barbera*,
 506 F. App'x 40 (2d Cir. 2012) ..................................................................................... 4, 5, 7

*Romer v. Board of Trustees of Hobart & William Smith Colleges*,
 842 F. Supp. 703 (W.D.N.Y. 1994) ................................................................................... 11

*Routh v. University of Rochester*,
 981 F. Supp. 2d 184 (W.D.N.Y. 2013) ............................................................................. 8, 9

*Samiento v. World Yacht Inc.*,
 883 N.E.2d 990 (N.Y. 2008) ............................................................................................ 10

*Scott v. WorldStarHipHip, Inc.*,
 No. 10-civ-9538, 2011 WL 5082410 (S.D.N.Y. Oct. 25, 2011) ............................................ 7

*Spiteri v. Russo*,
 No. 12-CV-2780, 2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013) ......................................... 12

*Ward v. New York University*,
 No. 99 Civ. 8733, 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000) ......................................... 8

*Wells v. Xavier University*,
 No. 1:13-CV-00575, 2014 WL 972172 (S.D. Ohio Mar. 12, 2014) ...................................... 6

*Yusuf v. Vassar College*,
 35 F.3d 709 (2d Cir. 1994) ....................................................................................... 1, 2, 3, 7

**FEDERAL STATUTES & CODES**

20 U.S.C. § 1681 .................................................................................................................... 2

**RULES**

Fed. R. Civ. P. 8(a)(2) ............................................................................................................ 3

John Doe's opposition to Columbia's motion to dismiss starts from the mistaken premise that the question before this Court is whether John Doe has plausibly alleged that the sexual activity he engaged in with Jane Doe was consensual.  That is not the issue.  The only relevant questions are whether John Doe has plausibly alleged that Columbia breached its policies and procedures in investigating Jane Doe's complaint, finding John Doe responsible, and sanctioning him based on that finding, and whether it did so because John Doe is male.  On those questions, John Doe has little to say:  The investigative and disciplinary processes John Doe describes in his amended complaint are fully compliant with Columbia's policies and procedures.  And setting aside the conclusory pejoratives about one Columbia employee, the amended complaint includes no facts from which this Court could infer that Columbia acted out of anti-male bias or otherwise in bad faith.  Nothing in the amended complaint suggests that the outcome here—however much John Doe disagrees with it—reflects anything but the University's professional educational judgment, which ought not be disturbed in these federal court proceedings.

I.      **JOHN DOE FAILS TO STATE A CLAIM FOR SEX DISCRIMINATION IN VIOLATION OF TITLE IX**

John Doe's opposition makes clear that his Title IX claim distills to two assertions: (1) that flaws in Columbia's disciplinary proceedings led to an incorrect outcome in his case, and (2) that Columbia had a "prosecutorial minded" approach to allegations of campus sexual misconduct.  Opp. 11, 20-21.  But a claim that Columbia wrongly decided one case, coupled with a demonstrated institutional concern about sexual assault, does not amount to sex discrimination under Title IX.  Rather, John Doe is required to plead facts plausibly showing that Columbia's treatment of his case was driven by sex bias.  He has not done so.

John Doe says that *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994), supports his Title IX claim.  To the contrary, that decision requires dismissal.  In *Yusuf*, the Second Circuit

1

articulated two general "categories" into which most Title IX claims based on university discipline proceedings "can be expected to fall." *Id.* at 715. Claims in the first category—"erroneous outcome"—assert that "the plaintiff was innocent and wrongly found to have committed an offense." *Id.* Claims in the second category—"selective enforcement"—assert that "regardless of the student's guilt or innocence, the *severity of the penalty* and/or the *decision to initiate the proceeding* was affected by the student's gender." *Id.* (emphasis added). But as *Yusuf* also makes clear, an erroneous outcome, standing alone, does not support a Title IX claim: "[T]o survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of … discriminatory intent." *Id.* at 713. That is because the unifying element of all claims brought under Title IX is that the conduct complained of must be "on the basis of sex." 20 U.S.C. § 1681.

      The essence of John Doe's Title IX claim is that Jane Doe consented to have sex with him, and so Columbia's determination that he was responsible for sexual misconduct was wrong and necessarily driven by a bias against men. But to survive a motion to dismiss, John Doe must plausibly allege facts sufficient both (1) to "cast doubt on the accuracy of the disciplinary adjudication" *and* (2) to demonstrate a "causal connection between the flawed outcome and gender bias." *Yusuf*, 35 F.3d at 715. To satisfy the first requirement, John Doe makes allegations about purported procedural flaws in the investigative process and the availability of other evidence about the evening of May 12. Opp. 14-15. He then attempts to meet the second requirement with assertions that those purported procedural flaws were motivated by or "demonstrate" gender bias. Opp. 15. But that type of bootstrapping is precisely what *Yusuf* prohibits: "[A]llegations of a procedurally or otherwise flawed proceeding that has led to an

2

adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Yusuf*, 35 F.3d at 715.  In other words, a plaintiff does not state a Title IX claim merely by asserting that the outcome in his case was so wrong that the defendant must have been impelled by bias to reach it.  The plaintiff must point to facts "showing," Fed. R. Civ. P. 8(a)(2), that the outcome was the result of sex discrimination.

      The amended complaint contains nothing to support the inference of sex bias that John Doe asks this Court to draw.  John Doe's allegations against Columbia's Title IX investigator are that she (1) had a "prosecutorial minded" investigative approach and sought to elicit a confession from him, (2) took notes based on what "she deemed important," which did not correspond with John Doe's version of events, and (3) did not "interview and/or take into account" certain witnesses.  Opp. 13, 16-18.  Standing alone or taken together, these allegations do not plausibly allege sex bias.

      At most, John Doe may have alleged that Columbia's investigator—who, under Columbia's policies, had substantial discretion in conducting an investigation, *see* Mot. 5; *GBMPS* 11-12, but no responsibility for making any findings—was insufficiently receptive to his account of the case.  But other than the conclusory assertion that it is "self-evident that the failure to obtain the witness accounts reflected an anti-male gender bias" (Opp. 18), John Doe offers nothing to explain why the investigator's canvassing of the facts in his case violated Title IX.  That is, nothing about the alleged facts suggests that the investigator was motivated by sex bias rather than some other consideration—whether benign (such as an appropriate intent to take allegations of sexual assault seriously) or inappropriate but not discriminatory (such as lack of experience in handling such investigations).  *See, e.g., Brown v. Castleton State Coll.*, 663 F. Supp. 2d 392, 403-04 (D. Vt. 2009) (dismissing Title IX complaint based on disciplinary

3

proceeding because there were "many possible explanations" for allegations that college "ignored certain evidence and accepted other evidence unquestioningly," and refusing to credit assertion that "'[t]he investigative report itself was biased" because that was a "naked assertion[] with no factual content'").

As the Second Circuit recently explained in affirming the dismissal of a Title IX complaint, John Doe's pleading burden is to "move h[is] complaint 'across the line from conceivable to plausible,'" by alleging facts that "give rise to a reasonable inference that [Columbia] was motivated by discriminatory animus," and not facts that are "'merely consistent with [the] defendant's liability.'" *Pungitore v. Barbera*, 506 F. App'x 40, 42-43 (2d Cir. 2012) (unpublished) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007)). Thus, even where the alleged conduct is "undoubtedly unprofessional," a Title IX claim must be dismissed where the complaint raises only "the slimmest possibility that [defendant's] actions were actually motivated by [plaintiff's] gender[.] [A]s [*Ashcroft v.*] *Iqbal*[, 556 U.S. 662 (2009)] and *Twombly* make clear, a mere possibility is insufficient to state a plausible claim for relief." *Id.* at 43. Here, the investigator may have disagreed with John Doe's assessment of what facts were critical to the investigation or which witnesses were relevant to the facts in issue, or she may have believed that she needed to take a confrontational approach with John Doe to uncover the facts in his case. But none of that constitutes gender bias. *See Harris v. Saint Joseph's Univ.*, No. 13-CV-3937, 2014 WL 1910242, at *3-4 (E.D. Pa. May 13, 2014); *Haley v. Virginia Commonwealth Univ.*, 948 F. Supp. 573, 578-579 (E.D.Va. 1996).

In any event, it was not the investigator who made the decision that John Doe was responsible for sexual misconduct, but the adjudicatory panel, which, in addition to reviewing the investigator's report, heard testimony from both John Doe and Jane Doe. John Doe alleges

4

nothing from which one might infer that the panel had a discriminatory motivation.  Rather, he claims (Opp. 6, 15) only that the panel must have been biased or operating under a "presumption of guilt" because it believed Jane Doe rather than John Doe.  But the panel's choice to credit the testimony of one witness over another cannot form the basis of a sex discrimination claim in these federal court proceedings.  It is untethered to any plausible allegation of sex bias, and it can be explained with myriad other, more plausible, alternatives.  *See Brown*, 663 F.Supp. 2d at 403-404; *Pungitore*, 506 F. App'x at 43.  John Doe himself acknowledges that the panel was presented with a "he said, she said" scenario.  Opp. 6, 18.  Having to sort out conflicting evidence, the panel was entitled to credit either party's version of the facts under the operative "preponderance of [the] evidence" standard.  *GBMPS* 15.[1]

John Doe also complains that the panel failed to consider character evidence.  *See* Opp. 6, 25-26.  But Columbia's policies specifically prohibited the investigator from interviewing witnesses solely for "character" evidence, and they authorized the panel to determine whether additional witness testimony was "necessary."  *GBMPS* 12, 14.  And John Doe's contention that it would require a "distorted anti-male lens" (Opp. 11) to find him responsible for sexual misconduct in light of his allegations about the underlying incident, such as the lack of a rape kit or the fact that Jane Doe provided a condom, is off base.  That argument proceeds from both a misapprehension about the nature of university disciplinary proceedings—which are not criminal prosecutions—and a misunderstanding about Columbia's definition of sexual misconduct—which is intended to protect students not only from forcible rape, but also from unreasonable pressure to accede to sexual advances.  *See GBMPS* 4.

---

[1]   Contrary to John Doe's suggestion, *see* Opp. 15, there is no requirement that victims of sexual assault adduce evidence that corroborates their account of the events at issue.

Equally unavailing is John Doe's reliance on the "charged environment" and "political pressures" facing Columbia. *See* Opp. 5, 19. John Doe invoked these atmospherics to explain why Columbia was supposedly so intent on disciplining him for sexual misconduct, pointing to articles describing criticism of the University for previously "dropping the ball on jock rapists." *See* Opp. 19. But as Columbia showed in its motion, his account was achronological—the investigation into the incident with Jane Doe commenced well before the alleged political pressure detailed in the amended complaint began, *see* Mot. 15 n.14—and was belied by the articles he cited, which showed that, contrary to his assertion that men are invariably found responsible for sexual misconduct, male respondents were in several cases found not responsible, *see* Mot. 15. John Doe says nothing about any of this, but instead contends that this Court is required to accept his conclusory assertions notwithstanding that they are contradicted by sources that he himself cites. This Court is not so constrained. *See, e.g.*, *Gachette v. Metro N. High Bridge*, No. 12-civ-3838, 2013 WL 144947, at *1 (S.D.N.Y. Jan. 14, 2013).

John Doe's attempts to distinguish the cases in which courts have rejected Title IX claims based on allegedly flawed disciplinary proceedings for sexual misconduct are unconvincing. *See* Mot. 14, 16-17 (citing cases).[2] John Doe asserts that *Haley* is inapposite because it involved allegations regarding a "Dean overseeing the disciplinary process," rather than an investigator. Opp. 18-19. But the official's role was irrelevant in that case, which turned on the court's correct understanding that, although disparate treatment of purported victims and perpetrators may suggest bias against those accused of sexual misconduct, that by itself does not demonstrate

---

[2] John Doe cites *Wells v. Xavier University*, No. 1:13-CV-00575, 2014 WL 972172 (S.D. Ohio Mar. 12, 2014), in which the court allowed a Title IX claim to go forward. *See* Opp. 15. The allegations in that case—among other things, that the university ignored doubts expressed by a county prosecutor about the complainant's charges, *Wells*, 2014 WL 972172, at *1—easily distinguish it from this case. Indeed, the court in *Wells* noted (at *5) facts that distinguished the *Wells* case from *Doe v. University of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009), which more closely resembles this case. *See* Mot. 16; *infra* p. 7.

6

sex discrimination. *See Haley*, 948 F. Supp. at 579. John Doe also suggests that *Harris* is unpersuasive because the court did not describe the factual allegations of the complaint. Opp. 18. But the allegations in that complaint—which Columbia cited in its motion, *see* Mot. 17 n.18—are indistinguishable from those in John Doe's amended complaint.

Finally, John Doe's suggestion that *Doe v. University of the South,* 687 F. Supp. 2d 744 (E.D. Tenn. 2009), is at odds with *Yusuf* is incorrect. Although *Yusuf* allows for the possibility that a single fact "such as statements regarding bias by members of the tribunal" might go to both improper outcome and gender bias, such facts must still "relate the error to gender bias." 35 F.3d at 715. Consistent with that rule, the court in *Doe* dismissed the Title IX claim because the plaintiff had "failed to plead facts sufficient to support" his assertions of gender bias. 687 F. Supp. 2d at 756-757; *see also id.* at 750-751 (discussing *Iqbal* and Rule 12(b)(6) standard). Here too, John Doe has failed to plead facts from which this Court could reasonably infer gender bias. The Title IX claim should therefore be dismissed.[3]

## II.   JOHN DOE FAILS TO STATE A CLAIM FOR VIOLATION OF OCR RULES

Columbia showed in its opening brief that John Doe's claim for violation of OCR's "rules" fails because there is no private right of action to enforce them. *See* Mot. 17. John Doe

---

[3] To the limited extent that John Doe asserts a "selective enforcement" claim, he does so in an entirely conclusory manner and once again fails to tie his assertions of harm to his sex. *See Scott v. WorldStarHipHip, Inc.*, No. 10-civ-9538, 2011 WL 5082410 at *4, *6 (S.D.N.Y. Oct. 25, 2011) (applying *Yusuf* and dismissing complaint because plaintiff failed to "allege particular circumstances suggesting a meaningful inconsistency in punishment and particular circumstances suggesting that gender bias was a motivating factor behind the inconsistency"). John Doe's assertion that his punishment—a three-semester suspension—was "disproportionate to the severity of the charges levied against him," Opp. 14, is not supported with allegations that specific similarly situated students have been treated differently. *Cf. Pungitore*, 506 F. App'x at 43 n.1 (allegation that "less qualified male students" had been placed in math class was insufficient to sustain Title IX claim "given the lack of any alleged facts supporting this conclusory assertion"); *accord Green v. Dist. Council 1707*, No. 13-civ-8671, 2014 WL 3734101 at *6-*9 (S.D.N.Y. July 29, 2014) (dismissing Title VII claim based on allegations of disparate sanctions for employee misconduct because purported "comparators" were not similarly situated to Plaintiff). If John Doe is attempting to suggest that a university policy that allows for suspension as a sanction for sexual assault disproportionately affects men, that is a disparate-impact claim that is not actionable in a private Title IX suit. *See* Opp. at 14-15; Mot. at 13.

offers no response to this argument in his brief; the claim is therefore abandoned and should be dismissed. *See Chamberlain v. White Plains*, 986 F. Supp. 2d 363, 392 (S.D.N.Y. 2013).

### III. JOHN DOE FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

#### A. Alleged Breach of Contract Terms

Columbia moved to dismiss John Doe's contract claim principally on the ground that the contract provisions on which his claim relies are "general statements of policy [that] cannot [be] the basis of a breach of contract claim." *Ward v. NYU*, No. 99 Civ. 8733, 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000). John Doe does not challenge that rule of law, and his opposition confirms that his contract claim turns on precisely these sorts of non-actionable statements. *See* Opp. 23 (alleging that "Columbia agreed to the following" undertakings as part of its contract: not to "tolerate discrimination or harassment"; to "provid[e] a learning environment free from gender-based discrimination and harassment"; to "treat[ students] with respect, dignity, and sensitivity throughout the process"). His contract claim fails for this elemental reason alone. *See Ward*, 2000 WL 1448641 at *4-*5; *see also Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998) (holding that "a general statement of adherence by [a school] to existing anti-discrimination laws … does not create a separate and independent contractual obligation").

Even were these promises specific enough to be actionable, the amended complaint fails to allege that Columbia breached them.[4] John Doe does not dispute that, as to breach of contract claims, "judicial review is limited to whether the education institution acted arbitrarily or whether it complied with its own rules and regulations … in the context of considering a male student's breach of contract claim." Opp. 10; *see also Routh v. Univ. of Rochester*, 981 F. Supp.

---

[4] Columbia argued in its motion to dismiss that John Doe's contract claims fail for the independent reason that John Doe failed plausibly to allege that any claimed breach caused him to suffer injury. *See* Mot. 19 n.19. John Doe failed to respond to that argument entirely, and the contract claims should be dismissed on this ground alone. *Chamberlain*, 986 F. Supp. 2d at 392.

2d 184, 208 (W.D.N.Y. 2013). As Columbia showed in its opening brief, the University complied with each of its undertakings, and John Doe fails in his opposition to identify a single procedure that was violated.[5] Mot. 7-9, 19-23; *see also supra* pp. 3-5.

In an effort to divorce this case from its educational setting, and thus to persuade this Court that it should not view Columbia's disciplinary decision with the usual deference that courts accord such judgments, John Doe stresses that "consent to sex is [not] an educational decision." Opp. 2. But the question in this civil lawsuit is not whether Jane Doe consented to sex with John Doe. The question is whether Columbia—in investigating Jane Doe's charge of sexual coercion, determining that John Doe had breached the University's sexual misconduct policies, and disciplining him for that misconduct—acted appropriately in concluding that Jane Doe was entitled to be free of unreasonable pressure to accede to sexual advances so that she might take full advantage of the University's educational benefits. That is manifestly an educational judgment—no less than it would be an educational judgment for a university to conclude that students should not be subjected to bullying, or racial taunts, or other kinds of harassment or misconduct at the hands of other students. As Columbia's policies make plain, the process of preventing, investigating, and disciplining sexual misconduct is an educational one, and the policies governing that process are intended to "foster[] a healthy and safe environment in which every member of the community can realize her or his fullest potential." *GBMPS* 1; *see also SPPDH* 2 (goal of policies is to "provid[e] a learning, living, and working environment free

---

[5] To the extent John Doe alleges that Columbia violated its confidentiality policy, *see* Opp. 23-24, that assertion is not plausible. He has made no allegation that the leak of information about his disciplinary hearing to the Columbia student newspaper came from an employee of the University, as opposed to someone else who may have had access to information about the disciplinary process. He has therefore not sufficiently alleged that Columbia violated its confidentiality policy, which states that Columbia will "make all reasonable efforts to maintain … confidentiality" in sexual misconduct proceedings. *See id.*; *GBMPS* 10.

9

from discrimination and harassment"); Dear Colleague Ltr. 1 (stressing that sexual harassment of students "interferes with students' right to receive an education free from discrimination").

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

John Doe's claim for breach of the covenant of good faith and fair dealing should also be dismissed, as he has not shown any breach of any contract provision, much less a lack of good faith on the University's part. *See Gally*, 22 F. Supp. 2d at 206.

### IV. JOHN DOE FAILS TO STATE A CLAIM FOR VIOLATION OF G.B.L. § 349

To state a claim under § 349, John Doe must allege that Columbia engaged in "materially misleading conduct." Opp. 27. To that end, he asserts that Columbia "had no intention of following its own policies and procedures," and recites a list of alleged improprieties in the investigative and disciplinary process. *Id.* This is just the contract claim in different clothing. John Doe offers nothing to support his conclusory allegation that Columbia *intended* not to follow its policies; he merely alleges that Columbia *did not* follow its policies. That does not suffice. *See Samiento v. World Yacht Inc.*, 883 N.E.2d 990, 996 (N.Y. 2008) (§ 349 requires allegation that "defendant intended to deceive its customers to the customers' detriment and was successful in doing so"); *see also Iqbal*, 556 U.S. at 678 (Rule 8's "plausibility standard … asks for more than a sheer possibility that a defendant has acted unlawfully"). In any event, the allegations in the amended complaint show that Columbia substantially complied with its policies, and thus could not have deceived John Doe. *See* Mot. 7-9, 19-23.

### V. JOHN DOE FAILS TO STATE A CLAIM FOR ESTOPPEL AND RELIANCE

John Doe's opposition brief clarifies that his claim for "estoppel and reliance" is a claim for equitable estoppel. Opp. 28. Under New York law, a plaintiff claiming equitable estoppel must allege "(1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of

the real facts." *In re Vebeliunas*, 332 F.3d 85, 93-94 (2d Cir. 2003). John Doe has alleged no facts that meet any of these elements. *See Romer v. Bd. of Trs. of Hobart & William Smith Colls.*, 842 F. Supp. 703, 710 (W.D.N.Y. 1994) (on equitable estoppel claim, "plaintiff would have to show that defendants knew that they were not going to follow the procedures in the Handbook, and that they concealed that fact from him"). Instead, he simply rehashes his complaint that he believes Columbia did not live up to its contractual promises, which, as described above, is without merit.

## VI.   JOHN DOE FAILS TO STATE AN IIED CLAIM

"In New York, the tort of IIED is extremely disfavored." *Jackson v. City of New York*, No. 11-CV-3028, 2014 WL 1010785, at *14 (E.D.N.Y. Mar. 17, 2014). John Doe's IIED claim is purportedly based on some combination of Columbia's policies and procedures and its alleged failure to follow those procedures in John Doe's case, resulting in John Doe's suspension. Opp. 29-30. John Doe does not attempt to distinguish the New York cases cited in the motion to dismiss demonstrating that even maliciously false rape accusations that result in expulsion do not constitute sufficiently extreme and outrageous behavior to support an IIED claim. Mot. 26-27. And the single intermediate court decision on which he relies does not undermine those recent cases demonstrating the high level of egregiousness needed for an IIED claim. Opp. 29. As one court explained, "[a] college's decision, when confronted with a female student's accusation of rape, to confront the male student with the charges, hold a hearing, and support the findings of the initial tribunal on appeal, even where various procedural errors are alleged, cannot form the basis of an IIED claim." *Fellheimer v. Middlebury Coll.*, 869 F. Supp. 238, 247 (D. Vt. 1994) (applying Vermont law); *see also Fraad-Wolff v. Vassar Coll.*, 932 F. Supp. 88, 94 (S.D.N.Y. 1996) (citing *Fellheimer* and noting New York applies the same standard). To the extent John Doe suggests that Columbia's actions were "outrageous" because they were motivated by

11

animus, he failed to allege improper intent for the reasons described *supra*, p. 3-4.  John Doe also fails to allege emotional distress that is sufficiently severe to sustain an IIED claim.  *See* Mot. 27.

## VII.  JOHN DOE FAILS TO STATE A CLAIM FOR NEGLIGENCE

Under New York law, "where a party is merely seeking to enforce its [contractual] bargain, a tort claim will not lie."  *New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 768 (N.Y. 1995).  John Doe does not allege any extra-contractual duty that Columbia owed to him.  Indeed, his negligence claim is predicated on "a duty to Plaintiff to conduct its disciplinary proceedings in a reasonable manner"—that is, consistent with the rules and regulations that constitute the parties' contract.  Opp. 25.  John Doe's negligence claim fails for that reason alone.[6]

## VIII.  JOHN DOE FAILS TO STATE A CLAIM FOR DECLARATORY JUDGMENT

John Doe asserts that this Court "has the discretion and authority to make declarations of the 'legal rights and other legal relations of any interested party seeking such declaration.'"  Opp. 30.  But the Court cannot do so in a vacuum; there must be a "valid legal predicate."  *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012).  Where, as here, all substantive claims must be dismissed, there is no such predicate, and no declaratory judgment can issue.  *See Spiteri v. Russo*, No. 12-CV-2780, 2013 WL 4806960, at *19 n.30 (E.D.N.Y. Sept. 7, 2013).

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety.

---

[6] Failing entirely to engage with the New York law cited in Columbia's motion, John Doe cites to a single Tennessee case.  *See* Opp. 24-25.  Whatever the rule may be in Tennessee, the rule under New York law is clear, and John Doe's negligence claim fails under it.

Dated: New York, New York  
      October 2, 2014

Respectfully submitted,

/s/ Alan E. Schoenfeld

Paul R.Q. Wolfson (*pro hac vice*)  
Bruce M. Berman (*pro hac vice*)  
Danielle Conley (*pro hac vice*)  
Wilmer Cutler Pickering Hale and Dorr LLP  
1875 Pennsylvania Avenue NW  
Washington, DC 20006  
Tel: (202) 663-6000  
Fax: (202) 663-6363  
paul.wolfson@wilmerhale.com  
bruce.berman@wilmerhale.com  
danielle.conley@wilmerhale.com

Alan E. Schoenfeld  
Wilmer Cutler Pickering Hale and Dorr LLP  
7 World Trade Center  
250 Greenwich Street  
New York, NY 10007  
Tel: (212) 230-8800  
Fax: (212) 230-8888  
alan.schoenfeld@wilmerhale.com

*Attorneys for Defendants Columbia University and Trustees of Columbia University*